**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | Case No. 8-24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| MICHAEL GOLDBERG, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration, Inc. | Adv. Pro. No. 8:24-ap-00139-RCT |
| Plaintiff, | |
| v. | |
| BOSTON FINANCE GROUP, LLC, a Florida limited liability company and LEO J. GOVONI, an individual, | |
| Defendants. | |

## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Plaintiff, Michael Goldberg,  as Chapter 11 Trustee ("<u>Chapter 11 Trustee</u>") of the estate of

The Center for Special Needs Trust Administration, Inc. (the "<u>Debtor</u>"), pursuant to Rule 56,

Federal Rules of Civil Procedure, made applicable by Rule 7056, Federal Rules of Bankruptcy

Procedure files this Motion for Partial Summary Judgment against Boston Finance Group, LLC, a

Florida limited liability company ("<u>BFG</u>") and Leo J. Govoni, an individual ("<u>Govoni</u>") as to

Counts I and II of its Complaint for Damages and Other Relief on the grounds that there are no

genuine issues as to any material fact and that the Chapter 11 Trustee is entitled to summary

judgment as a matter of law.

Through this Motion, the Chapter 11 Trustee seeks entry of partial summary judgment on the Defendants' liability under the loan documents more particularly described below. After the Chapter 11 Trustee's forensic accountants complete their work tracing the funds transferred from the Debtor to Defendants, the Chapter 11 Trustee intends to file a motion for final summary judgment on the issue of damages owed by the Defendants. However, for purposes of this Motion, the Chapter 11 Trustee only seeks a determination of the Defendants' liability to the Debtor.

The substantial matters of law that the Chapter 11 Trustee intends to argue in connection with this Motion concern the factual matters set forth in the Declaration of William A. Long, Jr. in Support of Motion for Partial Summary Judgment (the "Long Decl."), together with the pleadings, which conclusively demonstrate as a matter of law the following.[1]

## Jurisdiction, Venue, Parties and Procedural History

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b). (Compl. ¶ 5, Govoni Ans. ¶ 5, BFG Ans. ¶ 5).

2.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O), and the Chapter 11 Trustee consents to the entry of final orders and judgment by the Bankruptcy Court. (Compl. ¶ 6, Govoni Ans. ¶ 6, BFG Ans. ¶ 6).

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. (Compl. ¶ 7, Govoni Ans. ¶ 7, BFG Ans. ¶ 7).

4.      The Debtor is a corporation organized under the laws of the State of Florida on December 8, 2000. (Compl. ¶ 1, Govoni Ans. ¶ 1, BFG Ans. ¶ 1).

---

[1] The Chapter 11 Trustee relies on the (i) Complaint for Damages and Other Relief filed by the Chapter 11 Trustee on April 25, 2024 (Adv. Doc. 1), (ii) Leo J. Govoni's Answer to Plaintiff's Complaint for Damages and Other Relief (Adv. Doc. 7) ("Govoni Ans."), Boston Finance Group, LLC's Answer to Plaintiff's Complaint for Damages and Other Relief (Adv. Doc. 10) ("BFG Ans."), (iii) the Long Declaration and (iv) all other matters of record in support of this Motion for Partial Summary Judgment.

77247116

5.      On February 9, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of title 11 of the United States Code. (Main Doc. 1).

6.      On March 8, 2024, the U.S. Trustee filed an Expedited Motion for Order Directing the United States Trustee to Appoint a Chapter 11 Trustee by Agreement of the Debtor (Main Doc. 88). The Court granted the U.S. Trustee's Motion by Order dated March 11, 2024 (Main Doc. 93) and on March 21, 2024, the Court entered its Order Approving Appointment of Chapter 11 Trustee, appointing Michael Goldberg as Chapter 11 Trustee (Main Doc. 109). (collectively, the "Appointment Orders").

7.      The Chapter 11 Trustee is currently operating the Debtor's business pursuant to sections 1106 and 1108 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the Appointment Orders.

8.      Govoni is an individual who resides in Pinellas County, Florida and was the founder of the Debtor. (Compl. ¶ 4, Govoni Ans. ¶ 4, BFG Ans. ¶ 4).

9.      BFG is a Florida limited liability company that maintains a principal office at 12707 49th Street N., Suite 900, Clearwater, FL 33762. (Compl. ¶ 3, Govoni Ans. ¶ 3, BFG Ans. ¶ 3). Govoni is the managing member of BFG. (Compl. ¶ 62, Govoni Ans. ¶ 62, BFG Ans. ¶ 62)

10.     On April 25, 2024, the Chapter 11 Trustee filed his Complaint for Damages and Other Relief (Adv. Doc. 1).  On June 6, 2024, Govoni filed his Answer to the Complaint (Adv. Doc. 7) and on June 7, 2024, BFG filed its Answer to the Complaint (Adv. Doc. 10). The Answers did not assert any affirmative defenses to the Complaint (*Id.*)

77247116

## Undisputed Material Facts

### A.    The Debtor's Business

11.    The Debtor is a 501(c)(3) non-profit Florida corporation that provides comprehensive trust services for beneficiaries and their representatives related to the formation and administration of Special Needs Trusts ("SNT"). (Long Decl.. ¶ 4)

12.    The term "Special Needs Trust" encompasses a variety of specialized trusts used for special needs planning, which are often funded from settlements or recoveries from catastrophic personal injury lawsuits. (Long Decl. ¶ 5).  While the various types of trusts under the SNT umbrella have some key differences, the primary purpose of an SNT is to allow someone who receives means-tested public assistance benefits like Supplemental Security Income and Medicaid to also receive the benefit of distributions from their SNT, such as payment for beneficiary expenses. (*Id.*)

13.    Since its founding, the Debtor grew to be one of the largest administrators of SNTs in the country, with beneficiaries (the "Beneficiaries") located in almost every state as well as Beneficiaries who are located internationally. (Long Decl. ¶ 6)

14.    As of the Petition Date, the Debtor administered over 2,000 SNTs (the "Trusts"). (Long Decl. ¶ 7).  Each Beneficiary has his or her own trust account or sub-trust account (a "Trust Account") that reflects the specific assets in the respective Beneficiary's Trust, or in the case of a pooled Trust, the specific assets allocated to the Beneficiary's sub-trust account. Other than the Loan (as defined below), the Trust investments are managed by different financial advisory companies, not the Debtor itself. (*Id.*)

15.    The Debtor's primary service as trustee of the Trusts is to manage the Trusts, maintain records for assets managed by third-party investment managers, respond to requests for distributions from Beneficiaries, and make distributions in a manner that still ensures that the

4

applicable beneficiary meets the income and asset thresholds to qualify for public assistance benefits. (Long Decl. ¶ 8).

**B.      Govoni's Relationship to the Debtor**

16.      Govoni founded the Debtor with the assistance of his business colleague John Staunton ("Staunton"), a Pinellas County-based trusts and estates attorney. (Compl. ¶ 16, Govoni Ans. ¶ 16, BFG Ans. ¶ 16).

17.      Govoni served on the Debtor's Board of Directors from the company's founding until his resignation in 2008 or early to mid-2009. (Compl. ¶ 18, Govoni Ans. ¶ 18, BFG Ans. ¶ 18).

**C.      The Loans**

18.      On or about June 1, 2009, BFG entered into a Revolving Line of Credit Agreement with the Debtor (the "June 2009 Loan Agreement"), a copy of which is attached as **Exhibit A**. The June 2009 Loan Agreement provided for a revolving line of credit loan to be made by the Debtor to BFG in the maximum principal amount of $2.5 million. (Compl. ¶ 50, Govoni Ans. ¶ 50, BFG Ans. ¶ 50).

19.      Also on June 1, 2009, BFG executed and delivered a promissory note in the original principal amount of $2,500,000 (the "June 2009 Note"), a copy of which is attached as **Exhibit B**. (Compl. ¶ 52, Govoni Ans. ¶ 52, BFG Ans. ¶ 52).

20.      To secure the loan made by the Debtor, BFG and the Debtor executed a Security Agreement (the "Security Agreement") granting the Debtor a security interest in all of BFG's real and personal property. A copy of the Security Agreement is attached as **Exhibit C**. (Compl. ¶ 53, Govoni Ans. ¶ 53, BFG Ans. ¶ 53).

21.      On June 1, 2009, BFG also executed a Negative Pledge Agreement (the "Pledge Agreement") agreeing not to encumber any of its assets pledged as collateral under the Security

Agreement without the Debtor's consent.  (Compl. ¶ 54, Govoni Ans. ¶ 54, BFG Ans. ¶ 54). A copy of the Pledge Agreement is attached as **Exhibit D**.

22.    On December 1, 2009, the Debtor and BFG entered into an Amended and Restated Revolving Line of Credit Agreement (the "December 2009 Loan Agreement"), a copy of which is attached as **Exhibit E**. (Compl. ¶ 55, Govoni Ans. ¶ 55, BFG Ans. ¶ 55). The December 2009 Loan Agreement increased the maximum amount of the line of credit loan from the Debtor to $15 million. (*Id*.).

23.    The December 2009 Loan Agreement also provided that the Security Agreement and Pledge Agreement would continue to secure the additional amount loaned under the December 2009 Loan Agreement. (Compl. ¶ 57, Govoni Ans. ¶ 57, BFG Ans. ¶ 57).

24.    Also on December 1, 2009, BFG executed and delivered a promissory note in the original principal amount of $15,000,000 (the "December 2009 Note"), a copy of which is attached as **Exhibit F**. (Compl. ¶ 58, Govoni Ans. ¶ 58, BFG Ans. ¶ 58).

25.    On March 15, 2010, the Debtor and BFG entered into an Amended and Restated Revolving Line of Credit Agreement (the "2010 Loan Agreement"), a copy of which is attached as **Exhibit G**. (Compl. ¶ 59, Govoni Ans. ¶ 59, BFG Ans. ¶ 59). The 2010 Loan Agreement increased the maximum amount of the line of credit loan from the Debtor to $30 million. (*Id*.).

26.    Also on March 15, 2010, BFG executed and delivered a promissory note in the original principal amount of $30,000,000 (the "2010 Note"), a copy of which is attached as **Exhibit H**. (Compl. ¶ 61, Govoni Ans. ¶ 61, BFG Ans. ¶ 61).

27.    The 2010 Note was signed by Govoni as "managing member" of BFG. The signature on the 2010 Note also matches the signatures on the June 2009 Note and December 2009 Note, so it

6

appears that Govoni also signed those notes on behalf of BFG. (Compl. ¶ 62, Govoni Ans. ¶ 62, BFG Ans. ¶ 62).

28.     On March 15, 2011, the Debtor and BFG entered into yet another Amended and Restated Revolving Line of Credit Agreement (the "2011 Loan Agreement"), a copy of which is attached as **Exhibit I**. (Compl. ¶ 63, Govoni Ans. ¶ 63, BFG Ans. ¶ 63). The 2011 Loan Agreement increased the maximum amount of the line of credit loan from the Debtor to $50 million. (*Id.*).

29.     Also on March 15, 2011, BFG executed and delivered a promissory note in the original principal amount of $50,000,000 (the "March 2011 Note"), a copy of which is attached as **Exhibit J**. (Compl. ¶ 65, Govoni Ans. ¶ 65, BFG Ans. ¶ 65). The March 2011 Note was signed by Govoni as "managing member" of BFG. (Compl. ¶ 66, Govoni Ans. ¶ 66, BFG Ans. ¶ 66).

30.     On August 31, 2011, BFG sent a letter to the Debtor requesting that the terms of the loan be amended to change the variable interest rate on the loan from the Prime rate to the Five Year Treasury rate and that the interest rate be adjusted on a monthly basis. (Compl. ¶ 67, Govoni Ans. ¶ 67, BFG Ans. ¶ 67). A copy of the August 31, 2011 letter is attached as **Exhibit K**.

31.     Thereafter, on September 1, 2011, BFG executed and delivered an Amended and Restated Promissory Note (the "September 2011 Note") in the same principal amount of $50 million, but with the requested changes in the interest rate and adjustment of the interest rate. (Compl. ¶ 68, Govoni Ans. ¶ 68, BFG Ans. ¶ 68). A copy of the September 2011 Note is attached as **Exhibit L**. The September 2011 Note was signed by Govoni as managing member of BFG. (Compl. ¶ 69, Govoni Ans. ¶ 69, BFG Ans. ¶ 69).

32.     On January 1, 2012, the Debtor and BFG entered into an Amended and Restated Revolving Line of Credit Agreement (the "2012 Loan Agreement"), a copy of which is attached as

**Exhibit M**. (Compl. ¶ 70, Govoni Ans. ¶ 70, BFG Ans. ¶ 70). The 2011 Loan Agreement increased the maximum amount of the line of credit loan from the Debtor to $100 million. (*Id*.).

33.    Also on January 1, 2012, BFG executed and delivered an Amended and Restated Promissory Note in the original principal amount of $100,000,000 (the "2012 Note"), a copy of which is attached as **Exhibit N**. (Compl. ¶ 72, Govoni Ans. ¶ 72, BFG Ans. ¶ 72).

34.    The 2012 Note matured on January 1, 2017. (Compl. ¶ 73, Govoni Ans. ¶ 73, BFG Ans. ¶ 73).

35.    In connection with the 2012 Loan Agreement and 2012 Note, Govoni executed a Personal Guaranty (the "Guaranty") by which Govoni personally guaranteed all amounts due under the 2012 Note. (Compl. ¶ 74, Govoni Ans. ¶ 74, BFG Ans. ¶ 74). A copy of the Guaranty is attached as **Exhibit O**.

36.    The June 2009 Loan Agreement, the June 2009 Note, the Security Agreement, the Negative Pledge Agreement, the December 2009 Loan Agreement, the December 2009 Note, the 2010 Loan Agreement, the 2010 Note, the 2011 Loan Agreement, the March 2011 Note, the September 2011 Note, the 2012 Loan Agreement, the 2012 Note, and the Guaranty are collectively referred to as the "Loan Documents" and the loan made pursuant to the Loan Documents is referred to as the "Loan."

37.    BFG only made a few periodic interest payments on the Loan over the years and did not pay the full amount due under the Loan Documents by the maturity date of January 1, 2017. (Compl. ¶ 78, Govoni Ans. ¶ 78, BFG Ans. ¶ 78).

38.    However, BFG continued to make some  payments after the Loan matured. (Compl. ¶ 79, Govoni Ans. ¶ 79, BFG Ans. ¶ 79).

39.     Prepetition, the Debtor retained counsel to investigate and collect the Loan to BFG. On September 8, 2023, the Debtor's counsel sent a demand letter (the "Demand Letter") to BFG and Govoni providing notice of the default under the Loan Documents and demanding payment within five (5) days.  (Compl. ¶ 80, Govoni Ans. ¶ 80, BFG Ans. ¶ 80). A copy of the Demand Letter is attached as **Exhibit P**.

40.     The Loan Documents are in default for BFG's failure to pay the full amount of the principal, interest and other amounts due under the Loan Documents by the maturity date of January 1, 2017.  (Compl. ¶ 81, Govoni Ans. ¶ 81, BFG Ans. ¶ 81).

41.     Pursuant to the Appointment Orders, the Chapter 11 Trustee is the duly authorized fiduciary on behalf of the Debtor. (Compl. ¶ 83, Govoni Ans. ¶ 83, BFG Ans. ¶ 83).

42.     The Chapter 11 Trustee has performed all conditions precedent to bringing this action, or any such conditions have been waived. (Compl. ¶ 85, Govoni Ans. ¶ 85, BFG Ans. ¶ 85).

43.     The Loan Documents provide that BFG shall pay attorneys' fees and costs incurred in collecting the Loan. (Compl. ¶ 86, Govoni Ans. ¶ 86, BFG Ans. ¶ 86).

## Memorandum of Law

Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment motions and is made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party requesting the entry of summary judgment thus has the burden of demonstrating the absence of a genuine dispute of material fact. Further, a court determining entitlement to summary judgment must view all evidence and make reasonable inferences in favor of the party opposing the motion, and any doubt as to the existence of a genuine issue of material

fact must be resolved in favor of denying the motion. *In re Fricks*, 603 B.R. 506 (Bankr. M.D. Fla. 2019).

"Where the determination of the issues in a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by the entry of summary judgment." *In re Basil St. Partners, LLC*, No. 9:11-BK-19510-FMD, 2012 WL 6101914, at *14 (Bankr. M.D. Fla. Dec. 7, 2012). *See also SE Prop. Holdings, LLC v. Chung*, No. 5:12-CV-380-RS-GRJ, 2013 WL 12170490, at *2 (N.D. Fla. Sept. 11, 2013) (same). "Where a contractual provision is unambiguous, no issue of fact is presented as to the meaning of the language or the parties' intent, and the moving party is entitled to judgment as a matter of law." *AECOM Tech. Servs., Inc. v. Pro. Servs. Indus., Inc.*, 580 F. Supp. 3d 1176, 1185 (M.D. Fla. 2021) *quoting Pan Am. W., Ltd. v. Cardinal Com. Dev., LLC*, 50 So. 3d 68, 71 (Fla. 3d DCA 2010).

Each of the Loan Documents provides that Florida law will apply. *See* June 2009 Loan Agreement at ¶ 10(J); June 2009 Note at p. 4; Security Agreement at ¶ 5; Negative Pledge Agreement at ¶ F; December 2009 Loan Agreement at ¶ 10(J);  December 2009 Note at ¶ 19; 2010 Loan Agreement at ¶ 10(J).; 2010 Note at ¶ 19; 2011 Loan Agreement at ¶ 10(J); March 2011 Note at ¶ 19; September 2011 Note at ¶ 19; 2012 Loan Agreement at ¶ 10(J); 2012 Note at ¶ 19; Guaranty at § 4.1. "Under Florida law, '[t]he elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.'" *SunTrust Bank v. Trejos*, No. 6:11-CV-486-ORL-18, 2011 WL 3898012, at *2 (M.D. Fla. Aug. 18, 2011), *report and recommendation adopted*, No. 6:11-CV-486-ORL-18, 2011 WL 3904118 (M.D. Fla. Sept. 6, 2011), *quoting Rollins, Inc. v. Butland,* 951 So. 2d 860, 876 (Fla. 2d DCA 2006). In Florida,

the elements for breach of a promissory note are the same as the elements for breach of contract. *SE Prop. Holdings*, 2013 WL 12170490, at *2.

In their Answers, Defendants admitted entering into the Loan Documents with the Debtor, admitted that the Loan had not been paid in full by its maturity date, and admitted that the Loan Documents are in default. As a result, Defendants' liability under the Loan Documents has been established and entry of summary judgment on the issue of Defendants' liability is appropriate.

WHEREFORE, Plaintiff Michael Goldberg as Chapter 11 Trustee respectfully requests entry of summary judgment against Defendants Boston Finance Group, LLC and Leo J. Govoni finding that Defendants are liable to the Debtor pursuant to the Loan Documents with the amount of damages to be established at a later date, and for such other relief as this Court deems just and proper.

Dated this 19th day of July, 2024

AKERMAN LLP

By: */s/ Steven R. Wirth*
    Steven R. Wirth
    Florida Bar No.: 170380
    Email: steven.wirth@akerman.com
    Raye C. Elliott
    Florida Bar No.: 18732
    Email: raye.elliott@akerman.com
    401 East Jackson Street, Suite 1700
    Tampa, Florida 33602
    Telephone: (813) 223-7333
    Facsimile: (813) 223-2837

    and

    Marc J. Gottlieb
    Florida Bar Number: 827819
    Email: marc.gottlieb@akerman.com
    201 East Las Olas Boulevard, Suite 1800
    Fort Lauderdale, FL 33301
    Phone: (954) 463-2700
    Fax: (954) 463-2224

    *Counsel for Chapter 11 Trustee, Michael Goldberg*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 19, 2024, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record.

*/s/Steven R. Wirth*

77247116

# Exhibit A

# REVOLVING LINE OF CREDIT
# LOAN AGREEMENT

THIS REVOLVING LINE OF CREDIT LOAN AGREEMENT (this "Agreement") is made as of June 1, 2009 (the "Effective Date"), by and between THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation, (the "Center"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760, and BOSTON FINANCE GROUP, LLC, a Florida limited liability company ("Debtor"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760.

In consideration of the mutual covenants and provisions of this Agreement, the parties agree as follows:

1. DEFINITIONS. The following terms shall have the following meanings for all purposes of this Agreement:

"Acceleration Event" means a breach or default, after the passage of all applicable notice and cure or grace periods, under any agreement, instrument or promissory note other than the Loan Documents between, among or by (i) Debtor or any Affiliate of Debtor, and, or for the benefit of, (ii) the Center and/or any Affiliate of the Center.

"Action" has the meaning set forth in Section 7.

"Advance" means any advance of the proceeds of the Loan made by the Center pursuant to the terms of Section 2.

"Affiliate" means any Person which directly or indirectly controls, is under common control with, or is controlled by any other Person. For purposes of this definition, "controls", "under common control with" and "controlled by" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or otherwise.

"Business Day" means any day on which banks are open for general banking business in the State of Florida other than a Saturday, Sunday, a legal holiday or any other day on which banks in the State of Florida are required or authorized by law to close.

"Code" means the United States Bankruptcy Code, 11 U.S.C. Sec. 101 et seq., as amended.

"Collateral" means all of Debtor's right, title and interest in all property, real and personal, owned by Debtor on the Effective Date or thereafter acquired by Debtor on or prior to payment in full and satisfaction of all obligations of Debtor to the Center under the Loan Documents.

"Debt" means as to such Person at any time: (a) all obligations of such Person for borrowed money; (b) all obligations of such Person evidenced by bonds, notes, debentures or other similar instruments; (c) all obligations of such Person to pay the deferred purchase price of property or services; (d) all capital lease obligations of such Person; (e) all contingent obligations or other

obligations of others guaranteed by such Person; (f) all obligations secured by a lien existing on property owned by such Person, regardless of whether the obligations secured thereby have been assumed by such Person or are nonrecourse to the credit of such Person; and (g) all reimbursement obligations of such Person (whether contingent or otherwise) in respect of letters of credit, bankers' acceptances, surety or other bonds and similar instruments.

"Effective Date" has the meaning set forth in the introductory paragraph of this Agreement.

"Event of Default" has the meaning set forth in Section 7.

"Indemnified Parties" has the meaning set forth in Section 9.

"Loan" means the revolving line of credit in the Maximum Loan Amount as described in Section 2.

"Loan Documents" means, collectively, this Agreement, the Note, the Security Agreement, the UCC Financing Statements, the Negative Pledge Agreement and all other documents, instruments and agreements executed in connection therewith or contemplated thereby.

"Losses" has the meaning set forth in Section 9.

"Material Adverse Effect" means a material adverse effect on (i) the financial condition of Debtor or (ii) the ability of Debtor to perform its obligations under the Loan Documents.

"Maturity Date" shall have the meaning set forth in the Note.

"Maximum Loan Amount" means $2,500,000.00.

"Negative Pledge Agreement" means the negative pledge agreement dated as of the Effective Date executed by the Debtor in favor of the Center.

"Note" means the promissory note dated as of the Effective Date executed by Debtor in favor of the Center, as such Note may be amended and/or amended and restated and/or substituted from time to time as contemplated by Section 2.

"Person" shall mean any individual, corporation, partnership, limited liability company, trust, unincorporated organization, governmental authority or any other form of entity.

"Security Agreement" means the security agreement dated as of the Effective Date executed by Debtor in favor of the Center, as such Security Agreement may be amended from time to time.

"UCC Financing Statements" means those UCC financing statements as may be requested by the Center pursuant to the Security Agreement to be executed and delivered by Debtor to perfect the Center's security interest in the Collateral.

2. REVOLVING LINE OF CREDIT.

A.  On the terms and subject to the satisfaction by Debtor of the conditions set forth in this Agreement, the Center agrees to make the Loan to Debtor, which Loan will be in the form of Advances made from time to time as provided in this Agreement. The outstanding aggregate principal amount of the Loan shall not exceed the Maximum Loan Amount at any time. So long as no event has occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event, Debtor may borrow, prepay and reborrow, from the Effective Date until the Maturity Date, an amount up to the Maximum Loan Amount.

B.  Simultaneously with the execution and delivery of this Agreement, Debtor shall execute and deliver to the Center the Note. The obligation of Debtor to pay the outstanding aggregate principal amount of all Advances plus accrued interest thereon shall be evidenced by the Note. Debtor irrevocably authorizes the Center to make or cause to be made, at or about the time of any Advance or at the time of the Center's receipt of any payment of the principal amount of the Note, an appropriate notation in the Center's records reflecting the amount of such Advance or payment, as applicable. The outstanding aggregate principal amount of the Note plus accrued interest thereon set forth in the Center's records maintained with respect to the Note (which may include computer records) shall, absent manifest error, be prima facie evidence of the outstanding aggregate principal amount plus accrued interest thereon due and owing to the Center, but the failure to record, or any error in so recording, any such amount on the Center's records shall not limit or otherwise affect the obligations of Debtor under the Note to make payments when due. Notwithstanding the foregoing, Debtor agrees to execute such amendments to the Note, amendments and restatements of the Note and/or substitute promissory notes for the Note as the Center may reasonably request to evidence Debtor's obligations to the Center under the Loan Documents.

C.  Debtor shall notify the Center at least five Business Days before the Business Day on which Debtor desires to receive an Advance.  The Center's obligation to fund each Advance shall be subject to the satisfaction of the following conditions precedent as of the date of the requested Advance:

(1) no event shall have occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event;

(2) Debtor shall be in compliance with each of the covenants set forth in Section 5;

(3) the outstanding principal balance of the Loan, together with the amount of the requested Advance, must not exceed the Maximum Loan Amount; and

(4) there shall have been no material adverse change in Debtor's business, operations, assets or financial condition since the Effective Date, as determined by the Center in its reasonable discretion.

Upon Debtor's satisfaction of the foregoing conditions, the Center will disburse the requested Advance in immediately available funds to such account as Debtor shall have specified in the notice or as otherwise directed by Debtor in the notice.

D. The Loan shall bear interest at the rate(s) of interest set forth in the Note and such interest shall be payable as provided in the Note. Debtor shall have the right to prepay (without premium or penalty) the Note in whole or in part at any time provided that any such prepayment shall only be made on a regularly scheduled payment date upon not less than 10 days prior written notice from Debtor to the Center. Debtor shall pay on the Maturity Date, and there shall become absolutely due and payable on the Maturity Date, the outstanding principal amount of the Loan and all accrued but unpaid interest thereon.

E. As security for the Loan, Debtor agrees to pledge its interest in the Collateral pursuant to the Security Agreement and to execute and deliver the Negative Pledge Agreement.

3. REPRESENTATIONS AND WARRANTIES OF THE CENTER. The representations and warranties of the Center contained in this section are being made by the Center as of the Effective Date to induce Debtor to enter into this Agreement and consummate the transactions contemplated herein, and Debtor has relied, and will continue to rely, upon such representations and warranties from and after the execution of this Agreement. The Center represents and warrants to Debtor as follows:

A. Organization of the Center. The Center has been duly formed, is validly existing and has taken all necessary action to authorize the execution, delivery and performance by the Center of this Agreement.

B. Authority of the Center. The person who has executed this Agreement on behalf of the Center is duly authorized so to do.

C. Enforceability. Upon execution by the Center, this Agreement shall constitute the legal, valid and binding obligation of the Center, enforceable against the Center in accordance with its terms.

All representations and warranties of the Center made in this Agreement shall survive the execution of this Agreement.

4. REPRESENTATIONS AND WARRANTIES OF DEBTOR. The representations and warranties of Debtor contained in this section are being made by Debtor as of the Effective Date and the date of each Advance to induce the Center to enter into this Agreement and consummate the transactions contemplated herein, and the Center has relied, and will continue to rely, upon such representations and warranties from and after the Effective Date and the date of each Advance. Debtor represents and warrants to the Center as follows:

A. Organization and Authority of Debtor. Debtor is duly organized or formed, validly existing and in good standing under the laws of the State of Florida and qualified as a

foreign entity to do business in any jurisdiction where such qualification is required. All necessary company action has been taken to authorize the execution, delivery and performance of the Loan Documents. The person(s) who have executed the Loan Documents on behalf of Debtor are duly authorized so to do.

B. Enforceability of Documents. Upon execution by Debtor, the Loan Documents shall constitute the legal, valid and binding obligations of Debtor, enforceable against Debtor in accordance with their respective terms.

C. Litigation. There are no suits, actions, proceedings or investigations pending or, to the actual knowledge of Debtor, threatened against or involving Debtor, the Collateral or any of Debtor's assets before any court, arbitrator, or administrative or governmental body which might reasonably result in a Material Adverse Effect.

D. Absence of Breaches or Defaults. The Debtor is not in default beyond any applicable grace period under any document, instrument or agreement to which Debtor is a party or by which the Debtor, the Collateral, or any of the property of Debtor is subject or bound which would have a Material Adverse Effect or would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not result in a Material Adverse Effect or result in any breach or default under any other document, instrument or agreement to which Debtor is a party or by which Debtor, the Collateral or any of the property of Debtor is subject or bound which would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not violate any applicable law, statute, regulation, rule, ordinance, code, rule or order.

E. Licenses, Permits, Consents and Approvals. Debtor has all required licenses, permits, consents and approvals, both governmental and private, to use and operate the Collateral and conduct its business in the intended manner.

F. Insolvency. Debtor is not insolvent within the meaning of the Code.

G. Taxes. Debtor has paid, in the ordinary course of business, all taxes, assessments, levies and other governmental charges which have been levied or imposed upon Debtor, the Collateral and/or Debtor's properties and were due and payable.

H. Title to Collateral; First Priority Security Interest. Debtor owns, and with respect to Collateral acquired after the date hereof, Debtor will own, legally and beneficially, the Collateral, free and clear of any lien, security interest, pledge, hypothecation, claim or other encumbrance, or any right or option on the part of any third person to purchase or otherwise acquire or obtain any lien or security interest in the Collateral or any part thereof, except for the lien and security interest granted in the Security Agreement in favor of the Center. Upon the execution of the Loan Documents by the parties, the Center shall have a valid first priority lien upon and security interest in the Collateral.

I.    No Actions. No action has been brought or is threatened which would in any way prohibit or restrict the execution and delivery of any of the Loan Documents by Debtor or the performance in all respects of Debtor thereunder.

All representations and warranties of Debtor made in this Agreement shall survive the execution of this Agreement and each Advance.

5.    COVENANTS. Debtor covenants to the Center from and after the Effective Date as follows:

A.    Books, Records and Inspections. Debtor shall, at all reasonable times upon prior written notice from the Center and during normal business hours, (i) provide the Center and the Center's officers, employees, agents, advisors, attorneys and accountants with access to Debtor's personal and real properties and books and records, and (ii) allow such persons to make such inquires of Debtor's officers and employees and to make copies and perform such verifications as the Center considers reasonably necessary; provided, however, all such inspections, copies and verifications shall be at the Center's sole cost and expense and the Center shall reasonably attempt to minimize, during any such activity, interference with the operation of Debtor's business and the Center shall keep any information obtained confidential; provided, however, the Center shall not be required to keep confidential (1) any information which had previously been made public, (2) information that the Center is required to disclose by court order, subpoena or under federal or state law, or (3) information received by the Center from a third party.

B.    Reporting Obligations. Debtor will provide the Center with each of the following:

(1) Financial Statements. Within 45 days after the end of each fiscal quarter and within 120 days after the end of each fiscal year of Debtor, Debtor shall deliver to the Center complete financial statements of Debtor including a balance sheet, profit and loss statement, cash flow statement and all other related schedules for the fiscal period then ended. All such financial statements shall be prepared in accordance with generally accepted accounting principles, consistently applied from period to period, and shall be certified to be accurate and complete by Debtor (or the Treasurer or other appropriate officer of Debtor). Debtor understands that the Center is relying upon such financial statements and Debtor represents that such reliance is reasonable. The financial statements delivered to the Center need not be audited, but Debtor shall deliver to the Center copies of audited financial statements of Debtor which may be prepared if and when they are available.

(2) Event of Default or Acceleration Event. Within five days after Debtor becomes aware of an Event of Default or an Acceleration Event, Debtor shall deliver to an officer of the Center written notification specifying the nature and period of existence thereof and what action Debtor is taking or proposes to take with respect thereto.

(3) Litigation. Within ten days after Debtor becomes aware of any action, suit or proceeding pending or threatened in writing against or involving Debtor and/or Debtor's properties, Debtor shall notify the Center of such action, suit or proceeding and in such notice shall specify the nature thereof, whether the alleged liability therein is covered by insurance then in effect and, if so covered, the monetary coverage thereof, and what action Debtor is taking or proposes to take with respect thereto.

(4) Auditors' Reports. If and when received, Debtor shall deliver to the Center a copy of each report submitted to Debtor by its independent accountants in connection with any annual, interim or special audit made by it of the books of Debtor.

(5) Other Information. Debtor shall deliver to the Center promptly after the receipt of written request therefor information concerning Debtor requested by the Center that is required to satisfy all requirements of federal and state law applicable to the Center and all other regulatory laws applicable to the Center or to which the Center is subject or bound.

D. Payment of Taxes, Assessments and Claims. Unless Debtor shall contest the amount or validity thereof in the manner described below, Debtor shall pay all taxes, assessments and governmental charges or levies imposed upon it or upon its income or profits, or upon any properties belonging to it, prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien upon any of its properties. Debtor may, at its own expense, contest or cause to be contested such taxes, assessments, governmental charges or levies or other claims (i) in good faith, (ii) by proper proceedings, and (iii) against which adequate reserves in accordance with generally accepted accounting principles are being maintained.

E. Organization of Debtor. Debtor will continue to be a limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction and qualified to do business in any jurisdiction where such qualification is required.

F. Licenses, Permits, Consents and Approvals. Debtor shall maintain in full force and effect all required licenses, permits, consents and approvals, both governmental and private, to use and operate its assets and conduct its business in the intended manner.

G. Use of Proceeds. Debtor shall use the proceeds of the Loan for funding loans and other credit facilities and financial accommodations (as such term is used in the Code) extended to third party borrowers.

H. Debt. Debtor shall not incur, create, assume or permit to exist any Debt, except (a) Debt to the Center or Affiliates of the Center and (b) Debt incurred pursuant to trade accounts arising in the ordinary course of business that are not past due by more than 30 days.

I. Fundamental Changes. Debtor shall not consolidate with or merge into any Person or permit any Person to merge into it.

J. Disposition of Assets. Without the prior written consent of the Center, Debtor shall not, directly or indirectly, sell, assign, lease, transfer or otherwise dispose of all or substantially all of its assets (other than in the ordinary course of business for full and fair consideration).

K. Transactions With Affiliates. Without the prior written consent of the Center, Debtor will not enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service, with any Affiliate of Debtor, except transactions for fair value in accordance with reasonable commercial standards.

L. Maintenance of Assets. Debtor shall maintain, keep and preserve all of its tangible and intangible property and other assets that are necessary and useful for proper conduct of its business.

M. Title; First Priority Lien. Debtor shall maintain good and marketable fee simple title to the Collateral, free and clear of all liens, encumbrances, charges and other exceptions to title.

6. TRANSACTION CHARACTERIZATION. This Agreement is a contract to extend a financial accommodation (as such term is used in the Code) for the benefit of Debtor. It is the intent of the parties hereto that the business relationship created by this Agreement and the other Loan Documents is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in the Loan Documents. None of the agreements contained in the Loan Documents is intended, nor shall the same be deemed or construed, to create a partnership between Debtor and the Center, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

7. DEFAULT AND REMEDIES.

A. Each of the following shall be deemed an event of default by Debtor, after notice, to the extent required hereunder, and after the expiration of any applicable grace or cure period without the cure thereof (each, an "Event of Default"):

(1) If any representation or warranty of Debtor set forth in any of the Loan Documents is false in any material respect when made or becomes false in any material respect, or if Debtor renders any materially false statement or account;

(2) If any principal, interest or other monetary sum due under the Note or any other Loan Document is not paid within five days from the date when due and the Center shall have given notice of such failure to Debtor and such failure shall not have been cured by Debtor within five days from the delivery of such notice;

(3) If Debtor fails to observe or perform any of the other covenants (except as otherwise provided below), conditions, or obligations of this Agreement or there is a breach or default under any other Loan Document beyond any applicable notice or cure period; provided, however, if any such event does not involve the payment of any monetary sum, is not the result of a willful or intentional act or omission of Debtor, does not place any rights or property of the Center in immediate jeopardy, and is within the reasonable power of Debtor to promptly cure after receipt of notice thereof, all as determined by the Center in its reasonable discretion, then such event shall not constitute an Event of Default hereunder, unless otherwise expressly provided herein, unless and until the Center shall have given Debtor notice thereof and a period of 30 days shall have elapsed, during which period Debtor may correct or cure such event, upon failure of which an Event of Default shall be deemed to have occurred hereunder (except as otherwise provided in the following sentence) without further notice or demand of any kind being required. If such nonmonetary event cannot reasonably be cured within such 30-day period, as determined by the Center in its reasonable discretion, and Debtor is diligently pursuing a cure of such event, then an Event of Default shall not be deemed to have occurred hereunder upon the expiration of such 30-day period and Debtor shall have a reasonable period to cure such event beyond such 30-day period, which shall not exceed 90 days after receiving notice of the event from the Center. If Debtor shall fail to correct or cure such event within such 90-day period, an Event of Default shall be deemed to have occurred hereunder without further notice or demand of any kind being required; or

(4) If Debtor becomes insolvent within the meaning of the Code, files or notifies the Center that it intends to file a petition under the Code, initiates a proceeding under any similar law or statute relating to bankruptcy, insolvency, reorganization, winding up or adjustment of debts (collectively, an "Action"), becomes the subject of either an involuntary Action or petition under the Code without such involuntary Action or petition being dismissed within 30 days of filing or, if Debtor is diligently proceeding to dismiss such petition, such longer period of time as may be required, but in no event shall such longer period of time be greater than 90 days, or is not generally paying its debts as the same become due.

B. Upon and during the continuance of an Event of Default, subject to the limitations, notices and cure periods set forth in Section 7A, or an Acceleration Event, the Center shall have no obligation to fund any Advance to Debtor and the Center may declare all obligations of Debtor under the Note, this Agreement and any other Loan Document to be due and payable, and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind except as expressly provided herein. Thereafter, the Center may exercise, at its option, concurrently, successively or in any combination, all remedies available at law or in equity, including without limitation any one or more of the remedies available under the Note or any other Loan Document. Neither the acceptance of this Agreement nor its enforcement shall prejudice or in any manner affect the Center's right to realize upon or enforce any other security now or hereafter held by the Center, with it being agreed that the

Center shall be entitled to enforce this Agreement and any other security now or hereafter held by the Center in such order and manner as it may in its absolute discretion determine. No remedy herein conferred upon or reserved to the Center is intended to be exclusive of any other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Documents to the Center, or to which the Center may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Center.

8. ASSIGNMENTS BY THE CENTER. The Center may assign in whole or in part its rights under this Agreement. Upon any unconditional assignment of the Center's entire right and interest hereunder, the Center shall automatically be relieved, from and after the date of such assignment, of liability for the performance of any obligation of the Center contained herein arising after the date of the assignment provided that any assignee shall be bound by all of the Center's obligations hereunder accruing from and after the date of such assignment.

9. INDEMNITY. Debtor agrees to indemnify, hold harmless and defend the Center and each of its directors, officers, shareholders, employees, beneficiaries, successors, assigns, agents, experts, licensees, affiliates, lenders, mortgagees and trustees, as applicable (collectively, the "Indemnified Parties"), from and against any and all losses, costs, claims, liabilities, damages and expenses, including, without limitation, reasonable attorneys' fees (collectively "Losses"), arising as the result of a breach of any of the representations, warranties, covenants, agreements or obligations of Debtor set forth in this Agreement, but excluding Losses suffered by an Indemnified Party directly arising out of such Indemnified Party's gross negligence or willful misconduct.

10. MISCELLANEOUS PROVISIONS.

A. Notices. All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Agreement shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

If to the Center: THE CENTER FOR SPECIAL NEEDS
　　　　　　　　TRUST ADMINISTRATION, INC.
　　　　　　　　4912 Creekside Drive
　　　　　　　　Clearwater, Florida 33760

If to Debtor:        BOSTON FINANCE GROUP, LLC
4912 Creekside Drive
Clearwater, Florida 33760

B. Waiver and Amendment. No provisions of this Agreement shall be deemed waived or amended except by a written instrument unambiguously setting forth the matter waived or amended and signed by the party against which enforcement of such waiver or amendment is sought. Waiver of any matter shall not be deemed a waiver of the same or any other matter on any future occasion.

C. Captions. Captions are used throughout this Agreement for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

D. The Center's Liability. Notwithstanding anything to the contrary provided in this Agreement, it is specifically understood and agreed, with such agreement being a primary consideration for the execution of this Agreement by the Center, that (i) there shall be absolutely no personal liability on the part of any shareholder, director, officer, employee, beneficiary or agent of the Center, with respect to any of the terms, covenants and conditions of this Agreement or the other Loan Documents, (ii) Debtor waives all claims, demands and causes of action against the Center's officers, directors, employees, beneficiaries and agents in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center and (iii) Debtor shall look solely to the assets of the Center for the satisfaction of each and every remedy of Debtor in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center, with such exculpation of liability to be absolute and without any exception whatsoever.

E. Severability. The provisions of this Agreement shall be deemed severable. If any part of this Agreement shall be held unenforceable, the remainder shall remain in full force and effect, and such unenforceable provision shall be reformed by such court so as to give maximum legal effect to the intention of the parties as expressed therein.

F. Construction Generally. This is an agreement between parties who are experienced in sophisticated and complex matters similar to the transaction contemplated by this Agreement and is entered into by both parties in reliance upon the economic and legal bargains contained herein and shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

G. Other Documents. Each of the parties agrees to sign such other and further documents as may be reasonably necessary to carry out the intentions expressed in this Agreement.

H. Attorneys' Fees. In the event of any judicial or other adversarial proceeding between the parties concerning this Agreement, the prevailing party shall be entitled to recover

its reasonable attorneys' fees and other costs in addition to any other relief to which it may be entitled. References in this Agreement to the attorneys' fees and/or costs of a party shall mean both the reasonable fees and costs of independent outside counsel retained by such party with respect to this transaction and the reasonable fees and costs of the party's in-house counsel incurred in connection with this transaction.

I.   Entire Agreement. This Agreement and the other Loan Documents, together with any other certificates, instruments or agreements to be delivered in connection therewith, constitute the entire agreement between the parties with respect to the subject matter hereof, and there are no other representations, warranties or agreements, written or oral, between Debtor and the Center with respect to the subject matter of this Agreement.

J.   Forum Selection; Jurisdiction; Venue; Choice of Law. Debtor acknowledges that this Agreement was substantially negotiated in the State of Florida, the Agreement was signed and delivered by the Center and Debtor in the State of Florida, all payments under the Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Agreement or any of the other Loan Documents, the parties hereto hereby expressly submit to the jurisdiction of all federal and state courts located in the State of Florida and Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of the parties hereto that all provisions of this Agreement shall be governed by and construed under the laws of the State of Florida. Nothing in this Section shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in a state other than the State of Florida to the extent the Center deems such proceeding necessary or advisable to exercise remedies available under this Agreement or the other Loan Documents.

K.   Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

L.   Binding Effect. This Agreement shall be binding upon and inure to the benefit of Debtor and the Center and their respective successors and permitted assigns, including, without limitation, any United States trustee, any debtor in possession or any trustee appointed from a private panel.

M.   Survival. All representations, warranties, agreements, obligations and indemnities of Debtor and the Center set forth in this Agreement shall survive the execution of this Agreement and each Advance.

**Signature Page Follows:**

IN WITNESS WHEREOF, Debtor and the Center have entered into this Agreement as of the date first above written.

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.

By_____

Its_____


BOSTON FINANCE GROUP, LLC

By_____

Its_Managing Member_____

# Exhibit B

# PROMISSORY NOTE

Dated as of June 1, 2009
Clearwater, Florida

$2,500,000.00

BOSTON FINANCE GROUP, LLC, a Florida limited liability company whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ("Debtor"), for value received, hereby promises to pay to THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation whose address is 4912 Creekside Drive, Clearwater, Florida 33760 (the "Center"), or order, on or before the Maturity Date (as defined below), the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00), or such amount thereof as may be outstanding from time to time, in accordance with that certain Revolving Line of Credit Loan Agreement dated as of the date of this Note between Debtor and the Center, as such agreement may be amended from time to time (the "Loan Agreement"), together with interest as hereinafter provided.

Initially capitalized terms which are not otherwise defined in this Note shall have the meanings set forth in the Loan Agreement. The following terms shall have the following meanings for all purposes of this Note:

"Applicable Margin" means an annual percentage rate equal to Twenty Percent (20%) of the Third Party Interest Rate.

"Advance Interest Rate" means, with respect to any Advance, the Third Party Interest Rate less the Applicable Margin.

"Interest Period" means (i) initially, the period beginning on the date of this Note and ending on the last day of the calendar quarter, and (ii) thereafter, the period beginning on the first day of the calendar quarter and ending on the last day of such calendar quarter.

"Maturity Date" means July 1, 2012.

"Third Party Interest Rate" means the annual interest rate charged by the Debtor with respect to any loan, or other credit facility or financial accommodations (as such term is used in the Code) funded by the Debtor with an Advance.

Debtor shall pay the Center interest on the outstanding principal amount of each Advance at the Advance Interest Rate, in arrears for each Interest Period on or before the fifteenth day after the end of each Interest Period. The Center shall notify Debtor in writing on or before the fifth day after the end of each Interest Period during the term of this Note of the Center's determination of the interest payable for such Interest Period. All outstanding principal and unpaid accrued interest shall be paid on the Maturity Date.

Each payment hereunder shall be applied first to any past due payments under this Note (including payment of all Costs as herein defined), then to accrued interest, and the balance, if

any, shall be applied to the unpaid principal balance of this Note; provided, however, each payment hereunder while an Event of Default under the Loan Documents has occurred and is continuing shall be applied as the Center in its sole discretion may determine.

Upon execution of this Note, Debtor shall establish arrangements whereby all payments hereunder are transferred by wire or other means directly from Debtor's bank account to such account as the Center may from time to time designate.

Debtor may prepay this Note as provided in the Loan Agreement.

All past-due principal and/or interest shall bear interest at the lesser of the highest rate for which the Debtor may legally contract or the rate of 18% per annum (the "Default Rate"), and such Default Rate shall continue to apply following a judgment in favor of the Center under this Note.

All payments of principal and interest due hereunder shall be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by Debtor, and (ii) without any other right of abatement, reduction, setoff, defense, counterclaim, interruption, deferment or recoupment for any reason whatsoever. Debtor will pay the amounts necessary such that the gross amount of the principal and interest received by the Center is not less than that required by this Note.

No delay or omission on the part of the Center in exercising any remedy, right or option under this Note shall operate as a waiver of such remedy, right or option. In any event, a waiver on any one occasion shall not be construed as a waiver or bar to any such remedy, right or option on a future occasion.

Debtor hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and except as otherwise provided in the Loan Documents, all other notices or demands in connection with delivery, acceptance, performance, default or endorsement of this Note.

All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Note shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day, following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

|              |                                      |
|--------------|--------------------------------------|
| If to the Center: | THE CENTER FOR SPECIAL NEEDS<br>TRUST ADMINISTRATION, INC.<br>4912 Creekside Drive<br>Clearwater, Florida 33760 |
| If to Debtor: | BOSTON FINANCE GROUP, LLC<br>4912 Creekside Drive<br>Clearwater, Florida 33760 |

or to such other address or such other person as either party may from time to time hereafter specify to the other party in a notice delivered in the manner provided above.

Should any indebtedness represented by this Note be collected at law or in equity, or in bankruptcy or other proceedings, or should this Note be placed in the hands of attorneys for collection after default, Debtor shall pay, in addition to the principal and interest due and payable hereon, all costs of collecting or attempting to collect this Note (the "Costs"), including reasonable attorneys' fees and expenses of the Center (including those fees and expenses incurred in connection with any appeal and those of the Center's in-house counsel) regardless of whether a judicial action is commenced by the Center.

This Note may not be amended or modified except by a written agreement duly executed by Debtor and the Center. In case any one or more of the provisions contained in this Note shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such provision had never been contained herein or therein.

Notwithstanding anything to the contrary contained in any of the Loan Documents, the obligations of Debtor to the Center under this Note and the other Loan Documents are subject to the limitation that payments of interest, late charges and Costs to the Center shall not be required to the extent that receipt of any such payment by the Center would be contrary to provisions of applicable law limiting the maximum rate of interest that may be charged or collected by the Center. The portion of any such payment received by the Center that is in excess of the maximum interest permitted by such provisions of law shall be credited to the principal balance of this Note or if such excess portion exceeds the outstanding principal balance of this Note, then such excess portion shall be refunded to Debtor. All interest paid or agreed to be paid to the Center shall, to the extent permitted by applicable law, be amortized, prorated, allocated and/or spread throughout the full term of this Note (including, without limitation, the period of any renewal or extension thereof) so that interest for such full term shall not exceed the maximum amount permitted by applicable law.

It is the intent of the parties hereto that the business relationship created by this Note and the other Loan Documents is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in the Loan Documents. None of the agreements contained in the Loan Documents is intended, nor shall the same be deemed or construed, to create a partnership between the Center and Debtor, to make them joint venturers,

to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

This Note shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

Debtor acknowledges that this Note was substantially negotiated in the State of Florida, the Note was executed and delivered in the State of Florida, all payments under this Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Note, the parties hereto expressly submit to the jurisdiction of all federal and state courts located in the State of Florida. Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of Debtor and the Center that all provisions of this Note shall be governed by and construed under the laws of the State of Florida. Nothing contained in this paragraph shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in any state in which the Center deems such proceeding necessary or advisable to exercise remedies available under the Loan Documents.

This obligation shall bind Debtor and its successors and assigns, and the benefits hereof shall inure to the Center and its successors and assigns. The Center may assign its rights under this Note as set forth in the Loan Agreement.

IN WITNESS WHEREOF, Debtor has executed and delivered this Note effective as of the date first set forth above.

BOSTON FINANCE GROUP, LLC

By _____

Its _Managing Member_

# Exhibit C

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement") is made and entered into as of June 1, 2009 by and between BOSTON FINANCE GROUP, LLC, a Florida limited liability company ("Debtor"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760, and THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation, (the "Center"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760.

## PRELIMINARY STATEMENT

The Center has agreed to make the Loan to Debtor. To secure the Loan, Debtor has agreed to grant the Center a security interest in the Collateral on the terms and conditions set forth in this Agreement. Capitalized terms not defined herein shall have the respective meanings set forth in that certain Revolving Line of Credit Loan Agreement dated as of the date hereof between Debtor and the Center.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises hereinafter set forth, the Center and Debtor agree as follows:

1. DEBTOR'S OBLIGATION; SECURITY INTEREST CREATED. The Center has agreed to advance to Debtor the Loan, as evidenced by the execution and delivery of the Note to the Center, and Debtor shall pay other sums advanced or expended by the Center pursuant to the terms of the Loan Documents, and perform all other terms and conditions of Debtor set forth in the Loan Documents (collectively, the "Obligations"). To secure the payment of the Obligations, Debtor hereby grants to the Center a security interest in the Collateral. Debtor shall provide to the Center such additional documentation, including UCC financing statements, as the Center may reasonably request to document, perfect and prioritize its security interest in the Collateral.

2. DEFAULT. Any action or event which would constitute an Event of Default (a "Default") shall permit the Center to exercise and pursue the remedies specified in Section 3 below.

3. REMEDIES FOR DEFAULT. In the event that Debtor is, or is deemed to be, in Default hereunder, the Center shall have all rights and remedies of a secured party in, to and against the Collateral granted by the Uniform Commercial Code in the State of Florida and otherwise available at law or in equity, including, without limitation: (i) the right to declare all payments due under the Loan Documents immediately due and payable and the right to recover all fees and expenses (including reasonable attorneys' fees) in connection with the collection or enforcement thereof, which fees and expenses shall constitute additional Obligations of Debtor hereunder; (ii) the right to act as, and Debtor hereby constitutes and appoints the Center, Debtor's true, lawful and irrevocable attorney-in-fact (which appointment shall be deemed coupled with an interest) to demand, receive and enforce payments and to give receipts, releases, satisfaction for and to sue for moneys payable to Debtor under or with respect to any of the Collateral under this Agreement, and actions taken pursuant to this appointment may be taken either in the name of Debtor or in the name of the Center with the same force and effect as if this appointment had

not been made; (iii) the right to take immediate and exclusive possession of the Collateral, or any part thereof; (iv) the right to hold, maintain, preserve and prepare the Collateral for sale, until disposed of; (v) the right to dispose of the Collateral; (vi) the right to require Debtor to assemble and package the Collateral and make it available to the Center for its possession at a place to be designated by the Center which is reasonably convenient to the Center; (vii) the right to sell, hold or otherwise dispose of all or any part of the Collateral; (viii) the right to sue for specific performance of any obligation under the Loan Documents or to recover damages for breach thereof; (ix) the right to receive all cash distributions or payments payable in respect of the Collateral; and (x) the right to exercise or cause to be exercised all voting rights and partnership or limited liability company, as applicable, powers in respect of the Collateral. The remedies of the Center hereunder are cumulative and the exercise of any one or more of the remedies provided for herein or under the Uniform Commercial Code or other applicable law shall not be construed as a waiver of any of the other remedies of the Center so long as any part of the Obligations secured hereby remains unsatisfied. The Center shall have no duty to mitigate any loss to the Debtor occasioned by enforcement of any remedy hereunder and shall have no duty of any kind to any subordinated creditor of Debtor.

4. APPLICATION OF PROCEEDS. Should the Center exercise the rights and remedies specified in Section 3 hereof, any proceeds received thereby shall be first applied to pay the costs and expenses, including reasonable attorneys' fees, incurred by the Center as a result of Debtor's Default. The remainder of any proceeds, net of the Center's costs and expenses, shall be applied to the satisfaction of the Obligations and, so long as Debtor is not in Default hereunder, any excess shall be paid over to Debtor. If Debtor is in Default hereunder, any excess may be held by the Center for a reasonable time and either applied to the Obligations or paid over to Debtor.

5. APPLICABLE LAW. Debtor acknowledges that this Agreement was substantially negotiated in the State of Florida, the executed Agreement was delivered in the State of Florida, all payments under the Loan Documents will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Agreement, the parties hereto expressly submit to the jurisdiction of all federal and state courts located in the State of Florida. Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of the parties hereto that all provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Florida. To the extent that a court of competent jurisdiction finds Florida law inapplicable with respect to any provisions hereof, then, as to those provisions only, the laws of the state where the Collateral is located shall be deemed to apply. Nothing contained in this paragraph shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in the state in which the Collateral is located to the extent the Center deems such proceeding necessary or advisable to exercise remedies available under the Loan Documents.

6.  ASSIGNABILITY. This Agreement may not by assigned by Debtor without the consent of the Center. The Center may assign its rights under this Agreement to any third party without the prior consent of Debtor.

7.  POSSESSION. Until a Default occurs, Debtor may retain possession of the Collateral may use it in any lawful manner not inconsistent with this Agreement, the provisions of any policies of insurance thereon or the other Loan Documents.

8.  WAIVER AND AMENDMENT. No Default hereunder by Debtor shall be deemed to have been waived by the Center except by a writing to that effect signed by the Center and no waiver of any Default shall operate as a waiver of any other Default on a future occasion. No modification, rescission, waiver, release or amendment of any provision of this Agreement shall be made except by a written agreement signed by Debtor and the Center.

9.  SEVERABILITY. In case any one or more of the provisions contained herein or in the Note shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such provision had never been contained herein or therein.

10.  NOTICES. All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Agreement shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

> If to the Center:   THE CENTER FOR SPECIAL NEEDS
> TRUST ADMINISTRATION, INC.
> 4912 Creekside Drive
> Clearwater, Florida 33760
>
> If to Debtor:   BOSTON FINANCE GROUP, LLC
> 4912 Creekside Drive
> Clearwater, Florida 33760

11.  COUNTERPARTS. This Agreement may be executed in any number of counterparts and each thereof shall be deemed to be an original, and all such counterparts shall constitute but one and the same instrument.

12. HEADINGS. The headings appearing in this Agreement have been inserted for convenient reference only and shall not modify, define, limit or expand the express provisions of this Agreement.

13. CHARACTERIZATION; INTERPRETATION. It is the intent of the parties hereto that the business relationship created by the Note, this Agreement and the other Loan Documents is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in the Loan Documents. None of the agreements contained in the Loan Documents is intended, nor shall the same be deemed or construed, to create a partnership between the Center and Debtor, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor. This Agreement shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party, which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

14. BINDING EFFECT. This Agreement shall be binding upon and inure to the benefit of Debtor and the Center and their respective successors and permitted assigns, including, without limitation, any United States trustee, any debtor in possession or any trustee appointed from a private panel.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the day and year first above written.

DEBTOR:

BOSTON FINANCE GROUP, LLC

By _____

Its _Managing Member_____

SECURED PARTY:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.

By _____

Its _Managing Member_____

# Exhibit D

## NEGATIVE PLEDGE AGREEMENT

THIS NEGATIVE PLEDGE AGREEMENT (this "Agreement") is made as of June 1, 2009 (the "Effective Date"), by BOSTON FINANCE GROUP, LLC, a Florida limited liability company ("Debtor"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760 for the benefit of THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation, (the "Center"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760.

## PRELIMINARY STATEMENT

Capitalized terms not defined herein shall have the respective meanings set forth in that certain Revolving Line of Credit Loan Agreement (the "Loan Agreement") dated as of the date hereof between the Center and Debtor. The Center has agreed to make the Loan to Debtor. In consideration of the Loan and as security for the Loan, Debtor has agreed to execute and deliver this Agreement.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises hereinafter set forth, the Center and Debtor agree as follows:

**1. NEGATIVE PLEDGE.** Debtor agrees that it shall not sell, assign, mortgage, grant, bargain, convey, pledge or encumber by deed of trust, security agreement or other consensual monetary lien in or on Debtor's interest in the Collateral or any portion thereof or permit Debtor's interest in the Collateral or any part thereof to be sold, assigned, mortgaged, granted, bargained, conveyed, pledged or encumbered by deed of trust, security agreement or other consensual monetary lien without the prior written consent of the Center, which consent may be withheld in the Center's sole discretion. Any sale, assignment, mortgage, grant, bargain, conveyance, pledge or consensual encumbrance in breach of the preceding sentence shall be null and void, and of no force and effect, and shall constitute an "Event of Default" under the Loan Agreement. Debtor acknowledges that a material inducement to the Center's willingness to advance the Loan is the execution and delivery by Debtor of this Agreement.

**2. RECORDATION.** Debtor agrees to make such filings in appropriate state and county records as the Center may reasonably request to provide constructive notice of the terms and conditions of this Agreement and the Center's rights under the Loan Documents.

**3. RELEASE.** The Center agrees that at such time as the obligations of Debtor under the Loan Documents are paid and satisfied in full, the Center shall execute a release of this Agreement and its security interest in the Collateral.

**4. MISCELLANEOUS PROVISIONS.**

**A. Notices.** All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Agreement shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a)

receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

If to the Center:    THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.
4912 Creekside Drive
Clearwater, Florida 33760

If to Debtor:    BOSTON FINANCE GROUP, LLC
4912 Creekside Drive
Clearwater, Florida 33760

**B. Waiver and Amendment.** No provisions of this Agreement shall be deemed waived or amended except by a written instrument unambiguously setting forth the matter or amended except by a written instrument unambiguously setting forth the matter waived or amended and signed by the party against which enforcement of such waiver or amendment is sought. Waiver of any matter shall not be deemed a waiver of the same or any other matter on any future occasion.

**C. Captions.** Captions are used throughout this Agreement for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

**D. Severability.** The provisions of this Agreement shall be deemed severable. If any part of this Agreement shall be held unenforceable, the remainder shall remain in full force and effect, and such unenforceable provision shall be reformed by such court so as to give maximum legal effect to the intention of the parties as expressed therein.

**E. Binding Effect.** This Agreement shall be binding upon and inure to the benefit of Debtor and the Center and their respective successors and permitted assigns, including, without limitation, any United States trustee, any debtor in possession or any trustee appointed from a private panel.

**F. Forum Selection; Jurisdiction; Venue; Choice of Law.** Debtor and the Center acknowledge that this Agreement was substantially negotiated in the State of Florida, the Agreement was signed and delivered by Debtor in the State of Florida, and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Agreement, the parties hereto hereby expressly submit to the jurisdiction of all federal and state courts located in the State of Florida and Debtor consents that it may be served with any process or paper by registered mail or by

personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of the parties hereto that all provisions of this Agreement shall be governed by and construed under the laws of the State of Florida. To the extent that a court of competent jurisdiction finds Florida law inapplicable with respect to any provisions hereof, then, as to those provisions only, the laws of the state where the Collateral is located shall be deemed to apply. Nothing in this Section shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in the state in which the Collateral is located to the extent the Center deems such proceeding necessary or advisable to exercise remedies available under this Agreement.

IN WITNESS WHEREOF, Debtor and the Center have entered into this Agreement as of the date first above written.

BOSTON FINANCE GROUP, LLC

By _____

Its __Managing Member__

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.

By _____

Its __Managing Member__

# Exhibit E

## AMENDED AND RESTATED
## REVOLVING LINE OF
## CREDIT AGREEMENT

THIS AMENDED AND RESTATED REVOLVING LINE OF CREDIT AGREEMENT (this "Agreement") is made as of December 1, 2009 (the "Effective Date"), by and between THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation, (the "Center"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760, and BOSTON FINANCE GROUP, LLC, a Florida limited liability company ("Debtor"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760.

The Center and Debtor are parties to a Revolving Line of Credit Loan Agreement, Security Agreement, and Negative Pledge Agreement, all dated June 1, 2009 (the "Prior Loan Documents") pursuant to which the Center has made certain loans and financial accommodations available to Debtor. The Center and Debtor now desire to consolidate, amend and restate the Prior Loan Documents in all respects as hereinafter set forth.

In consideration of the mutual covenants and provisions of this Agreement, the parties agree as follows:

**1. DEFINITIONS.** The following terms shall have the following meanings for all purposes of this Agreement:

"Acceleration Event" means a breach or default, after the passage of all applicable notice and cure or grace periods, under any agreement, instrument or promissory note other than the Loan Documents between, among or by (i) Debtor or any Affiliate of Debtor, and, or for the benefit of, (ii) the Center and/or any Affiliate of the Center.

"Action" has the meaning set forth in Section 7.

"Advance" means any advance of the proceeds of the Loan made by the Center pursuant to the terms of Section 2.

"Affiliate" means any Person which directly or indirectly controls, is under common control with, or is controlled by any other Person. For purposes of this definition, "controls", "under common control with" and "controlled by" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or otherwise.

"Business Day" means any day on which banks are open for general banking business in the State of Florida other than a Saturday, Sunday, a legal holiday or any other day on which banks in the State of Florida are required or authorized by law to close.

"Code" means the United States Bankruptcy Code, 11 U.S.C. Sec. 101 et seq., as amended.

"Collateral" means all of Debtor's right, title and interest in all property, real and personal, owned by Debtor on the Effective Date or thereafter acquired by Debtor on or prior to payment in full and satisfaction of all obligations of Debtor to the Center under the Loan Documents.

"Debt" means as to such Person at any time: (a) all obligations of such Person for borrowed money; (b) all obligations of such Person evidenced by bonds, notes, debentures or other similar instruments; (c) all obligations of such Person to pay the deferred purchase price of property or services; (d) all capital lease obligations of such Person; (e) all contingent obligations or other obligations of others guaranteed by such Person; (f) all obligations secured by a lien existing on property owned by such Person, regardless of whether the obligations secured thereby have been assumed by such Person or are nonrecourse to the credit of such Person; and (g) all reimbursement obligations of such Person (whether contingent or otherwise) in respect of letters of credit, bankers' acceptances, surety or other bonds and similar instruments.

"Effective Date" has the meaning set forth in the introductory paragraph of this Agreement.

"Event of Default" has the meaning set forth in Section 7.

"Indemnified Parties" has the meaning set forth in Section 9.

"Loan" means the revolving line of credit in the Maximum Loan Amount as described in Section 2.

"Loan Documents" means, collectively, this Agreement, the Note, the UCC Financing Statements and all other documents, instruments and agreements executed in connection therewith or contemplated thereby.

"Losses" has the meaning set forth in Section 9.

"Material Adverse Effect" means a material adverse effect on (i) the financial condition of Debtor or (ii) the ability of Debtor to perform its obligations under the Loan Documents.

"Maturity Date" has the meaning set forth in the Note.

"Maximum Loan Amount" means FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00).

"Note" means the amended and restated promissory note dated as of the Effective Date executed by Debtor in favor of the Center, as such Note may be amended and/or amended and restated and/or substituted from time to time as contemplated by Section 2.

"Person" shall mean any individual, corporation, partnership, limited liability company, trust, unincorporated organization, governmental authority or any other form of entity.

"UCC Financing Statements" means those UCC financing statements as may be requested by the Center pursuant to this Agreement to be executed and delivered by Debtor to perfect the Center's security interest in the Collateral.

## 2. REVOLVING LINE OF CREDIT.

A.  On the terms and subject to the satisfaction by Debtor of the conditions set forth in this Agreement, the Center agrees to make the Loan to Debtor, which Loan will be in the form of Advances made from time to time as provided in this Agreement. The outstanding aggregate principal amount of the Loan shall not exceed the Maximum Loan Amount at any time. So long as no event has occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event, Debtor may borrow, prepay and reborrow, from the Effective Date until the Maturity Date, an amount up to the Maximum Loan Amount.

B.  Simultaneously with the execution and delivery of this Agreement, Debtor shall execute and deliver to the Center the Note. The obligation of Debtor to pay the outstanding aggregate principal amount of all Advances plus accrued interest thereon shall be evidenced by the Note. Debtor irrevocably authorizes the Center to make or cause to be made, at or about the time of any Advance or at the time of the Center's receipt of any payment of the principal amount of the Note, an appropriate notation in the Center's records reflecting the amount of such Advance or payment, as applicable. The outstanding aggregate principal amount of the Note plus accrued interest thereon set forth in the Center's records maintained with respect to the Note (which may include computer records) shall, absent manifest error, be prima facie evidence of the outstanding aggregate principal amount plus accrued interest thereon due and owing to the Center, but the failure to record, or any error in so recording, any such amount on the Center's records shall not limit or otherwise affect the obligations of Debtor under the Note to make payments when due. Notwithstanding the foregoing, Debtor agrees to execute such amendments to the Note, amendments and restatements of the Note and/or substitute promissory notes for the Note as the Center may reasonably request to evidence Debtor's obligations to the Center under the Loan Documents.

C.  Debtor shall notify the Center at least five (5) Business Days before the Business Day on which Debtor desires to receive an Advance.  The Center's obligation to fund each Advance shall be subject to the satisfaction of the following conditions precedent as of the date of the requested Advance:

(1) no event shall have occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event;

(2) Debtor shall be in compliance with each of the covenants set forth in Section 5;

(3) the outstanding principal balance of the Loan, together with the amount of the requested Advance, must not exceed the Maximum Loan Amount; and

(4) there shall have been no material adverse change in Debtor's business, operations, assets or financial condition since the Effective Date, as determined by the Center in its reasonable discretion.

Upon Debtor's satisfaction of the foregoing conditions, the Center will disburse the requested Advance in immediately available funds to such account as Debtor shall have specified in the notice or as otherwise directed by Debtor in the notice.

D.  The Loan shall bear interest at the rate(s) of interest set forth in the Note and such interest shall be payable as provided in the Note. Debtor shall have the right to prepay (without premium or penalty) the Note in whole or in part at any time provided that any such prepayment shall only be made on a regularly scheduled payment date upon not less than ten (10) days prior written notice from Debtor to the Center. Debtor shall pay on the Maturity Date, and there shall become absolutely due and payable on the Maturity Date, the outstanding principal amount of the Loan and all accrued but unpaid interest thereon.

E.  As security for the payment and performance of all obligations of Debtor to the Center under the Loan Documents, Debtor hereby grants to the Center a security interest in the Collateral and agrees to provide to the Center such additional documentation, including the UCC Financing Statements, as the Center may reasonably request to document, perfect and prioritize its security interest in the Collateral.

**3.  REPRESENTATIONS AND WARRANTIES OF THE CENTER.** The representations and warranties of the Center contained in this section are being made by the Center as of the Effective Date to induce Debtor to enter into this Agreement and consummate the transactions contemplated herein, and Debtor has relied, and will continue to rely, upon such representations and warranties from and after the execution of this Agreement. The Center represents and warrants to Debtor as follows:

A.  Organization of the Center. The Center has been duly formed, is validly existing and has taken all necessary action to authorize the execution, delivery and performance by the Center of this Agreement.

B.  Authority of the Center. The person who has executed this Agreement on behalf of the Center is duly authorized so to do.

C.  Enforceability. Upon execution by the Center, this Agreement shall constitute the legal, valid and binding obligation of the Center, enforceable against the Center in accordance with its terms.

All representations and warranties of the Center made in this Agreement shall survive the execution of this Agreement.

**4. REPRESENTATIONS AND WARRANTIES OF DEBTOR.** The representations and warranties of Debtor contained in this section are being made by Debtor as of the Effective

Date and the date of each Advance to induce the Center to enter into this Agreement and consummate the transactions contemplated herein, and the Center has relied, and will continue to rely, upon such representations and warranties from and after the Effective Date and the date of each Advance. Debtor represents and warrants to the Center as follows:

A. Organization and Authority of Debtor. Debtor is duly organized or formed, validly existing and in good standing under the laws of the State of Florida and qualified as a foreign entity to do business in any jurisdiction where such qualification is required. All necessary company action has been taken to authorize the execution, delivery and performance of the Loan Documents. The person(s) who have executed the Loan Documents on behalf of Debtor are duly authorized so to do.

B. Enforceability of Documents. Upon execution by Debtor, the Loan Documents shall constitute the legal, valid and binding obligations of Debtor, enforceable against Debtor in accordance with their respective terms.

C. Litigation. There are no suits, actions, proceedings or investigations pending or, to the actual knowledge of Debtor, threatened against or involving Debtor, the Collateral or any of Debtor's assets before any court, arbitrator, or administrative or governmental body which might reasonably result in a Material Adverse Effect.

D. Absence of Breaches or Defaults. The Debtor is not in default beyond any applicable grace period under any document, instrument or agreement to which Debtor is a party or by which the Debtor, the Collateral, or any of the property of Debtor is subject or bound which would have a Material Adverse Effect or would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not result in a Material Adverse Effect or result in any breach or default under any other document, instrument or agreement to which Debtor is a party or by which Debtor, the Collateral or any of the property of Debtor is subject or bound which would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not violate any applicable law, statute, regulation, rule, ordinance, code, rule or order.

E. Licenses, Permits, Consents and Approvals. Debtor has all required licenses, permits, consents and approvals, both governmental and private, to use and operate the Collateral and conduct its business in the intended manner.

F. Insolvency. Debtor is not insolvent within the meaning of the Code.

G. Taxes. Debtor has paid, in the ordinary course of business, all taxes, assessments, levies and other governmental charges which have been levied or imposed upon Debtor, the Collateral and/or Debtor's properties and were due and payable.

H. Title to Collateral; First Priority Security Interest. Debtor owns, and with respect to Collateral acquired after the date hereof, Debtor will own, legally and beneficially, the Collateral, free and clear of any lien, security interest, pledge, hypothecation, claim or other

encumbrance, or any right or option on the part of any third person to purchase or otherwise acquire or obtain any lien or security interest in the Collateral or any part thereof, except for the lien and security interest granted herein in favor of the Center or as otherwise may be consented to in writing by the Center pursuant to Section 5M. Upon the execution of the Loan Documents by the parties, the Center shall have a valid first priority lien upon and security interest in the Collateral.

I. No Actions. No action has been brought or is threatened which would in any way prohibit or restrict the execution and delivery of any of the Loan Documents by Debtor or the performance in all respects of Debtor thereunder.

All representations and warranties of Debtor made in this Agreement shall survive the execution of this Agreement and each Advance.

**5. COVENANTS.** Debtor covenants to the Center from and after the Effective Date as follows:

A. Books, Records and Inspections. Debtor shall, at all reasonable times upon prior written notice from the Center and during normal business hours, (i) provide the Center and the Center's officers, employees, agents, advisors, attorneys and accountants with access to Debtor's personal and real properties and books and records, and (ii) allow such persons to make such inquires of Debtor's officers and employees and to make copies and perform such verifications as the Center considers reasonably necessary; provided, however, all such inspections, copies and verifications shall be at the Center's sole cost and expense and the Center shall reasonably attempt to minimize, during any such activity, interference with the operation of Debtor's business and the Center shall keep any information obtained confidential; provided, however, the Center shall not be required to keep confidential (1) any information which had previously been made public, (2) information that the Center is required to disclose by court order, subpoena or under federal or state law, or (3) information received by the Center from a third party.

B. Reporting Obligations. Debtor will provide the Center with each of the following:

(1) Financial Statements. Within forty-five (45) days after the end of each fiscal quarter and within one hundred twenty (120) days after the end of each fiscal year of Debtor, Debtor shall deliver to the Center complete financial statements of Debtor including a balance sheet, profit and loss statement, cash flow statement and all other related schedules for the fiscal period then ended. All such financial statements shall be prepared in accordance with generally accepted accounting principles, consistently applied from period to period, and shall be certified to be accurate and complete by Debtor (or the Treasurer or other appropriate officer of Debtor). Debtor understands that the Center is relying upon such financial statements and Debtor represents that such reliance is reasonable. The financial statements delivered to the Center need not be audited, but Debtor shall deliver to the Center copies of audited financial statements of Debtor which may be prepared if and when they are available.

(2) Event of Default or Acceleration Event. Within five (5) days after Debtor becomes aware of an Event of Default or an Acceleration Event, Debtor shall deliver to an officer of the Center written notification specifying the nature and period of existence thereof and what action Debtor is taking or proposes to take with respect thereto.

(3) Litigation. Within ten (10) days after Debtor becomes aware of any action, suit or proceeding pending or threatened in writing against or involving Debtor and/or Debtor's properties, Debtor shall notify the Center of such action, suit or proceeding and in such notice shall specify the nature thereof, whether the alleged liability therein is covered by insurance then in effect and, if so covered, the monetary coverage thereof, and what action Debtor is taking or proposes to take with respect thereto.

(4) Auditors' Reports. If and when received, Debtor shall deliver to the Center a copy of each report submitted to Debtor by its independent accountants in connection with any annual, interim or special audit made by it of the books of Debtor.

(5) Other Information. Debtor shall deliver to the Center promptly after the receipt of written request therefor information concerning Debtor requested by the Center that is required to satisfy all requirements of federal and state law applicable to the Center and all other regulatory laws applicable to the Center or to which the Center is subject or bound.

D. Payment of Taxes, Assessments and Claims. Unless Debtor shall contest the amount or validity thereof in the manner described below, Debtor shall pay all taxes, assessments and governmental charges or levies imposed upon it or upon its income or profits, or upon any properties belonging to it, prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien upon any of its properties. Debtor may, at its own expense, contest or cause to be contested such taxes, assessments, governmental charges or levies or other claims (i) in good faith, (ii) by proper proceedings, and (iii) against which adequate reserves in accordance with generally accepted accounting principles are being maintained.

E. Organization of Debtor. Debtor will continue to be a limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction and qualified to do business in any jurisdiction where such qualification is required.

F. Licenses, Permits, Consents and Approvals. Debtor shall maintain in full force and effect all required licenses, permits, consents and approvals, both governmental and private, to use and operate its assets and conduct its business in the intended manner.

G. Use of Proceeds. Debtor shall use the proceeds of the Loan for funding loans and other credit facilities and financial accommodations (as such term is used in the Code) extended to third party borrowers.

H. Debt. Debtor shall not incur, create, assume or permit to exist any Debt, except (a) Debt to the Center or Affiliates of the Center and (b) Debt incurred pursuant to trade accounts arising in the ordinary course of business that are not past due by more than thirty (30) days.

I.   Fundamental Changes. Debtor shall not consolidate with or merge into any Person or permit any Person to merge into it.

J.   Disposition of Assets. Without the prior written consent of the Center, Debtor shall not, directly or indirectly, sell, assign, lease, transfer or otherwise dispose of all or substantially all of its assets (other than in the ordinary course of business for full and fair consideration).

K.   Transactions With Affiliates. Without the prior written consent of the Center, Debtor will not enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service, with any Affiliate of Debtor, except transactions for fair value in accordance with reasonable commercial standards.

L.   Maintenance of Assets. Debtor shall maintain, keep and preserve all of its tangible and intangible property and other assets that are necessary and useful for proper conduct of its business.

M. Title; First Priority Lien. Debtor shall maintain good and marketable fee simple title to the Collateral subject only to the lien and security interest granted herein in favor of the Center or as otherwise may be consented to in writing by the Center pursuant to this section. Debtor shall not sell, assign, mortgage, grant, bargain, convey, pledge or encumber by deed of trust, security agreement or other consensual monetary lien in or on Debtor's interest in the Collateral or any portion thereof or permit Debtor's interest in the Collateral or any part thereof to be sold, assigned, mortgaged, granted, bargained, conveyed, pledged or encumbered by deed of trust, security agreement or other consensual monetary lien without the prior written consent of the Center, which consent may be withheld in the Center's sole discretion. Any sale, assignment, mortgage, grant, bargain, conveyance, pledge or consensual encumbrance in breach of the preceding sentence shall be null and void, and of no force and effect.

**6. TRANSACTION CHARACTERIZATION.** This Agreement is a contract to extend a financial accommodation (as such term is used in the Code) for the benefit of Debtor. It is the intent of the parties hereto that the business relationship created by this Agreement and the other Loan Documents is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in the Loan Documents.   None of the agreements contained in the Loan Documents is intended, nor shall the same be deemed or construed, to create a partnership between Debtor and the Center, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

## 7. DEFAULT AND REMEDIES.

A. Each of the following shall be deemed an event of default by Debtor, after notice, to the extent required hereunder, and after the expiration of any applicable grace or cure period without the cure thereof (each, an "Event of Default"):

(1) If any representation or warranty of Debtor set forth in any of the Loan Documents is false in any material respect when made or becomes false in any material respect, or if Debtor renders any materially false statement or account;

(2) If any principal, interest or other monetary sum due under the Note or any other Loan Document is not paid within five (5) days from the date when due and the Center shall have given notice of such failure to Debtor and such failure shall not have been cured by Debtor within five (5) days from the delivery of such notice;

(3) If Debtor fails to observe or perform any of the other covenants (except as otherwise provided below), conditions, or obligations of this Agreement or there is a breach or default under any other Loan Document beyond any applicable notice or cure period; provided, however, if any such event does not involve the payment of any monetary sum, is not the result of a willful or intentional act or omission of Debtor, does not place any rights or property of the Center in immediate jeopardy, and is within the reasonable power of Debtor to promptly cure after receipt of notice thereof, all as determined by the Center in its reasonable discretion, then such event shall not constitute an Event of Default hereunder, unless otherwise expressly provided herein, unless and until the Center shall have given Debtor notice thereof and a period of thirty (30) days shall have elapsed, during which period Debtor may correct or cure such event, upon failure of which an Event of Default shall be deemed to have occurred hereunder (except as otherwise provided in the following sentence) without further notice or demand of any kind being required. If such nonmonetary event cannot reasonably be cured within such thirty (30) day period, as determined by the Center in its reasonable discretion, and Debtor is diligently pursuing a cure of such event, then an Event of Default shall not be deemed to have occurred hereunder upon the expiration of such thirty (30) day period and Debtor shall have a reasonable period to cure such event beyond such thirty (30) day period, which shall not exceed ninety (90) days after receiving notice of the event from the Center. If Debtor shall fail to correct or cure such event within such ninety (90) day period, an Event of Default shall be deemed to have occurred hereunder without further notice or demand of any kind being required; or

(4) If Debtor becomes insolvent within the meaning of the Code, files or notifies the Center that it intends to file a petition under the Code, initiates a proceeding under any similar law or statute relating to bankruptcy, insolvency, reorganization, winding up or adjustment of debts (collectively, an "Action"), becomes the subject of either an involuntary Action or petition under the Code

without such involuntary Action or petition being dismissed within thirty (30) days of filing or, if Debtor is diligently proceeding to dismiss such petition, such longer period of time as may be required, but in no event shall such longer period of time be greater than ninety (90) days, or is not generally paying its debts as the same become due.

B.   Upon and during the continuance of an Event of Default, subject to the limitations, notices and cure periods set forth in Section 7A, or an Acceleration Event, the Center shall have no obligation to fund any Advance to Debtor and the Center may declare all obligations of Debtor under the Loan Documents to be due and payable, and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind except as expressly provided herein. Thereafter, the Center may exercise, at its option, concurrently, successively or in any combination:

(1)   all remedies available at law or in equity, including without limitation any one or more of the remedies available under any of the Loan Documents; and

(2)   all rights and remedies of a secured party in, to and against the Collateral granted by the Uniform Commercial Code in the State of Florida and otherwise available at law or in equity, including, without limitation: (i) the right to declare all payments due under the Loan Documents immediately due and payable and the right to recover all fees and expenses (including reasonable attorneys' fees) in connection with the collection or enforcement thereof, which fees and expenses shall constitute additional obligations of Debtor to the Center hereunder; (ii) the right to act as, and Debtor hereby constitutes and appoints the Center, Debtor's true, lawful and irrevocable attorney-in-fact (which appointment shall be deemed coupled with an interest) to demand, receive and enforce payments and to give receipts, releases, satisfaction for and to sue for moneys payable to Debtor under or with respect to any of the Collateral under this Agreement, and actions taken pursuant to this appointment may be taken either in the name of Debtor or in the name of the Center with the same force and effect as if this appointment had not been made; (iii) the right to take immediate and exclusive possession of the Collateral, or any part thereof; (iv) the right to hold, maintain, preserve and prepare the Collateral for sale, until disposed of; (v) the right to dispose of the Collateral; (vi) the right to require Debtor to assemble and package the Collateral and make it available to the Center for its possession at a place to be designated by the Center which is reasonably convenient to the Center; (vii) the right to sell, hold or otherwise dispose of all or any part of the Collateral; (viii) the right to sue for specific performance of any obligation under the Loan Documents or to recover damages for breach thereof; (ix) the right to receive all cash distributions or payments payable in respect of the Collateral; and (x) the right to exercise or cause to be exercised all voting rights and partnership or limited liability company, as applicable, powers in respect of the Collateral. The remedies of the Center hereunder are cumulative and the exercise of any one or more of the remedies provided for herein or under the Uniform Commercial Code or other applicable law shall not be construed as a waiver of any of the other remedies of

the Center so long as any part of the obligations of Debtor to the Center remains unsatisfied. The Center shall have no duty to mitigate any loss to the Debtor occasioned by enforcement of any remedy hereunder and shall have no duty of any kind to any subordinated creditor of Debtor.

C. Should the Center exercise the rights and remedies specified in Section 3B, any proceeds received thereby shall be first applied to pay the costs and expenses, including reasonable attorneys' fees, incurred by the Center as a result of the Event of Default. The remainder of any proceeds, net of the Center's costs and expenses, shall be applied to the satisfaction of the remaining obligations of Debtor to the Center under the Loan Documents and any excess shall be paid over to Debtor.

Neither the acceptance of this Agreement nor its enforcement shall prejudice or in any manner affect the Center's right to realize upon or enforce any other security now or hereafter held by the Center, with it being agreed that the Center shall be entitled to enforce this Agreement and any other security now or hereafter held by the Center in such order and manner as it may in its absolute discretion determine. No remedy herein conferred upon or reserved to the Center is intended to be exclusive of any other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Documents to the Center, or to which the Center may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Center.

8. ASSIGNMENTS BY THE CENTER. The Center may assign in whole or in part its rights under this Agreement. Upon any unconditional assignment of the Center's entire right and interest hereunder, the Center shall automatically be relieved, from and after the date of such assignment, of liability for the performance of any obligation of the Center contained herein arising after the date of the assignment provided that any assignee shall be bound by all of the Center's obligations hereunder accruing from and after the date of such assignment.

9. **INDEMNITY.** Debtor agrees to indemnify, hold harmless and defend the Center and each of its directors, officers, shareholders, employees, beneficiaries, successors, assigns, agents, experts, licensees, affiliates, lenders, mortgagees and trustees, as applicable (collectively, the "Indemnified Parties"), from and against any and all losses, costs, claims, liabilities, damages and expenses, including, without limitation, reasonable attorneys' fees (collectively "Losses"), arising as the result of a breach of any of the representations, warranties, covenants, agreements or obligations of Debtor set forth in this Agreement, but excluding Losses suffered by an Indemnified Party directly arising out of such Indemnified Party's gross negligence or willful misconduct.

10. **MISCELLANEOUS PROVISIONS.**

A. Notices. All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Agreement shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a)

receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

| | |
|---|---|
| If to the Center: | THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC. 4912 Creekside Drive Clearwater, Florida 33760 |
| If to Debtor: | BOSTON FINANCE GROUP, LLC 4912 Creekside Drive Clearwater, Florida 33760 |

B. **Waiver and Amendment.** No provisions of this Agreement shall be deemed waived or amended except by a written instrument unambiguously setting forth the matter waived or amended and signed by the party against which enforcement of such waiver or amendment is sought. Waiver of any matter shall not be deemed a waiver of the same or any other matter on any future occasion.

C. **Captions.** Captions are used throughout this Agreement for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

D. **The Center's Liability.** Notwithstanding anything to the contrary provided in this Agreement, it is specifically understood and agreed, with such agreement being a primary consideration for the execution of this Agreement by the Center, that (i) there shall be absolutely no personal liability on the part of any shareholder, director, officer, employee, beneficiary or agent of the Center, with respect to any of the terms, covenants and conditions of this Agreement or the other Loan Documents, (ii) Debtor waives all claims, demands and causes of action against the Center's officers, directors, employees, beneficiaries and agents in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center and (iii) Debtor shall look solely to the assets of the Center for the satisfaction of each and every remedy of Debtor in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center, with such exculpation of liability to be absolute and without any exception whatsoever.

E. **Severability.** The provisions of this Agreement shall be deemed severable. If any part of this Agreement shall be held unenforceable, the remainder shall remain in full force and effect, and such unenforceable provision shall be reformed by such court so as to give maximum legal effect to the intention of the parties as expressed therein.

F. Construction Generally. This is an agreement between parties who are experienced in sophisticated and complex matters similar to the transaction contemplated by this Agreement and is entered into by both parties in reliance upon the economic and legal bargains contained herein and shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

G. Other Documents. Each of the parties agrees to sign such other and further documents as may be reasonably necessary to carry out the intentions expressed in this Agreement.

H. Attorneys' Fees. In the event of any judicial or other adversarial proceeding between the parties concerning this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs in addition to any other relief to which it may be entitled. References in this Agreement to the attorneys' fees and/or costs of a party shall mean both the reasonable fees and costs of independent outside counsel retained by such party with respect to this transaction and the reasonable fees and costs of the party's in-house counsel incurred in connection with this transaction.

I. Entire Agreement. This Agreement and the Note, together with any other certificates, instruments or agreements to be delivered in connection therewith, constitute the entire agreement between the parties with respect to the subject matter hereof, and there are no other representations, warranties or agreements, written or oral, between Debtor and the Center with respect to the subject matter of this Agreement.

J. Forum Selection; Jurisdiction; Venue; Choice of Law. Debtor acknowledges that this Agreement was substantially negotiated in the State of Florida, the Agreement was signed and delivered by the Center and Debtor in the State of Florida, all payments under the Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Agreement, the parties hereto hereby expressly submit to the jurisdiction of all federal and state courts located in the State of Florida and Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of the parties hereto that all provisions of this Agreement shall be governed by and construed under the internal laws of the State of Florida without regard to the law of any other jurisdiction. Nothing in this section shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in a state other than the State of Florida to the extent the Center deems such proceeding necessary or advisable to exercise remedies available under this Agreement or the other Loan Documents.

K.  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

L.  Binding Effect. This Agreement shall be binding upon and inure to the benefit of Debtor and the Center and their respective successors and permitted assigns, including, without limitation, any United States trustee, any debtor in possession or any trustee appointed from a private panel.

M.  Survival. All representations, warranties, agreements, obligations and indemnities of Debtor and the Center set forth in this Agreement shall survive the execution of this Agreement and each Advance.


IN WITNESS WHEREOF, Debtor and the Center have entered into this Agreement as of the date first above written.

**THE CENTER FOR SPECIAL NEEDS**
**TRUST ADMINISTRATION, INC.**

By _Patricie Jylri_

Its _Director, Vice President_


**BOSTON FINANCE GROUP, LLC**

By _____

Its _Managing Member_

# Exhibit F

<div align="center">

**AMENDED AND RESTATED
PROMISSORY NOTE**

</div>

**$15,000,000.00**                                          **Dated as of December 1, 2009
Clearwater, Florida**

**1. PROMISE TO PAY.**  BOSTON FINANCE GROUP, LLC, a Florida limited liability company, whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ("Debtor"), for value received, hereby promises to pay to THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ( the "Center"), or order, on or before the Maturity Date (as defined below), the principal sum of FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00), or such amount thereof as may be outstanding from time to time, in accordance with that certain Amended and Restated Revolving Line of Credit Agreement dated as of the date of this Note between Debtor and the Center, as such agreement may be amended from time to time (the "Loan Agreement"), together with interest as hereinafter provided.

**2. RENEWAL NOTE.**  This Note evidences but does not extinguish or satisfy, and is not a novation of, a preexisting indebtedness of Debtor to the Center and amends and restates that certain Promissory Note executed by Debtor to the Center in the maximum principal amount of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00) dated June 1, 2009 (the "Prior Note").

**3. DEFINITIONS.**  Initially capitalized terms which are not otherwise defined in this Note shall have the meanings set forth in the Loan Agreement. The following terms shall have the following meanings for all purposes of this Note:

**a. APPLICABLE MARGIN.**  "Applicable Margin" means an annual percentage rate equal to TWO AND ONE-HALF PERCENT (2.5%).

**b. INTEREST RATE.**  "Interest Rate" means, with respect to any Advance, the Prime Rate plus the Applicable Margin.

**c. INTEREST PERIOD.**  "Interest Period" means (i) initially, the period beginning on the date of this Note and ending on the last day of the calendar month in which such date occurs, and (ii) thereafter, the period beginning on the first day of the calendar month and ending on the last day of such calendar month.

**d. MATURITY DATE.**  "Maturity Date" means December 1, 2014.

**e. PRIME RATE.**  "Prime Rate" means the Prime Rate as published in the "Money Rates" section of the Eastern edition of *The Wall Street Journal* on the 1st day of any calendar month. The following additional provisions shall apply in determining the Prime Rate:

(i) If more than one Prime Rate is published on the 1st day of any calendar month, the higher Prime Rate will be used as the Prime Rate. If the Prime Rate is not published on the 1st day of any calendar month, the Prime Rate published on the last business day prior to the 1st will be used as the Prime Rate.

(ii) If the Prime Rate becomes unavailable, the Center will select a new rate index which is based on a historical movement substantially similar to the index specified above and the new index and margin will result in a yearly rate substantially similar to the rate in effect at the time the index specified above becomes unavailable. The Center will give Debtor notice of this change.

(iii) The Prime Rate applicable to each Interest Period shall be the Prime Rate published on the 1st day of the respective calendar month or such other rate for such date selected as specified above.

**4. INTEREST AND PRINCIPAL PAYMENTS.** Debtor shall pay the Center interest on the outstanding principal amount of each Advance at the Interest Rate, in arrears for each Interest Period on or before the fifteenth (15th) day after the end of each Interest Period. The Center shall notify Debtor in writing on or before the fifth (5th) day after the end of each Interest Period during the term of this Note of the Center's determination of the interest payable for such Interest Period; provided however, if no such notification is made to Debtor, then the interest payable shall be at the same rate as the immediately preceding Interest Period. All outstanding principal and unpaid accrued interest shall be paid on the Maturity Date.

**5. APPLICATION OF PAYMENTS.** Each payment hereunder shall be applied first to any past due payments under this Note (including payment of all Costs as herein defined), then to accrued interest, and the balance, if any, shall be applied to the unpaid principal balance of this Note; provided, however, each payment hereunder while an Event of Default under the Loan Agreement has occurred and is continuing shall be applied as the Center in its sole discretion may determine.

**6. PAYMENT ARRANGEMENTS.** Upon execution of this Note, Debtor shall establish arrangements whereby all payments hereunder are transferred by wire or other means directly from Debtor's bank account to such account as the Center may from time to time designate.

**7. PREPAYMENT.** Debtor may prepay this Note as provided in the Loan Agreement.

**8. DEFAULT RATE.** All past-due principal and/or interest shall bear interest at the lesser of the highest rate for which the Debtor may legally contract or the rate of EIGHTEEN PERCENT (18%) per annum (the "Default Rate"), and such Default Rate shall continue to apply following a judgment in favor of the Center under this Note.

**9. NO RIGHT OF DEDUCTION OR SETOFF.** All payments of principal and interest due hereunder shall be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by Debtor, and (ii) without any other right of abatement, reduction, setoff, defense, counterclaim, interruption, deferment or

recoupment for any reason whatsoever. Debtor will pay the amounts necessary such that the gross amount of the principal and interest received by the Center is not less than that required by this Note.

**10. WAIVER.** No delay or omission on the part of the Center in exercising any remedy, right or option under this Note shall operate as a waiver of such remedy, right or option. In any event, a waiver on any one occasion shall not be construed as a waiver or bar to any such remedy, right or option on a future occasion.

**11. WAIVER BY DEBTOR.** Debtor hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and except as otherwise provided in the Loan Agreement, all other notices or demands in connection with delivery, acceptance, performance, default or endorsement of this Note.

**12. NOTICES.** All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Note shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day, following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

|  |  |
|---|---|
| If to the Center: | THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC. 4912 Creekside Drive Clearwater, Florida 33760 |
| If to Debtor: | BOSTON FINANCE GROUP, LLC 4912 Creekside Drive Clearwater, Florida 33760 |

or to such other address or such other person as either party may from time to time hereafter specify to the other party in a notice delivered in the manner provided above.

**13. COLLECTION COSTS.** Should any indebtedness represented by this Note be collected at law or in equity, or in bankruptcy or other proceedings, or should this Note be placed in the hands of attorneys for collection after default, Debtor shall pay, in addition to the principal and interest due and payable hereon, all costs of collecting or attempting to collect this Note (the "Costs"), including reasonable attorneys' fees and expenses of the Center (including those fees and expenses incurred in connection with any appeal and those of the Center's in-house counsel) regardless of whether a judicial action is commenced by the Center.

**14. AMENDMENT.** This Note may not be amended or modified except by a written agreement duly executed by Debtor and the Center. In case any one or more of the provisions contained in this Note shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such provision had never been contained herein or therein.

**15. MAXIMUM INTEREST.** Notwithstanding anything to the contrary contained in this Note or the Loan Agreement, the obligations of Debtor to the Center under this Note and the Loan Agreement are subject to the limitation that payments of interest, late charges and Costs to the Center shall not be required to the extent that receipt of any such payment by the Center would be contrary to provisions of applicable law limiting the maximum rate of interest that may be charged or collected by the Center. The portion of any such payment received by the Center that is in excess of the maximum interest permitted by such provisions of law shall be credited to the principal balance of this Note or, if such excess portion exceeds the outstanding principal balance of this Note, then such excess portion shall be refunded to Debtor. All interest paid or agreed to be paid to the Center shall, to the extent permitted by applicable law, be amortized, prorated, allocated and/or spread throughout the full term of this Note (including, without limitation, the period of any renewal or extension thereof) so that interest for such full term shall not exceed the maximum amount permitted by applicable law.

**16. TRANSACTION CHARACTERIZATION.** It is the intent of the parties hereto that the business relationship created by this Note and the Loan Agreement is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in this Note and the Loan Agreement. None of the agreements contained in this Note or the Loan Agreement is intended, nor shall the same be deemed or construed, to create a partnership between the Center and Debtor, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

**17. CONSTRUCTION GENERALLY.** This Note shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

**18. CAPTIONS.** Captions are used throughout this Note for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

**19. GOVERNING LAW.** Debtor acknowledges that this Note was substantially negotiated in the State of Florida, the Note was executed and delivered in the State of Florida, all payments under this Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Note, the parties hereto expressly submit to the jurisdiction of all federal and state courts located in the State of Florida. Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to

the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of Debtor and the Center that all provisions of this Note shall be governed by and construed under the internal laws of the State of Florida without regard to the law of any other jurisdiction. Nothing contained in this paragraph shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in any state in which the Center deems such proceeding necessary or advisable to exercise remedies available under this Note or the Loan Agreement.

**20. BINDING EFFECT.**  This obligation shall bind Debtor and its successors and assigns, and the benefits hereof shall inure to the Center and its successors and assigns. The Center may assign its rights under this Note as set forth in the Loan Agreement.


IN WITNESS WHEREOF, Debtor has executed and delivered this Note effective as of the date first set forth above.


**BOSTON FINANCE GROUP, LLC**

By _____

Its  Managing member

# Exhibit G

## AMENDED AND RESTATED
## REVOLVING LINE OF
## CREDIT AGREEMENT

THIS AMENDED AND RESTATED REVOLVING LINE OF CREDIT AGREEMENT (this "Agreement") is made as of March 15, 2010 (the "Effective Date"), by and between THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation, (the "Center"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760, and BOSTON FINANCE GROUP, LLC, a Florida limited liability company ("Debtor"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760.

The Center and Debtor are parties to an Amended and Restated Revolving Line of Credit Agreement and Amended and Restated Promissory Note, both dated as of December 1, 2009 (the "Prior Loan Documents"), pursuant to which the Center has made certain loans and financial accommodations available to Debtor. The Center and Debtor now desire to consolidate, amend and restate the Prior Loan Documents in all respects as hereinafter set forth.

In consideration of the mutual covenants and provisions of this Agreement, the parties agree as follows:

1. DEFINITIONS. The following terms shall have the following meanings for all purposes of this Agreement:

"Acceleration Event" means a breach or default, after the passage of all applicable notice and cure or grace periods, under any agreement, instrument or promissory note other than the Loan Documents between, among or by (i) Debtor or any Affiliate of Debtor, and, or for the benefit of, (ii) the Center and/or any Affiliate of the Center.

"Action" has the meaning set forth in Section 7.

"Advance" means any advance of the proceeds of the Loan made by the Center pursuant to the terms of Section 2.

"Affiliate" means any Person which directly or indirectly controls, is under common control with, or is controlled by any other Person. For purposes of this definition, "controls", "under common control with" and "controlled by" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or otherwise.

"Business Day" means any day on which banks are open for general banking business in the State of Florida other than a Saturday, Sunday, a legal holiday or any other day on which banks in the State of Florida are required or authorized by law to close.

"Code" means the United States Bankruptcy Code, 11 U.S.C. Sec. 101 et seq., as amended.

"Collateral" means all of Debtor's right, title and interest in all property, real and personal, owned by Debtor on the Effective Date or thereafter acquired by Debtor on or prior to payment in full and satisfaction of all obligations of Debtor to the Center under the Loan Documents.

"Debt" means as to such Person at any time: (a) all obligations of such Person for borrowed money; (b) all obligations of such Person evidenced by bonds, notes, debentures or other similar instruments; (c) all obligations of such Person to pay the deferred purchase price of property or services; (d) all capital lease obligations of such Person; (e) all contingent obligations or other obligations of others guaranteed by such Person; (f) all obligations secured by a lien existing on property owned by such Person, regardless of whether the obligations secured thereby have been assumed by such Person or are nonrecourse to the credit of such Person; and (g) all reimbursement obligations of such Person (whether contingent or otherwise) in respect of letters of credit, bankers' acceptances, surety or other bonds and similar instruments.

"Effective Date" has the meaning set forth in the introductory paragraph of this Agreement.

"Event of Default" has the meaning set forth in Section 7.

"Indemnified Parties" has the meaning set forth in Section 9.

"Loan" means the revolving line of credit in the Maximum Loan Amount as described in Section 2.

"Loan Documents" means, collectively, this Agreement, the Note, the UCC Financing Statements and all other documents, instruments and agreements executed in connection therewith or contemplated thereby.

"Losses" has the meaning set forth in Section 9.

"Material Adverse Effect" means a material adverse effect on (i) the financial condition of Debtor or (ii) the ability of Debtor to perform its obligations under the Loan Documents.

"Maturity Date" has the meaning set forth in the Note.

"Maximum Loan Amount" means THIRTY MILLION AND NO/100 DOLLARS ($30,000,000.00).

"Note" means the amended and restated promissory note dated as of the Effective Date executed by Debtor in favor of the Center, as such Note may be amended and/or amended and restated and/or substituted from time to time.

"Person" means any individual, corporation, partnership, limited liability company, trust, unincorporated organization, governmental authority or any other form of entity.

"UCC Financing Statements" means those UCC financing statements as may be requested by the Center pursuant to this Agreement to be executed and delivered by Debtor to perfect the Center's security interest in the Collateral.

## 2. REVOLVING LINE OF CREDIT.

A.  On the terms and subject to the satisfaction by Debtor of the conditions set forth in this Agreement, the Center agrees to make the Loan to Debtor, which Loan will be in the form of Advances made from time to time as provided in this Agreement. The outstanding aggregate principal amount of the Loan shall not exceed the Maximum Loan Amount at any time. So long as no event has occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event, Debtor may borrow, prepay and reborrow, from the Effective Date until the Maturity Date, an amount up to the Maximum Loan Amount.

B.  Simultaneously with the execution and delivery of this Agreement, Debtor shall execute and deliver to the Center the Note. The obligation of Debtor to pay the outstanding aggregate principal amount of all Advances plus accrued interest thereon shall be evidenced by the Note. Debtor irrevocably authorizes the Center to make or cause to be made, at or about the time of any Advance or at the time of the Center's receipt of any payment of the principal amount of the Note, an appropriate notation in the Center's records reflecting the amount of such Advance or payment, as applicable. The outstanding aggregate principal amount of the Note plus accrued interest thereon set forth in the Center's records maintained with respect to the Note (which may include computer records) shall, absent manifest error, be prima facie evidence of the outstanding aggregate principal amount plus accrued interest thereon due and owing to the Center, but the failure to record, or any error in so recording, any such amount on the Center's records shall not limit or otherwise affect the obligations of Debtor under the Note to make payments when due. Notwithstanding the foregoing, Debtor agrees to execute such amendments to the Note, amendments and restatements of the Note and/or substitute promissory notes for the Note as the Center may reasonably request to evidence Debtor's obligations to the Center under the Loan Documents.

C.  Debtor shall notify the Center at least five (5) Business Days before the Business Day on which Debtor desires to receive an Advance.  The Center's obligation to fund each Advance shall be subject to the satisfaction of the following conditions precedent as of the date of the requested Advance:

(1) no event shall have occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event;

(2) Debtor shall be in compliance with each of the covenants set forth in Section 5;

(3) the outstanding principal balance of the Loan, together with the amount of the requested Advance, must not exceed the Maximum Loan Amount; and

(4) there shall have been no material adverse change in Debtor's business, operations, assets or financial condition since the Effective Date, as determined by the Center in its reasonable discretion.

Upon Debtor's satisfaction of the foregoing conditions, the Center will disburse the requested Advance in immediately available funds to such account as Debtor shall have specified in the notice or as otherwise directed by Debtor in the notice.

D. The Loan shall bear interest at the rate(s) of interest set forth in the Note and such interest shall be payable as provided in the Note. Debtor shall have the right to prepay (without premium or penalty) the Note in whole or in part at any time provided that any such prepayment shall only be made on a regularly scheduled payment date upon not less than ten (10) days prior written notice from Debtor to the Center. Debtor shall pay on the Maturity Date, and there shall become absolutely due and payable on the Maturity Date, the outstanding principal amount of the Loan and all accrued but unpaid interest thereon.

E. As security for the payment and performance of all obligations of Debtor to the Center under the Loan Documents, Debtor hereby grants to the Center a security interest in the Collateral and agrees to provide to the Center such additional documentation, including the UCC Financing Statements, as the Center may reasonably request to document, perfect and prioritize its security interest in the Collateral.

3. REPRESENTATIONS AND WARRANTIES OF THE CENTER. The representations and warranties of the Center contained in this section are being made by the Center as of the Effective Date to induce Debtor to enter into this Agreement and consummate the transactions contemplated herein, and Debtor has relied, and will continue to rely, upon such representations and warranties from and after the execution of this Agreement. The Center represents and warrants to Debtor as follows:

A. Organization of the Center. The Center has been duly formed, is validly existing and has taken all necessary action to authorize the execution, delivery and performance by the Center of this Agreement.

B. Authority of the Center. The person who has executed this Agreement on behalf of the Center is duly authorized so to do.

C. Enforceability. Upon execution by the Center, this Agreement shall constitute the legal, valid and binding obligation of the Center, enforceable against the Center in accordance with its terms.

All representations and warranties of the Center made in this Agreement shall survive the execution of this Agreement.

4. REPRESENTATIONS AND WARRANTIES OF DEBTOR. The representations and warranties of Debtor contained in this section are being made by Debtor as of the Effective Date

and the date of each Advance to induce the Center to enter into this Agreement and consummate the transactions contemplated herein, and the Center has relied, and will continue to rely, upon such representations and warranties from and after the Effective Date and the date of each Advance. Debtor represents and warrants to the Center as follows:

A. Organization and Authority of Debtor. Debtor is duly organized or formed, validly existing and in good standing under the laws of the State of Florida and qualified as a foreign entity to do business in any jurisdiction where such qualification is required. All necessary company action has been taken to authorize the execution, delivery and performance of the Loan Documents. The person(s) who have executed the Loan Documents on behalf of Debtor are duly authorized so to do.

B. Enforceability of Documents. Upon execution by Debtor, the Loan Documents shall constitute the legal, valid and binding obligations of Debtor, enforceable against Debtor in accordance with their respective terms.

C. Litigation. There are no suits, actions, proceedings or investigations pending or, to the actual knowledge of Debtor, threatened against or involving Debtor, the Collateral or any of Debtor's assets before any court, arbitrator, or administrative or governmental body which might reasonably result in a Material Adverse Effect.

D. Absence of Breaches or Defaults. The Debtor is not in default beyond any applicable grace period under any document, instrument or agreement to which Debtor is a party or by which the Debtor, the Collateral, or any of the property of Debtor is subject or bound which would have a Material Adverse Effect or would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not result in a Material Adverse Effect or result in any breach or default under any other document, instrument or agreement to which Debtor is a party or by which Debtor, the Collateral or any of the property of Debtor is subject or bound which would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not violate any applicable law, statute, regulation, rule, ordinance, code, rule or order.

E. Licenses, Permits, Consents and Approvals. Debtor has all required licenses, permits, consents and approvals, both governmental and private, to use and operate the Collateral and conduct its business in the intended manner.

F. Insolvency. Debtor is not insolvent within the meaning of the Code.

G. Taxes. Debtor has paid, in the ordinary course of business, all taxes, assessments, levies and other governmental charges which have been levied or imposed upon Debtor, the Collateral and/or Debtor's properties and were due and payable.

H. Title to Collateral; First Priority Security Interest. Debtor owns, and with respect to Collateral acquired after the date hereof, Debtor will own, legally and beneficially, the Collateral, free and clear of any lien, security interest, pledge, hypothecation, claim or other

encumbrance, or any right or option on the part of any third person to purchase or otherwise acquire or obtain any lien or security interest in the Collateral or any part thereof, except for the lien and security interest granted herein in favor of the Center or as otherwise may be consented to in writing by the Center pursuant to Section 5M. Upon the execution of the Loan Documents by the parties, the Center shall have a valid first priority lien upon and security interest in the Collateral.

      I.   No Actions. No action has been brought or is threatened which would in any way prohibit or restrict the execution and delivery of any of the Loan Documents by Debtor or the performance in all respects of Debtor thereunder.

      All representations and warranties of Debtor made in this Agreement shall survive the execution of this Agreement and each Advance.

      5. COVENANTS. Debtor covenants to the Center from and after the Effective Date as follows:

      A.  Books, Records and Inspections. Debtor shall, at all reasonable times upon prior written notice from the Center and during normal business hours, (i) provide the Center and the Center's officers, employees, agents, advisors, attorneys and accountants with access to Debtor's personal and real properties and books and records, and (ii) allow such persons to make such inquires of Debtor's officers and employees and to make copies and perform such verifications as the Center considers reasonably necessary; provided, however, all such inspections, copies and verifications shall be at the Center's sole cost and expense and the Center shall reasonably attempt to minimize, during any such activity, interference with the operation of Debtor's business and the Center shall keep any information obtained confidential; provided, however, the Center shall not be required to keep confidential (1) any information which had previously been made public, (2) information that the Center is required to disclose by court order, subpoena or under federal or state law, or (3) information received by the Center from a third party.

      B.  Reporting Obligations. Debtor will provide the Center with each of the following:

      (1) Financial Statements. Within forty-five (45) days after the end of each fiscal quarter and within one hundred twenty (120) days after the end of each fiscal year of Debtor, Debtor shall deliver to the Center complete financial statements of Debtor including a balance sheet, profit and loss statement, cash flow statement and all other related schedules for the fiscal period then ended. All such financial statements shall be prepared in accordance with generally accepted accounting principles, consistently applied from period to period, and shall be certified to be accurate and complete by Debtor (or the Treasurer or other appropriate officer of Debtor). Debtor understands that the Center is relying upon such financial statements and Debtor represents that such reliance is reasonable. The financial statements delivered to the Center need not be audited, but Debtor shall deliver to the Center copies of audited financial statements of Debtor which may be prepared if and when they are available.

(2) Event of Default or Acceleration Event. Within five (5) days after Debtor becomes aware of an Event of Default or an Acceleration Event, Debtor shall deliver to an officer of the Center written notification specifying the nature and period of existence thereof and what action Debtor is taking or proposes to take with respect thereto.

(3) Litigation. Within ten (10) days after Debtor becomes aware of any action, suit or proceeding pending or threatened in writing against or involving Debtor and/or Debtor's properties, Debtor shall notify the Center of such action, suit or proceeding and in such notice shall specify the nature thereof, whether the alleged liability therein is covered by insurance then in effect and, if so covered, the monetary coverage thereof, and what action Debtor is taking or proposes to take with respect thereto.

(4) Auditors' Reports. If and when received, Debtor shall deliver to the Center a copy of each report submitted to Debtor by its independent accountants in connection with any annual, interim or special audit made by it of the books of Debtor.

(5) Other Information. Debtor shall deliver to the Center promptly after the receipt of written request therefor information concerning Debtor requested by the Center that is required to satisfy all requirements of federal and state law applicable to the Center and all other regulatory laws applicable to the Center or to which the Center is subject or bound.

C. Payment of Taxes, Assessments and Claims. Unless Debtor shall contest the amount or validity thereof in the manner described below, Debtor shall pay all taxes, assessments and governmental charges or levies imposed upon it or upon its income or profits, or upon any properties belonging to it, prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien upon any of its properties. Debtor may, at its own expense, contest or cause to be contested such taxes, assessments, governmental charges or levies or other claims (i) in good faith, (ii) by proper proceedings, and (iii) against which adequate reserves in accordance with generally accepted accounting principles are being maintained.

D. Organization of Debtor. Debtor will continue to be a limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction and qualified to do business in any jurisdiction where such qualification is required.

E. Licenses, Permits, Consents and Approvals. Debtor shall maintain in full force and effect all required licenses, permits, consents and approvals, both governmental and private, to use and operate its assets and conduct its business in the intended manner.

F. Use of Proceeds. Debtor shall use the proceeds of the Loan for funding loans and other credit facilities and financial accommodations (as such term is used in the Code) extended to third party borrowers.

G. Debt. Debtor shall not incur, create, assume or permit to exist any Debt, except (a) Debt to the Center or Affiliates of the Center and (b) Debt incurred pursuant to trade accounts arising in the ordinary course of business that are not past due by more than thirty (30) days.

H. Fundamental Changes. Debtor shall not consolidate with or merge into any Person or permit any Person to merge into it.

I. Disposition of Assets. Without the prior written consent of the Center, Debtor shall not, directly or indirectly, sell, assign, lease, transfer or otherwise dispose of all or substantially all of its assets (other than in the ordinary course of business for full and fair consideration).

J. Transactions With Affiliates. Without the prior written consent of the Center, Debtor will not enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service, with any Affiliate of Debtor, except transactions for fair value in accordance with reasonable commercial standards.

K. Maintenance of Assets. Debtor shall maintain, keep and preserve all of its tangible and intangible property and other assets that are necessary and useful for proper conduct of its business.

L. Title; First Priority Lien. Debtor shall maintain good and marketable fee simple title to the Collateral subject only to the lien and security interest granted herein in favor of the Center or as otherwise may be consented to in writing by the Center pursuant to this section. Debtor shall not sell, assign, mortgage, grant, bargain, convey, pledge or encumber by deed of trust, security agreement or other consensual monetary lien in or on Debtor's interest in the Collateral or any portion thereof or permit Debtor's interest in the Collateral or any part thereof to be sold, assigned, mortgaged, granted, bargained, conveyed, pledged or encumbered by deed of trust, security agreement or other consensual monetary lien without the prior written consent of the Center, which consent may be withheld in the Center's sole discretion. Any sale, assignment, mortgage, grant, bargain, conveyance, pledge or consensual encumbrance in breach of the preceding sentence shall be null and void, and of no force and effect.

6. TRANSACTION CHARACTERIZATION. This Agreement is a contract to extend a financial accommodation (as such term is used in the Code) for the benefit of Debtor. It is the intent of the parties hereto that the business relationship created by this Agreement and the other Loan Documents is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in the Loan Documents. None of the agreements contained in the Loan Documents is intended, nor shall the same be deemed or construed, to create a partnership between Debtor and the Center, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

7. DEFAULT AND REMEDIES.

    A. Each of the following shall be deemed an event of default by Debtor, after notice, to the extent required hereunder, and after the expiration of any applicable grace or cure period without the cure thereof (each, an "Event of Default"):

    (1) If any representation or warranty of Debtor set forth in any of the Loan Documents is false in any material respect when made or becomes false in any material respect, or if Debtor renders any materially false statement or account;

    (2) If any principal, interest or other monetary sum due under the Note or any other Loan Document is not paid within five (5) days from the date when due and the Center shall have given notice of such failure to Debtor and such failure shall not have been cured by Debtor within five (5) days from the delivery of such notice;

    (3) If Debtor fails to observe or perform any of the other covenants (except as otherwise provided below), conditions, or obligations of this Agreement or there is a breach or default under any other Loan Document beyond any applicable notice or cure period; provided, however, if any such event does not involve the payment of any monetary sum, is not the result of a willful or intentional act or omission of Debtor, does not place any rights or property of the Center in immediate jeopardy, and is within the reasonable power of Debtor to promptly cure after receipt of notice thereof, all as determined by the Center in its reasonable discretion, then such event shall not constitute an Event of Default hereunder, unless otherwise expressly provided herein, unless and until the Center shall have given Debtor notice thereof and a period of thirty (30) days shall have elapsed, during which period Debtor may correct or cure such event, upon failure of which an Event of Default shall be deemed to have occurred hereunder (except as otherwise provided in the following sentence) without further notice or demand of any kind being required. If such nonmonetary event cannot reasonably be cured within such thirty (30) day period, as determined by the Center in its reasonable discretion, and Debtor is diligently pursuing a cure of such event, then an Event of Default shall not be deemed to have occurred hereunder upon the expiration of such thirty (30) day period and Debtor shall have a reasonable period to cure such event beyond such thirty (30) day period, which shall not exceed ninety (90) days after receiving notice of the event from the Center. If Debtor shall fail to correct or cure such event within such ninety (90) day period, an Event of Default shall be deemed to have occurred hereunder without further notice or demand of any kind being required; or

    (4) If Debtor becomes insolvent within the meaning of the Code, files or notifies the Center that it intends to file a petition under the Code, initiates a proceeding under any similar law or statute relating to bankruptcy, insolvency, reorganization, winding up or adjustment of debts (collectively, an "Action"), becomes the subject of either an involuntary Action or petition under the Code

without such involuntary Action or petition being dismissed within thirty (30) days of filing or, if Debtor is diligently proceeding to dismiss such petition, such longer period of time as may be required, but in no event shall such longer period of time be greater than ninety (90) days, or is not generally paying its debts as the same become due.

B. Upon and during the continuance of an Event of Default, subject to the limitations, notices and cure periods set forth in Section 7A, or an Acceleration Event, the Center shall have no obligation to fund any Advance to Debtor and the Center may declare all obligations of Debtor under the Loan Documents to be due and payable, and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind except as expressly provided herein. Thereafter, the Center may exercise, at its option, concurrently, successively or in any combination:

(1) all remedies available at law or in equity, including without limitation any one or more of the remedies available under any of the Loan Documents; and

(2) all rights and remedies of a secured party in, to and against the Collateral granted by the Uniform Commercial Code in the State of Florida and otherwise available at law or in equity, including, without limitation: (i) the right to declare all payments due under the Loan Documents immediately due and payable and the right to recover all fees and expenses (including reasonable attorneys' fees) in connection with the collection or enforcement thereof, which fees and expenses shall constitute additional obligations of Debtor to the Center hereunder; (ii) the right to act as, and Debtor hereby constitutes and appoints the Center, Debtor's true, lawful and irrevocable attorney-in-fact (which appointment shall be deemed coupled with an interest) to demand, receive and enforce payments and to give receipts, releases, satisfaction for and to sue for moneys payable to Debtor under or with respect to any of the Collateral under this Agreement, and actions taken pursuant to this appointment may be taken either in the name of Debtor or in the name of the Center with the same force and effect as if this appointment had not been made; (iii) the right to take immediate and exclusive possession of the Collateral, or any part thereof; (iv) the right to hold, maintain, preserve and prepare the Collateral for sale, until disposed of; (v) the right to dispose of the Collateral; (vi) the right to require Debtor to assemble and package the Collateral and make it available to the Center for its possession at a place to be designated by the Center which is reasonably convenient to the Center; (vii) the right to sell, hold or otherwise dispose of all or any part of the Collateral; (viii) the right to sue for specific performance of any obligation under the Loan Documents or to recover damages for breach thereof; (ix) the right to receive all cash distributions or payments payable in respect of the Collateral; and (x) the right to exercise or cause to be exercised all voting rights and partnership or limited liability company, as applicable, powers in respect of the Collateral. The remedies of the Center hereunder are cumulative and the exercise of any one or more of the remedies provided for herein or under the Uniform Commercial Code or other applicable law shall not be construed as a waiver of any of the other remedies of

the Center so long as any part of the obligations of Debtor to the Center remains unsatisfied. The Center shall have no duty to mitigate any loss to the Debtor occasioned by enforcement of any remedy hereunder and shall have no duty of any kind to any subordinated creditor of Debtor.

C. Should the Center exercise the rights and remedies specified in Section 7B, any proceeds received thereby shall be first applied to pay the costs and expenses, including reasonable attorneys' fees, incurred by the Center as a result of the Event of Default. The remainder of any proceeds, net of the Center's costs and expenses, shall be applied to the satisfaction of the remaining obligations of Debtor to the Center under the Loan Documents and any excess shall be paid over to Debtor.

Neither the acceptance of this Agreement nor its enforcement shall prejudice or in any manner affect the Center's right to realize upon or enforce any other security now or hereafter held by the Center, with it being agreed that the Center shall be entitled to enforce this Agreement and any other security now or hereafter held by the Center in such order and manner as it may in its absolute discretion determine. No remedy herein conferred upon or reserved to the Center is intended to be exclusive of any other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Documents to the Center, or to which the Center may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Center.

8. ASSIGNMENTS BY THE CENTER. The Center may assign in whole or in part its rights under this Agreement. Upon any unconditional assignment of the Center's entire right and interest hereunder, the Center shall automatically be relieved, from and after the date of such assignment, of liability for the performance of any obligation of the Center contained herein arising after the date of the assignment provided that any assignee shall be bound by all of the Center's obligations hereunder accruing from and after the date of such assignment.

9. INDEMNITY. Debtor agrees to indemnify, hold harmless and defend the Center and each of its directors, officers, shareholders, employees, beneficiaries, successors, assigns, agents, experts, licensees, affiliates, lenders, mortgagees and trustees, as applicable (collectively, the "Indemnified Parties"), from and against any and all losses, costs, claims, liabilities, damages and expenses, including, without limitation, reasonable attorneys' fees (collectively "Losses"), arising as the result of a breach of any of the representations, warranties, covenants, agreements or obligations of Debtor set forth in this Agreement, but excluding Losses suffered by an Indemnified Party directly arising out of such Indemnified Party's gross negligence or willful misconduct.

10. MISCELLANEOUS PROVISIONS.

A. Notices. All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Agreement shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a)

receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

|  |  |
|---|---|
| If to the Center: | THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC. 4912 Creekside Drive Clearwater, Florida 33760 |
| If to Debtor: | BOSTON FINANCE GROUP, LLC 4912 Creekside Drive Clearwater, Florida 33760 |

B.  Waiver and Amendment. No provisions of this Agreement shall be deemed waived or amended except by a written instrument unambiguously setting forth the matter waived or amended and signed by the party against which enforcement of such waiver or amendment is sought. Waiver of any matter shall not be deemed a waiver of the same or any other matter on any future occasion.

C.  Captions. Captions are used throughout this Agreement for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

D.  The Center's Liability. Notwithstanding anything to the contrary provided in this Agreement, it is specifically understood and agreed, with such agreement being a primary consideration for the execution of this Agreement by the Center, that (i) there shall be absolutely no personal liability on the part of any shareholder, director, officer, employee, beneficiary or agent of the Center, with respect to any of the terms, covenants and conditions of this Agreement or the other Loan Documents, (ii) Debtor waives all claims, demands and causes of action against the Center's officers, directors, employees, beneficiaries and agents in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center and (iii) Debtor shall look solely to the assets of the Center for the satisfaction of each and every remedy of Debtor in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center, with such exculpation of liability to be absolute and without any exception whatsoever.

E.  Severability. The provisions of this Agreement shall be deemed severable. If any part of this Agreement shall be held unenforceable, the remainder shall remain in full force and effect, and such unenforceable provision shall be reformed by such court so as to give maximum legal effect to the intention of the parties as expressed therein.

F. Construction Generally. This is an agreement between parties who are experienced in sophisticated and complex matters similar to the transaction contemplated by this Agreement and is entered into by both parties in reliance upon the economic and legal bargains contained herein and shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

G. Other Documents. Each of the parties agrees to sign such other and further documents as may be reasonably necessary to carry out the intentions expressed in this Agreement.

H. Attorneys' Fees. In the event of any judicial or other adversarial proceeding between the parties concerning this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs in addition to any other relief to which it may be entitled. References in this Agreement to the attorneys' fees and/or costs of a party shall mean both the reasonable fees and costs of independent outside counsel retained by such party with respect to this transaction and the reasonable fees and costs of the party's in-house counsel incurred in connection with this transaction.

I. Entire Agreement. This Agreement and the Note, together with any other certificates, instruments or agreements to be delivered in connection therewith, constitute the entire agreement between the parties with respect to the subject matter hereof, and there are no other representations, warranties or agreements, written or oral, between Debtor and the Center with respect to the subject matter of this Agreement.

J. Forum Selection; Jurisdiction; Venue; Choice of Law. Debtor acknowledges that this Agreement was substantially negotiated in the State of Florida, the Agreement was signed and delivered by the Center and Debtor in the State of Florida, all payments under the Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Agreement, the parties hereto hereby expressly submit to the jurisdiction of all federal and state courts located in the State of Florida and Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of the parties hereto that all provisions of this Agreement shall be governed by and construed under the internal laws of the State of Florida without regard to the law of any other jurisdiction. Nothing in this section shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in a state other than the State of Florida to the extent the Center deems such proceeding necessary or advisable to exercise remedies available under this Agreement or the other Loan Documents.

K.  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

L.  Binding Effect. This Agreement shall be binding upon and inure to the benefit of Debtor and the Center and their respective successors and permitted assigns, including, without limitation, any United States trustee, any debtor in possession or any trustee appointed from a private panel.

M. Survival. All representations, warranties, agreements, obligations and indemnities of Debtor and the Center set forth in this Agreement shall survive the execution of this Agreement and each Advance.

IN WITNESS WHEREOF, Debtor and the Center have entered into this Agreement as of the date first above written.

**THE CENTER FOR SPECIAL NEEDS**
**TRUST ADMINISTRATION, INC.**

By _____

Its _____President_____

**BOSTON FINANCE GROUP, LLC**

By _____

Its ____Managing Member_____

# Exhibit H

<div align="center">

**AMENDED AND RESTATED
PROMISSORY NOTE**

</div>

**$30,000,000.00**

**Dated as of March 15, 2010
Clearwater, Florida**

**1. PROMISE TO PAY.** BOSTON FINANCE GROUP, LLC, a Florida limited liability company, whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ("Debtor"), for value received, hereby promises to pay to THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ( the "Center"), or order, on or before the Maturity Date (as defined below), the principal sum of THIRTY MILLION AND NO/100 DOLLARS ($30,000,000.00), or such amount thereof as may be outstanding from time to time, in accordance with that certain Amended and Restated Revolving Line of Credit Agreement dated as of the date of this Note between Debtor and the Center, as such agreement may be amended from time to time (the "Loan Agreement"), together with interest as hereinafter provided.

**2. RENEWAL NOTE.** This Note evidences but does not extinguish or satisfy, and is not a novation of, a preexisting indebtedness of Debtor to the Center and amends and restates that certain Promissory Note executed by Debtor to the Center in the maximum principal amount of FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00) dated as of December 1, 2009.

**3. DEFINITIONS.** Initially capitalized terms which are not otherwise defined in this Note shall have the meanings set forth in the Loan Agreement. The following terms shall have the following meanings for all purposes of this Note:

**a. APPLICABLE MARGIN.** "Applicable Margin" means an annual percentage rate equal to TWO AND ONE-HALF PERCENT (2.5%).

**b. INTEREST RATE.** "Interest Rate" means, with respect to any Advance, the Prime Rate plus the Applicable Margin.

**c. INTEREST PERIOD.** "Interest Period" means (i) initially, the period beginning on the date of this Note and ending on the last day of the calendar month in which such date occurs, and (ii) thereafter, the period beginning on the first day of the calendar month and ending on the last day of such calendar month.

**d. MATURITY DATE.** "Maturity Date" means March 15, 2013.

**e. PRIME RATE.** "Prime Rate" means the Prime Rate as published in the "Money Rates" section of the Eastern edition of *The Wall Street Journal* on the 1st day of any calendar month. The following additional provisions shall apply in determining the Prime Rate:

(i) If more than one Prime Rate is published on the 1st day of any calendar month, the higher Prime Rate will be used as the Prime Rate. If the Prime Rate is not published on the 1st day of any calendar month, the Prime Rate published on the last business day prior to the 1st will be used as the Prime Rate.

(ii) If the Prime Rate becomes unavailable, the Center will select a new rate index which is based on a historical movement substantially similar to the index specified above and the new index and margin will result in a yearly rate substantially similar to the rate in effect at the time the index specified above becomes unavailable. The Center will give Debtor notice of this change.

(iii) The Prime Rate applicable to each Interest Period shall be the Prime Rate published on the 1st day of the respective calendar month or such other rate for such date selected as specified above.

**4. INTEREST AND PRINCIPAL PAYMENTS.** Debtor shall pay the Center interest on the outstanding principal amount of each Advance at the Interest Rate, in arrears for each Interest Period on or before the fifteenth (15th) day after the end of each Interest Period. The Center shall notify Debtor in writing on or before the fifth (5th) day after the end of each Interest Period during the term of this Note of the Center's determination of the interest payable for such Interest Period; provided however, if no such notification is made to Debtor, then the interest payable shall be at the same rate as the immediately preceding Interest Period. All outstanding principal and unpaid accrued interest shall be paid on the Maturity Date.

**5. APPLICATION OF PAYMENTS.** Each payment hereunder shall be applied first to any past due payments under this Note (including payment of all Costs as herein defined), then to accrued interest, and the balance, if any, shall be applied to the unpaid principal balance of this Note; provided, however, each payment hereunder while an Event of Default under the Loan Agreement has occurred and is continuing shall be applied as the Center in its sole discretion may determine.

**6. PAYMENT ARRANGEMENTS.** Upon execution of this Note, Debtor shall establish arrangements whereby all payments hereunder are transferred by wire or other means directly from Debtor's bank account to such account as the Center may from time to time designate.

**7. PREPAYMENT.** Debtor may prepay this Note as provided in the Loan Agreement.

**8. DEFAULT RATE.** All past-due principal and/or interest shall bear interest at the lesser of the highest rate for which the Debtor may legally contract or the rate of EIGHTEEN PERCENT (18%) per annum (the "Default Rate"), and such Default Rate shall continue to apply following a judgment in favor of the Center under this Note.

**9. NO RIGHT OF DEDUCTION OR SETOFF.** All payments of principal and interest due hereunder shall be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by Debtor, and (ii) without any other right of abatement, reduction, setoff, defense, counterclaim, interruption, deferment or

recoupment for any reason whatsoever. Debtor will pay the amounts necessary such that the gross amount of the principal and interest received by the Center is not less than that required by this Note.

**10. WAIVER.** No delay or omission on the part of the Center in exercising any remedy, right or option under this Note shall operate as a waiver of such remedy, right or option. In any event, a waiver on any one occasion shall not be construed as a waiver or bar to any such remedy, right or option on a future occasion.

**11. WAIVER BY DEBTOR.** Debtor hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and except as otherwise provided in the Loan Agreement, all other notices or demands in connection with delivery, acceptance, performance, default or endorsement of this Note.

**12. NOTICES.** All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Note shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day, following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

|  |  |
|---|---|
| If to the Center: | THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC. 4912 Creekside Drive Clearwater, Florida 33760 |
| If to Debtor: | BOSTON FINANCE GROUP, LLC 4912 Creekside Drive Clearwater, Florida 33760 |

or to such other address or such other person as either party may from time to time hereafter specify to the other party in a notice delivered in the manner provided above.

**13. COLLECTION COSTS.** Should any indebtedness represented by this Note be collected at law or in equity, or in bankruptcy or other proceedings, or should this Note be placed in the hands of attorneys for collection after default, Debtor shall pay, in addition to the principal and interest due and payable hereon, all costs of collecting or attempting to collect this Note (the "Costs"), including reasonable attorneys' fees and expenses of the Center (including those fees and expenses incurred in connection with any appeal and those of the Center's in-house counsel) regardless of whether a judicial action is commenced by the Center.

**14. AMENDMENT.**  This Note may not be amended or modified except by a written agreement duly executed by Debtor and the Center. In case any one or more of the provisions contained in this Note shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such provision had never been contained herein or therein.

**15. MAXIMUM INTEREST.**  Notwithstanding anything to the contrary contained in this Note or the Loan Agreement, the obligations of Debtor to the Center under this Note and the Loan Agreement are subject to the limitation that payments of interest, late charges and Costs to the Center shall not be required to the extent that receipt of any such payment by the Center would be contrary to provisions of applicable law limiting the maximum rate of interest that may be charged or collected by the Center. The portion of any such payment received by the Center that is in excess of the maximum interest permitted by such provisions of law shall be credited to the principal balance of this Note or, if such excess portion exceeds the outstanding principal balance of this Note, then such excess portion shall be refunded to Debtor. All interest paid or agreed to be paid to the Center shall, to the extent permitted by applicable law, be amortized, prorated, allocated and/or spread throughout the full term of this Note (including, without limitation, the period of any renewal or extension thereof) so that interest for such full term shall not exceed the maximum amount permitted by applicable law.

**16. TRANSACTION CHARACTERIZATION.**  It is the intent of the parties hereto that the business relationship created by this Note and the Loan Agreement is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in this Note and the Loan Agreement. None of the agreements contained in this Note or the Loan Agreement is intended, nor shall the same be deemed or construed, to create a partnership between the Center and Debtor, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

**17. CONSTRUCTION GENERALLY.**  This Note shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

**18. CAPTIONS.**  Captions are used throughout this Note for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

**19. GOVERNING LAW.**  Debtor acknowledges that this Note was substantially negotiated in the State of Florida, the Note was executed and delivered in the State of Florida, all payments under this Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Note, the parties hereto expressly submit to the jurisdiction of all federal and state courts located in the State of Florida. Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to

the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of Debtor and the Center that all provisions of this Note shall be governed by and construed under the internal laws of the State of Florida without regard to the law of any other jurisdiction. Nothing contained in this paragraph shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in any state in which the Center deems such proceeding necessary or advisable to exercise remedies available under this Note or the Loan Agreement.

**20. BINDING EFFECT.** This obligation shall bind Debtor and its successors and assigns, and the benefits hereof shall inure to the Center and its successors and assigns. The Center may assign its rights under this Note as set forth in the Loan Agreement.

IN WITNESS WHEREOF, Debtor has executed and delivered this Note effective as of the date first set forth above.

**BOSTON FINANCE GROUP, LLC**

By _____

Its _Managing Member_____

**STATE OF FLORIDA**
**COUNTY OF** _Pinellas_____

The foregoing instrument was acknowledged before me this _15th_ day of _March_ 2010 by _Leo Govoni_____ who is:

[X] Personally known to me, or, who
[ ] Produced _____ as personal identification.

_____
Notary Public – State of Florida

NOTARY PUBLIC-STATE OF FLORIDA
Derek Guida
Commission # DD795449
Expires:    SEP. 13, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

# Exhibit I

## AMENDED AND RESTATED
## REVOLVING LINE OF
## CREDIT AGREEMENT

THIS AMENDED AND RESTATED REVOLVING LINE OF CREDIT AGREEMENT (this "Agreement") is made as of March 15, 2011 (the "Effective Date"), by and between THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation, (the "Center"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760, and BOSTON FINANCE GROUP, LLC, a Florida limited liability company ("Debtor"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760.

The Center and Debtor are parties to an Amended and Restated Revolving Line of Credit Agreement and Amended and Restated Promissory Note, both dated as of March 15, 2010 (the "Prior Loan Documents"), pursuant to which the Center has made certain loans and financial accommodations available to Debtor. The Center and Debtor now desire to consolidate, amend and restate the Prior Loan Documents in all respects as hereinafter set forth.

In consideration of the mutual covenants and provisions of this Agreement, the parties agree as follows:

1. DEFINITIONS. The following terms shall have the following meanings for all purposes of this Agreement:

"Acceleration Event" means a breach or default, after the passage of all applicable notice and cure or grace periods, under any agreement, instrument or promissory note other than the Loan Documents between, among or by (i) Debtor or any Affiliate of Debtor, and, or for the benefit of, (ii) the Center and/or any Affiliate of the Center.

"Action" has the meaning set forth in Section 7.

"Advance" means any advance of the proceeds of the Loan made by the Center pursuant to the terms of Section 2.

"Affiliate" means any Person which directly or indirectly controls, is under common control with, or is controlled by any other Person. For purposes of this definition, "controls", "under common control with" and "controlled by" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or otherwise.

"Business Day" means any day on which banks are open for general banking business in the State of Florida other than a Saturday, Sunday, a legal holiday or any other day on which banks in the State of Florida are required or authorized by law to close.

"Code" means the United States Bankruptcy Code, 11 U.S.C. Sec. 101 et seq., as amended.

"Collateral" means all of Debtor's right, title and interest in all property, real and personal, owned by Debtor on the Effective Date or thereafter acquired by Debtor on or prior to payment in full and satisfaction of all obligations of Debtor to the Center under the Loan Documents.

"Debt" means as to such Person at any time: (a) all obligations of such Person for borrowed money; (b) all obligations of such Person evidenced by bonds, notes, debentures or other similar instruments; (c) all obligations of such Person to pay the deferred purchase price of property or services; (d) all capital lease obligations of such Person; (e) all contingent obligations or other obligations of others guaranteed by such Person; (f) all obligations secured by a lien existing on property owned by such Person, regardless of whether the obligations secured thereby have been assumed by such Person or are nonrecourse to the credit of such Person; and (g) all reimbursement obligations of such Person (whether contingent or otherwise) in respect of letters of credit, bankers' acceptances, surety or other bonds and similar instruments.

"Effective Date" has the meaning set forth in the introductory paragraph of this Agreement.

"Event of Default" has the meaning set forth in Section 7.

"Indemnified Parties" has the meaning set forth in Section 9.

"Loan" means the revolving line of credit in the Maximum Loan Amount as described in Section 2.

"Loan Documents" means, collectively, this Agreement, the Note, the UCC Financing Statements and all other documents, instruments and agreements executed in connection therewith or contemplated thereby.

"Losses" has the meaning set forth in Section 9.

"Material Adverse Effect" means a material adverse effect on (i) the financial condition of Debtor or (ii) the ability of Debtor to perform its obligations under the Loan Documents.

"Maturity Date" has the meaning set forth in the Note.

"Maximum Loan Amount" means FIFTY MILLION AND NO/100 DOLLARS ($50,000,000.00).

"Note" means the amended and restated promissory note dated as of the Effective Date executed by Debtor in favor of the Center, as such Note may be amended and/or amended and restated and/or substituted from time to time.

"Person" means any individual, corporation, partnership, limited liability company, trust, unincorporated organization, governmental authority or any other form of entity.

"UCC Financing Statements" means those UCC financing statements as may be requested by the Center pursuant to this Agreement to be executed and delivered by Debtor to perfect the Center's security interest in the Collateral.

## 2. REVOLVING LINE OF CREDIT.

A. On the terms and subject to the satisfaction by Debtor of the conditions set forth in this Agreement, the Center agrees to make the Loan to Debtor, which Loan will be in the form of Advances made from time to time as provided in this Agreement. The outstanding aggregate principal amount of the Loan shall not exceed the Maximum Loan Amount at any time. So long as no event has occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event, Debtor may borrow, prepay and reborrow, from the Effective Date until the Maturity Date, an amount up to the Maximum Loan Amount.

B. Simultaneously with the execution and delivery of this Agreement, Debtor shall execute and deliver to the Center the Note. The obligation of Debtor to pay the outstanding aggregate principal amount of all Advances plus accrued interest thereon shall be evidenced by the Note. Debtor irrevocably authorizes the Center to make or cause to be made, at or about the time of any Advance or at the time of the Center's receipt of any payment of the principal amount of the Note, an appropriate notation in the Center's records reflecting the amount of such Advance or payment, as applicable. The outstanding aggregate principal amount of the Note plus accrued interest thereon set forth in the Center's records maintained with respect to the Note (which may include computer records) shall, absent manifest error, be prima facie evidence of the outstanding aggregate principal amount plus accrued interest thereon due and owing to the Center, but the failure to record, or any error in so recording, any such amount on the Center's records shall not limit or otherwise affect the obligations of Debtor under the Note to make payments when due. Notwithstanding the foregoing, Debtor agrees to execute such amendments to the Note, amendments and restatements of the Note and/or substitute promissory notes for the Note as the Center may reasonably request to evidence Debtor's obligations to the Center under the Loan Documents.

C. Debtor shall notify the Center at least five (5) Business Days before the Business Day on which Debtor desires to receive an Advance. The Center's obligation to fund each Advance shall be subject to the satisfaction of the following conditions precedent as of the date of the requested Advance:

> (1) no event shall have occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event;

> (2) Debtor shall be in compliance with each of the covenants set forth in Section 5;

> (3) the outstanding principal balance of the Loan, together with the amount of the requested Advance, must not exceed the Maximum Loan Amount; and

(4) there shall have been no material adverse change in Debtor's business, operations, assets or financial condition since the Effective Date, as determined by the Center in its reasonable discretion.

Upon Debtor's satisfaction of the foregoing conditions, the Center will disburse the requested Advance in immediately available funds to such account as Debtor shall have specified in the notice or as otherwise directed by Debtor in the notice.

D.  The Loan shall bear interest at the rate(s) of interest set forth in the Note and such interest shall be payable as provided in the Note. Debtor shall have the right to prepay (without premium or penalty) the Note in whole or in part at any time provided that any such prepayment shall only be made on a regularly scheduled payment date upon not less than ten (10) days prior written notice from Debtor to the Center. Debtor shall pay on the Maturity Date, and there shall become absolutely due and payable on the Maturity Date, the outstanding principal amount of the Loan and all accrued but unpaid interest thereon.

E.  As security for the payment and performance of all obligations of Debtor to the Center under the Loan Documents, Debtor hereby grants to the Center a security interest in the Collateral and agrees to provide to the Center such additional documentation, including the UCC Financing Statements, as the Center may reasonably request to document, perfect and prioritize its security interest in the Collateral.

3. REPRESENTATIONS AND WARRANTIES OF THE CENTER. The representations and warranties of the Center contained in this section are being made by the Center as of the Effective Date to induce Debtor to enter into this Agreement and consummate the transactions contemplated herein, and Debtor has relied, and will continue to rely, upon such representations and warranties from and after the execution of this Agreement. The Center represents and warrants to Debtor as follows:

A.  Organization of the Center. The Center has been duly formed, is validly existing and has taken all necessary action to authorize the execution, delivery and performance by the Center of this Agreement.

B.  Authority of the Center. The person who has executed this Agreement on behalf of the Center is duly authorized so to do.

C.  Enforceability. Upon execution by the Center, this Agreement shall constitute the legal, valid and binding obligation of the Center, enforceable against the Center in accordance with its terms.

All representations and warranties of the Center made in this Agreement shall survive the execution of this Agreement.

4. REPRESENTATIONS AND WARRANTIES OF DEBTOR. The representations and warranties of Debtor contained in this section are being made by Debtor as of the Effective Date

and the date of each Advance to induce the Center to enter into this Agreement and consummate the transactions contemplated herein, and the Center has relied, and will continue to rely, upon such representations and warranties from and after the Effective Date and the date of each Advance. Debtor represents and warrants to the Center as follows:

A. Organization and Authority of Debtor. Debtor is duly organized or formed, validly existing and in good standing under the laws of the State of Florida and qualified as a foreign entity to do business in any jurisdiction where such qualification is required. All necessary company action has been taken to authorize the execution, delivery and performance of the Loan Documents. The person(s) who have executed the Loan Documents on behalf of Debtor are duly authorized so to do.

B. Enforceability of Documents. Upon execution by Debtor, the Loan Documents shall constitute the legal, valid and binding obligations of Debtor, enforceable against Debtor in accordance with their respective terms.

C. Litigation. There are no suits, actions, proceedings or investigations pending or, to the actual knowledge of Debtor, threatened against or involving Debtor, the Collateral or any of Debtor's assets before any court, arbitrator, or administrative or governmental body which might reasonably result in a Material Adverse Effect.

D. Absence of Breaches or Defaults. The Debtor is not in default beyond any applicable grace period under any document, instrument or agreement to which Debtor is a party or by which the Debtor, the Collateral, or any of the property of Debtor is subject or bound which would have a Material Adverse Effect or would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not result in a Material Adverse Effect or result in any breach or default under any other document, instrument or agreement to which Debtor is a party or by which Debtor, the Collateral or any of the property of Debtor is subject or bound which would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not violate any applicable law, statute, regulation, rule, ordinance, code, rule or order.

E. Licenses, Permits, Consents and Approvals. Debtor has all required licenses, permits, consents and approvals, both governmental and private, to use and operate the Collateral and conduct its business in the intended manner.

F. Insolvency. Debtor is not insolvent within the meaning of the Code.

G. Taxes. Debtor has paid, in the ordinary course of business, all taxes, assessments, levies and other governmental charges which have been levied or imposed upon Debtor, the Collateral and/or Debtor's properties and were due and payable.

H. Title to Collateral; First Priority Security Interest. Debtor owns, and with respect to Collateral acquired after the date hereof, Debtor will own, legally and beneficially, the Collateral, free and clear of any lien, security interest, pledge, hypothecation, claim or other

encumbrance, or any right or option on the part of any third person to purchase or otherwise acquire or obtain any lien or security interest in the Collateral or any part thereof, except for the lien and security interest granted herein in favor of the Center or as otherwise may be consented to in writing by the Center pursuant to Section 5M. Upon the execution of the Loan Documents by the parties, the Center shall have a valid first priority lien upon and security interest in the Collateral.

I.   No Actions. No action has been brought or is threatened which would in any way prohibit or restrict the execution and delivery of any of the Loan Documents by Debtor or the performance in all respects of Debtor thereunder.

All representations and warranties of Debtor made in this Agreement shall survive the execution of this Agreement and each Advance.

5. COVENANTS. Debtor covenants to the Center from and after the Effective Date as follows:

A.   Books, Records and Inspections. Debtor shall, at all reasonable times upon prior written notice from the Center and during normal business hours, (i) provide the Center and the Center's officers, employees, agents, advisors, attorneys and accountants with access to Debtor's personal and real properties and books and records, and (ii) allow such persons to make such inquires of Debtor's officers and employees and to make copies and perform such verifications as the Center considers reasonably necessary; provided, however, all such inspections, copies and verifications shall be at the Center's sole cost and expense and the Center shall reasonably attempt to minimize, during any such activity, interference with the operation of Debtor's business and the Center shall keep any information obtained confidential; provided, however, the Center shall not be required to keep confidential (1) any information which had previously been made public, (2) information that the Center is required to disclose by court order, subpoena or under federal or state law, or (3) information received by the Center from a third party.

B.   Reporting Obligations. Debtor will provide the Center with each of the following:

(1) Financial Statements. Within forty-five (45) days after the end of each fiscal quarter and within one hundred twenty (120) days after the end of each fiscal year of Debtor, Debtor shall deliver to the Center complete financial statements of Debtor including a balance sheet, profit and loss statement, cash flow statement and all other related schedules for the fiscal period then ended. All such financial statements shall be prepared in accordance with generally accepted accounting principles, consistently applied from period to period, and shall be certified to be accurate and complete by Debtor (or the Treasurer or other appropriate officer of Debtor). Debtor understands that the Center is relying upon such financial statements and Debtor represents that such reliance is reasonable. The financial statements delivered to the Center need not be audited, but Debtor shall deliver to the Center copies of audited financial statements of Debtor which may be prepared if and when they are available.

(2) Event of Default or Acceleration Event. Within five (5) days after Debtor becomes aware of an Event of Default or an Acceleration Event, Debtor shall deliver to an officer of the Center written notification specifying the nature and period of existence thereof and what action Debtor is taking or proposes to take with respect thereto.

(3) Litigation. Within ten (10) days after Debtor becomes aware of any action, suit or proceeding pending or threatened in writing against or involving Debtor and/or Debtor's properties, Debtor shall notify the Center of such action, suit or proceeding and in such notice shall specify the nature thereof, whether the alleged liability therein is covered by insurance then in effect and, if so covered, the monetary coverage thereof, and what action Debtor is taking or proposes to take with respect thereto.

(4) Auditors' Reports. If and when received, Debtor shall deliver to the Center a copy of each report submitted to Debtor by its independent accountants in connection with any annual, interim or special audit made by it of the books of Debtor.

(5) Other Information. Debtor shall deliver to the Center promptly after the receipt of written request therefor information concerning Debtor requested by the Center that is required to satisfy all requirements of federal and state law applicable to the Center and all other regulatory laws applicable to the Center or to which the Center is subject or bound.

C. Payment of Taxes, Assessments and Claims. Unless Debtor shall contest the amount or validity thereof in the manner described below, Debtor shall pay all taxes, assessments and governmental charges or levies imposed upon it or upon its income or profits, or upon any properties belonging to it, prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien upon any of its properties. Debtor may, at its own expense, contest or cause to be contested such taxes, assessments, governmental charges or levies or other claims (i) in good faith, (ii) by proper proceedings, and (iii) against which adequate reserves in accordance with generally accepted accounting principles are being maintained.

D. Organization of Debtor. Debtor will continue to be a limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction and qualified to do business in any jurisdiction where such qualification is required.

E. Licenses, Permits, Consents and Approvals. Debtor shall maintain in full force and effect all required licenses, permits, consents and approvals, both governmental and private, to use and operate its assets and conduct its business in the intended manner.

F. Use of Proceeds. Debtor shall use the proceeds of the Loan for funding loans and other credit facilities and financial accommodations (as such term is used in the Code) extended to third party borrowers.

G. Debt. Debtor shall not incur, create, assume or permit to exist any Debt, except (a) Debt to the Center or Affiliates of the Center and (b) Debt incurred pursuant to trade accounts arising in the ordinary course of business that are not past due by more than thirty (30) days.

H. Fundamental Changes. Debtor shall not consolidate with or merge into any Person or permit any Person to merge into it.

I. Disposition of Assets. Without the prior written consent of the Center, Debtor shall not, directly or indirectly, sell, assign, lease, transfer or otherwise dispose of all or substantially all of its assets (other than in the ordinary course of business for full and fair consideration).

J. Transactions With Affiliates. Without the prior written consent of the Center, Debtor will not enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service, with any Affiliate of Debtor, except transactions for fair value in accordance with reasonable commercial standards.

K. Maintenance of Assets. Debtor shall maintain, keep and preserve all of its tangible and intangible property and other assets that are necessary and useful for proper conduct of its business.

L. Title; First Priority Lien. Debtor shall maintain good and marketable fee simple title to the Collateral subject only to the lien and security interest granted herein in favor of the Center or as otherwise may be consented to in writing by the Center pursuant to this section. Debtor shall not sell, assign, mortgage, grant, bargain, convey, pledge or encumber by deed of trust, security agreement or other consensual monetary lien in or on Debtor's interest in the Collateral or any portion thereof or permit Debtor's interest in the Collateral or any part thereof to be sold, assigned, mortgaged, granted, bargained, conveyed, pledged or encumbered by deed of trust, security agreement or other consensual monetary lien without the prior written consent of the Center, which consent may be withheld in the Center's sole discretion. Any sale, assignment, mortgage, grant, bargain, conveyance, pledge or consensual encumbrance in breach of the preceding sentence shall be null and void, and of no force and effect.

6. TRANSACTION CHARACTERIZATION. This Agreement is a contract to extend a financial accommodation (as such term is used in the Code) for the benefit of Debtor. It is the intent of the parties hereto that the business relationship created by this Agreement and the other Loan Documents is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in the Loan Documents. None of the agreements contained in the Loan Documents is intended, nor shall the same be deemed or construed, to create a partnership between Debtor and the Center, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

7. DEFAULT AND REMEDIES.

    A. Each of the following shall be deemed an event of default by Debtor, after notice, to the extent required hereunder, and after the expiration of any applicable grace or cure period without the cure thereof (each, an "Event of Default"):

        (1) If any representation or warranty of Debtor set forth in any of the Loan Documents is false in any material respect when made or becomes false in any material respect, or if Debtor renders any materially false statement or account;

        (2) If any principal, interest or other monetary sum due under the Note or any other Loan Document is not paid within five (5) days from the date when due and the Center shall have given notice of such failure to Debtor and such failure shall not have been cured by Debtor within five (5) days from the delivery of such notice;

        (3) If Debtor fails to observe or perform any of the other covenants (except as otherwise provided below), conditions, or obligations of this Agreement or there is a breach or default under any other Loan Document beyond any applicable notice or cure period; provided, however, if any such event does not involve the payment of any monetary sum, is not the result of a willful or intentional act or omission of Debtor, does not place any rights or property of the Center in immediate jeopardy, and is within the reasonable power of Debtor to promptly cure after receipt of notice thereof, all as determined by the Center in its reasonable discretion, then such event shall not constitute an Event of Default hereunder, unless otherwise expressly provided herein, unless and until the Center shall have given Debtor notice thereof and a period of thirty (30) days shall have elapsed, during which period Debtor may correct or cure such event, upon failure of which an Event of Default shall be deemed to have occurred hereunder (except as otherwise provided in the following sentence) without further notice or demand of any kind being required. If such nonmonetary event cannot reasonably be cured within such thirty (30) day period, as determined by the Center in its reasonable discretion, and Debtor is diligently pursuing a cure of such event, then an Event of Default shall not be deemed to have occurred hereunder upon the expiration of such thirty (30) day period and Debtor shall have a reasonable period to cure such event beyond such thirty (30) day period, which shall not exceed ninety (90) days after receiving notice of the event from the Center. If Debtor shall fail to correct or cure such event within such ninety (90) day period, an Event of Default shall be deemed to have occurred hereunder without further notice or demand of any kind being required; or

        (4) If Debtor becomes insolvent within the meaning of the Code, files or notifies the Center that it intends to file a petition under the Code, initiates a proceeding under any similar law or statute relating to bankruptcy, insolvency, reorganization, winding up or adjustment of debts (collectively, an "Action"), becomes the subject of either an involuntary Action or petition under the Code

without such involuntary Action or petition being dismissed within thirty (30) days of filing or, if Debtor is diligently proceeding to dismiss such petition, such longer period of time as may be required, but in no event shall such longer period of time be greater than ninety (90) days, or is not generally paying its debts as the same become due.

B. Upon and during the continuance of an Event of Default, subject to the limitations, notices and cure periods set forth in Section 7A, or an Acceleration Event, the Center shall have no obligation to fund any Advance to Debtor and the Center may declare all obligations of Debtor under the Loan Documents to be due and payable, and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind except as expressly provided herein. Thereafter, the Center may exercise, at its option, concurrently, successively or in any combination:

(1) all remedies available at law or in equity, including without limitation any one or more of the remedies available under any of the Loan Documents; and

(2) all rights and remedies of a secured party in, to and against the Collateral granted by the Uniform Commercial Code in the State of Florida and otherwise available at law or in equity, including, without limitation: (i) the right to declare all payments due under the Loan Documents immediately due and payable and the right to recover all fees and expenses (including reasonable attorneys' fees) in connection with the collection or enforcement thereof, which fees and expenses shall constitute additional obligations of Debtor to the Center hereunder; (ii) the right to act as, and Debtor hereby constitutes and appoints the Center, Debtor's true, lawful and irrevocable attorney-in-fact (which appointment shall be deemed coupled with an interest) to demand, receive and enforce payments and to give receipts, releases, satisfaction for and to sue for moneys payable to Debtor under or with respect to any of the Collateral under this Agreement, and actions taken pursuant to this appointment may be taken either in the name of Debtor or in the name of the Center with the same force and effect as if this appointment had not been made; (iii) the right to take immediate and exclusive possession of the Collateral, or any part thereof; (iv) the right to hold, maintain, preserve and prepare the Collateral for sale, until disposed of; (v) the right to dispose of the Collateral; (vi) the right to require Debtor to assemble and package the Collateral and make it available to the Center for its possession at a place to be designated by the Center which is reasonably convenient to the Center; (vii) the right to sell, hold or otherwise dispose of all or any part of the Collateral; (viii) the right to sue for specific performance of any obligation under the Loan Documents or to recover damages for breach thereof; (ix) the right to receive all cash distributions or payments payable in respect of the Collateral; and (x) the right to exercise or cause to be exercised all voting rights and partnership or limited liability company, as applicable, powers in respect of the Collateral. The remedies of the Center hereunder are cumulative and the exercise of any one or more of the remedies provided for herein or under the Uniform Commercial Code or other applicable law shall not be construed as a waiver of any of the other remedies of

the Center so long as any part of the obligations of Debtor to the Center remains unsatisfied. The Center shall have no duty to mitigate any loss to the Debtor occasioned by enforcement of any remedy hereunder and shall have no duty of any kind to any subordinated creditor of Debtor.

C. Should the Center exercise the rights and remedies specified in Section 7B, any proceeds received thereby shall be first applied to pay the costs and expenses, including reasonable attorneys' fees, incurred by the Center as a result of the Event of Default. The remainder of any proceeds, net of the Center's costs and expenses, shall be applied to the satisfaction of the remaining obligations of Debtor to the Center under the Loan Documents and any excess shall be paid over to Debtor.

Neither the acceptance of this Agreement nor its enforcement shall prejudice or in any manner affect the Center's right to realize upon or enforce any other security now or hereafter held by the Center, with it being agreed that the Center shall be entitled to enforce this Agreement and any other security now or hereafter held by the Center in such order and manner as it may in its absolute discretion determine. No remedy herein conferred upon or reserved to the Center is intended to be exclusive of any other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Documents to the Center, or to which the Center may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Center.

8. ASSIGNMENTS BY THE CENTER. The Center may assign in whole or in part its rights under this Agreement. Upon any unconditional assignment of the Center's entire right and interest hereunder, the Center shall automatically be relieved, from and after the date of such assignment, of liability for the performance of any obligation of the Center contained herein arising after the date of the assignment provided that any assignee shall be bound by all of the Center's obligations hereunder accruing from and after the date of such assignment.

9. INDEMNITY. Debtor agrees to indemnify, hold harmless and defend the Center and each of its directors, officers, shareholders, employees, beneficiaries, successors, assigns, agents, experts, licensees, affiliates, lenders, mortgagees and trustees, as applicable (collectively, the "Indemnified Parties"), from and against any and all losses, costs, claims, liabilities, damages and expenses, including, without limitation, reasonable attorneys' fees (collectively "Losses"), arising as the result of a breach of any of the representations, warranties, covenants, agreements or obligations of Debtor set forth in this Agreement, but excluding Losses suffered by an Indemnified Party directly arising out of such Indemnified Party's gross negligence or willful misconduct.

10. MISCELLANEOUS PROVISIONS.

A. Notices. All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Agreement shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a)

receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

<blockquote>
If to the Center:    THE CENTER FOR SPECIAL NEEDS<br>
                    TRUST ADMINISTRATION, INC.<br>
                    4912 Creekside Drive<br>
                    Clearwater, Florida 33760<br>
<br>
If to Debtor:       BOSTON FINANCE GROUP, LLC<br>
                    4912 Creekside Drive<br>
                    Clearwater, Florida 33760
</blockquote>

B. Waiver and Amendment. No provisions of this Agreement shall be deemed waived or amended except by a written instrument unambiguously setting forth the matter waived or amended and signed by the party against which enforcement of such waiver or amendment is sought. Waiver of any matter shall not be deemed a waiver of the same or any other matter on any future occasion.

C. Captions. Captions are used throughout this Agreement for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

D. The Center's Liability. Notwithstanding anything to the contrary provided in this Agreement, it is specifically understood and agreed, with such agreement being a primary consideration for the execution of this Agreement by the Center, that (i) there shall be absolutely no personal liability on the part of any shareholder, director, officer, employee, beneficiary or agent of the Center, with respect to any of the terms, covenants and conditions of this Agreement or the other Loan Documents, (ii) Debtor waives all claims, demands and causes of action against the Center's officers, directors, employees, beneficiaries and agents in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center and (iii) Debtor shall look solely to the assets of the Center for the satisfaction of each and every remedy of Debtor in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center, with such exculpation of liability to be absolute and without any exception whatsoever.

E. Severability. The provisions of this Agreement shall be deemed severable. If any part of this Agreement shall be held unenforceable, the remainder shall remain in full force and effect, and such unenforceable provision shall be reformed by such court so as to give maximum legal effect to the intention of the parties as expressed therein.

F. Construction Generally. This is an agreement between parties who are experienced in sophisticated and complex matters similar to the transaction contemplated by this Agreement and is entered into by both parties in reliance upon the economic and legal bargains contained herein and shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

G. Other Documents. Each of the parties agrees to sign such other and further documents as may be reasonably necessary to carry out the intentions expressed in this Agreement.

H. Attorneys' Fees. In the event of any judicial or other adversarial proceeding between the parties concerning this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs in addition to any other relief to which it may be entitled. References in this Agreement to the attorneys' fees and/or costs of a party shall mean both the reasonable fees and costs of independent outside counsel retained by such party with respect to this transaction and the reasonable fees and costs of the party's in-house counsel incurred in connection with this transaction.

I. Entire Agreement. This Agreement and the Note, together with any other certificates, instruments or agreements to be delivered in connection therewith, constitute the entire agreement between the parties with respect to the subject matter hereof, and there are no other representations, warranties or agreements, written or oral, between Debtor and the Center with respect to the subject matter of this Agreement.

J. Forum Selection; Jurisdiction; Venue; Choice of Law. Debtor acknowledges that this Agreement was substantially negotiated in the State of Florida, the Agreement was signed and delivered by the Center and Debtor in the State of Florida, all payments under the Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Agreement, the parties hereto hereby expressly submit to the jurisdiction of all federal and state courts located in the State of Florida and Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of the parties hereto that all provisions of this Agreement shall be governed by and construed under the internal laws of the State of Florida without regard to the law of any other jurisdiction. Nothing in this section shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in a state other than the State of Florida to the extent the Center deems such proceeding necessary or advisable to exercise remedies available under this Agreement or the other Loan Documents.

K. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

L. Binding Effect. This Agreement shall be binding upon and inure to the benefit of Debtor and the Center and their respective successors and permitted assigns, including, without limitation, any United States trustee, any debtor in possession or any trustee appointed from a private panel.

M. Survival. All representations, warranties, agreements, obligations and indemnities of Debtor and the Center set forth in this Agreement shall survive the execution of this Agreement and each Advance.

IN WITNESS WHEREOF, Debtor and the Center have entered into this Agreement as of the date first above written.

**THE CENTER FOR SPECIAL NEEDS**
**TRUST ADMINISTRATION, INC.**

By_____

Its_____President_____

**BOSTON FINANCE GROUP, LLC**

By_____

Its___Managing Member_____

# Exhibit J

## AMENDED AND RESTATED
## PROMISSORY NOTE

**Dated as of March 15, 2011**

**$50,000,000.00**
**Clearwater, Florida**

**1. PROMISE TO PAY.** BOSTON FINANCE GROUP, LLC, a Florida limited liability company, whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ("Debtor"), for value received, hereby promises to pay to THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ( the "Center"), or order, on or before the Maturity Date (as defined below), the principal sum of FIFTY MILLION AND NO/100 DOLLARS ($50,000,000.00), or such amount thereof as may be outstanding from time to time, in accordance with that certain Amended and Restated Revolving Line of Credit Agreement dated as of the date of this Note between Debtor and the Center, as such agreement may be amended from time to time (the "Loan Agreement"), together with interest as hereinafter provided.

**2. RENEWAL NOTE.** This Note evidences but does not extinguish or satisfy, and is not a novation of, a preexisting indebtedness of Debtor to the Center and amends and restates that certain Amended and Restated Promissory Note executed by Debtor to the Center in the maximum principal amount of THIRTY MILLION AND NO/100 DOLLARS ($30,000,000.00) dated as of March 15, 2010.

**3. DEFINITIONS.** Initially capitalized terms which are not otherwise defined in this Note shall have the meanings set forth in the Loan Agreement. The following terms shall have the following meanings for all purposes of this Note:

**a. APPLICABLE MARGIN.** "Applicable Margin" means an annual percentage rate equal to TWO AND ONE-HALF PERCENT (2.5%).

**b. INTEREST RATE.** "Interest Rate" means, with respect to any Advance, the Prime Rate plus the Applicable Margin.

**c. INTEREST PERIOD.** "Interest Period" means (i) initially, the period beginning on the date of this Note and ending on the last day of the calendar month in which such date occurs, and (ii) thereafter, the period beginning on the first day of the calendar month and ending on the last day of such calendar month.

**d. MATURITY DATE.** "Maturity Date" means March 15, 2014.

**e. PRIME RATE.** "Prime Rate" means the Prime Rate as published in the "Money Rates" section of the Eastern edition of *The Wall Street Journal* on the 1st day of any calendar month. The following additional provisions shall apply in determining the Prime Rate:

(i) If more than one Prime Rate is published on the 1st day of any calendar month, the higher Prime Rate will be used as the Prime Rate. If the Prime Rate is not published on the 1st day of any calendar month, the Prime Rate published on the last business day prior to the 1st will be used as the Prime Rate.

(ii) If the Prime Rate becomes unavailable, the Center will select a new rate index which is based on a historical movement substantially similar to the index specified above and the new index and margin will result in a yearly rate substantially similar to the rate in effect at the time the index specified above becomes unavailable. The Center will give Debtor notice of this change.

(iii) The Prime Rate applicable to each Interest Period shall be the Prime Rate published on the 1st day of the respective calendar month or such other rate for such date selected as specified above.

**4. INTEREST AND PRINCIPAL PAYMENTS.** Debtor shall pay the Center interest on the outstanding principal amount of each Advance at the Interest Rate, in arrears for each Interest Period on or before the fifteenth (15th) day after the end of each Interest Period. The Center shall notify Debtor in writing on or before the fifth (5th) day after the end of each Interest Period during the term of this Note of the Center's determination of the interest payable for such Interest Period; provided however, if no such notification is made to Debtor, then the interest payable shall be at the same rate as the immediately preceding Interest Period. All outstanding principal and unpaid accrued interest shall be paid on the Maturity Date.

**5. APPLICATION OF PAYMENTS.** Each payment hereunder shall be applied first to any past due payments under this Note (including payment of all Costs as herein defined), then to accrued interest, and the balance, if any, shall be applied to the unpaid principal balance of this Note; provided, however, each payment hereunder while an Event of Default under the Loan Agreement has occurred and is continuing shall be applied as the Center in its sole discretion may determine.

**6. PAYMENT ARRANGEMENTS.** Upon execution of this Note, Debtor shall establish arrangements whereby all payments hereunder are transferred by wire or other means directly from Debtor's bank account to such account as the Center may from time to time designate.

**7. PREPAYMENT.** Debtor may prepay this Note as provided in the Loan Agreement.

**8. DEFAULT RATE.** All past-due principal and/or interest shall bear interest at the lesser of the highest rate for which the Debtor may legally contract or the rate of EIGHTEEN PERCENT (18%) per annum (the "Default Rate"), and such Default Rate shall continue to apply following a judgment in favor of the Center under this Note.

**9. NO RIGHT OF DEDUCTION OR SETOFF.** All payments of principal and interest due hereunder shall be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by Debtor, and (ii) without any other right of abatement, reduction, setoff, defense, counterclaim, interruption, deferment or

recoupment for any reason whatsoever. Debtor will pay the amounts necessary such that the gross amount of the principal and interest received by the Center is not less than that required by this Note.

**10. WAIVER.** No delay or omission on the part of the Center in exercising any remedy, right or option under this Note shall operate as a waiver of such remedy, right or option. In any event, a waiver on any one occasion shall not be construed as a waiver or bar to any such remedy, right or option on a future occasion.

**11. WAIVER BY DEBTOR.** Debtor hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and except as otherwise provided in the Loan Agreement, all other notices or demands in connection with delivery, acceptance, performance, default or endorsement of this Note.

**12. NOTICES.** All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Note shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day, following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

<div style="margin-left: 2em;">

If to the Center:   THE CENTER FOR SPECIAL NEEDS
                      TRUST ADMINISTRATION, INC.
                      4912 Creekside Drive
                      Clearwater, Florida 33760

If to Debtor:   BOSTON FINANCE GROUP, LLC
                      4912 Creekside Drive
                      Clearwater, Florida 33760

</div>

or to such other address or such other person as either party may from time to time hereafter specify to the other party in a notice delivered in the manner provided above.

**13. COLLECTION COSTS.** Should any indebtedness represented by this Note be collected at law or in equity, or in bankruptcy or other proceedings, or should this Note be placed in the hands of attorneys for collection after default, Debtor shall pay, in addition to the principal and interest due and payable hereon, all costs of collecting or attempting to collect this Note (the "Costs"), including reasonable attorneys' fees and expenses of the Center (including those fees and expenses incurred in connection with any appeal and those of the Center's in-house counsel) regardless of whether a judicial action is commenced by the Center.

**14. AMENDMENT.** This Note may not be amended or modified except by a written agreement duly executed by Debtor and the Center. In case any one or more of the provisions contained in this Note shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such provision had never been contained herein or therein.

**15. MAXIMUM INTEREST.** Notwithstanding anything to the contrary contained in this Note or the Loan Agreement, the obligations of Debtor to the Center under this Note and the Loan Agreement are subject to the limitation that payments of interest, late charges and Costs to the Center shall not be required to the extent that receipt of any such payment by the Center would be contrary to provisions of applicable law limiting the maximum rate of interest that may be charged or collected by the Center. The portion of any such payment received by the Center that is in excess of the maximum interest permitted by such provisions of law shall be credited to the principal balance of this Note or, if such excess portion exceeds the outstanding principal balance of this Note, then such excess portion shall be refunded to Debtor. All interest paid or agreed to be paid to the Center shall, to the extent permitted by applicable law, be amortized, prorated, allocated and/or spread throughout the full term of this Note (including, without limitation, the period of any renewal or extension thereof) so that interest for such full term shall not exceed the maximum amount permitted by applicable law.

**16. TRANSACTION CHARACTERIZATION.** It is the intent of the parties hereto that the business relationship created by this Note and the Loan Agreement is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in this Note and the Loan Agreement. None of the agreements contained in this Note or the Loan Agreement is intended, nor shall the same be deemed or construed, to create a partnership between the Center and Debtor, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

**17. CONSTRUCTION GENERALLY.** This Note shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

**18. CAPTIONS.** Captions are used throughout this Note for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

**19. GOVERNING LAW.** Debtor acknowledges that this Note was substantially negotiated in the State of Florida, the Note was executed and delivered in the State of Florida, all payments under this Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Note, the parties hereto expressly submit to the jurisdiction of all federal and state courts located in the State of Florida. Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to

the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of Debtor and the Center that all provisions of this Note shall be governed by and construed under the internal laws of the State of Florida without regard to the law of any other jurisdiction. Nothing contained in this paragraph shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in any state in which the Center deems such proceeding necessary or advisable to exercise remedies available under this Note or the Loan Agreement.

**20. BINDING EFFECT.** This obligation shall bind Debtor and its successors and assigns, and the benefits hereof shall inure to the Center and its successors and assigns. The Center may assign its rights under this Note as set forth in the Loan Agreement.

IN WITNESS WHEREOF, Debtor has executed and delivered this Note effective as of the date first set forth above.

**BOSTON FINANCE GROUP, LLC**

By _____

Its ___Managing Member___

**STATE OF FLORIDA**
**COUNTY OF** ___Pinellas___

The foregoing instrument was acknowledged before me this __15__ day of __March__ 201_1_ by ___Leo Govoni___ who is:

[X] Personally known to me, or, who
[ ] Produced _____ as personal identification.

_____
Notary Public – State of Florida

NOTARY PUBLIC-STATE OF FLORIDA
Derek Guida
Commission # DD795449
Expires: SEP. 13, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

# Exhibit K



# BOSTON
FINANCE GROUP, LLC

August 31, 2011

Board of Directors
The Center for Special Needs Trust Administration, Inc.
4912 Creekside Drive
Clearwater, FL  33760

Subject: Revolving Credit Facility provided by CSNTA to Boston Finance Group, LLC

Dear Sirs and Madam:

The purpose of this letter is to address the pricing of this credit facility and request a modification to the terms of the agreement in order to more closely and reasonably reflect the changing financial market conditions.

## Background

The facility was established in September of 2009 and at that time the pricing of the facility was indexed to Prime vs. other base rates, in large part, to more easily facilitate accounting as Prime is historically very stable and not subject to extensive nor daily changes.

In fact, Prime has not moved in the 2 years since the facility was established and all other money market rates have moved significantly as a result of the major changes to the financial markets during this time including, among other things, rising levels of unemployment, higher levels of bank failures, depressed real estate values, implementation of Government bailout programs such as TARP and an enormous stimulus package as well as foreign sovereign debt crises. Refer to the table below which illustrates the movement in many money market rates during this time frame.

| Money Rate | 8/30/2009 | 8/30/2011 | Change |
|---|---|---|---|
| 1 Yr T-Bill | 0.42% | 0.11% | -73.81% |
| 5 Yr Treasury | 2.39% | 0.98% | -59.00% |
| 10 Yr Treasury | 3.40% | 2.23% | -34.41% |
| 30 Yr Treasury | 4.18% | 3.60% | -13.88% |
| 30 Yr Fixed Mortg | 5.08% | 4.22% | -16.93% |
| Bank Prime | 3.25% | 3.25% | 0.00% |

BOSTON FINANCE GROUP, LLC

It is clear that the cost of funding has changed significantly during the past 2 years in the domestic financial markets and this has not been reflected in the pricing of the BFG facility due to the convention of using the Prime rate as the base rate which has resulted in an unintended detriment to BFG and an unintended windfall to the Center.

Proposal

In order to more appropriately reflect the market movements of interest rates, Boston Finance Group respectfully requests that the Center agrees to a modification to the terms of this facility with respect to pricing be adopted as of September 1, 2011.

It has been determined that selecting a base rate other than Prime for pricing of the BFG Revolving Credit Facility with the Center is more reasonable and more accurately reflects changing market conditions. Accordingly, the Five (5) Year Treasury Rate, i.e., the Daily Treasury Yield Five (5) Year Curve Rate as published by the U.S. Department of the Treasury which is based on the closing market bid yields of actively traded Treasury securities in the over-the-counter market, has been selected. The following pro forma analysis of using this as the base rate vs. Prime is offered:

|  | As of August 30, 2009 | |
| --- | --- | --- |
|  | Prime | 5 Yr Treasury |
| Base Rate | 3.25% | 2.39% |
| Applicable Margin | 2.50% | 3.35% |
| Cost of Funds | 5.75% | 5.74% |

Now that the global financial markets and money rates have been impacted by significant factors over the past 2 years, the cost of fund under the BFG Revolving Credit Facility should more appropriately be priced as follows, which reflects the movement in the money market rates while maintaining the same applicable margin as was established (or would have been established on a pro forma basis):

|  | As of 8/25/2011 |
| --- | --- |
| Base Rate | 0.98% |
| Applicable Margin | 3.35% |
| Cost of Funds | 4.33% |

4912 Creekside Drive • Clearwater, Florida 33760 • ph: (727) 497-1661 • fax: (727) 497-1666

It is further proposed that this pricing be adjusted monthly to take into account the inherent volatility of the fixed income markets. While daily adjustments may not be necessary, clearly adjustments more frequently than every 2 years are in order to reflect changing market conditions.

If you are in agreement with the changes outlined herein, we can move forward to make conforming changes to the related loan documents at your convenience. Thank you for your consideration of this matter.

Respectfully submitted,

John Fernando
President
Boston Finance Group, LLC

Source of data: Ycharts.com

# Exhibit L

# AMENDED AND RESTATED
# PROMISSORY NOTE

**$50,000,000.00**

**Dated as of September 1, 2011**
**Clearwater, Florida**

**1. PROMISE TO PAY.** BOSTON FINANCE GROUP, LLC, a Florida limited liability company, whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ("Debtor"), for value received, hereby promises to pay to THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ( the "Center"), or order, on or before the Maturity Date (as defined below), the principal sum of FIFTY MILLION AND NO/100 DOLLARS ($50,000,000.00), or such amount thereof as may be outstanding from time to time, in accordance with that certain Amended and Restated Revolving Line of Credit Agreement dated as of March 15, 2011 between Debtor and the Center, as such agreement may be amended from time to time (the "Loan Agreement"), together with interest as hereinafter provided.

**2. RENEWAL NOTE.** This Note evidences but does not extinguish or satisfy, and is not a novation of, a preexisting indebtedness of Debtor to the Center and amends and restates that certain Amended and Restated Promissory Note executed by Debtor to the Center in the maximum principal amount of FIFTY MILLION AND NO/100 DOLLARS ($50,000,000.00) dated as of March 15, 2011.

**3. DEFINITIONS.** Initially capitalized terms which are not otherwise defined in this Note shall have the meanings set forth in the Loan Agreement. The following terms shall have the following meanings for all purposes of this Note:

**a. APPLICABLE MARGIN.** "Applicable Margin" means an annual percentage rate equal to THREE AND 35/100 PERCENT (3.35%).

**b. INTEREST RATE.** "Interest Rate" means, with respect to any Advance, the Treasury Rate plus the Applicable Margin.

**c. INTEREST PERIOD.** "Interest Period" means (i) initially, the period beginning on the date of this Note and ending on the last day of the calendar month in which such date occurs, and (ii) thereafter, the period beginning on the first day of the calendar month and ending on the last day of such calendar month.

**d. MATURITY DATE.** "Maturity Date" means September 1, 2014.

**e. TREASURY RATE.** "Treasury Rate" means, for each Interest Period, an annual percentage rate equal to the average during the Interest Period of the Daily Treasury Yield Five (5) Year Curve Rates as published by the U.S. Department of the Treasury.

**4. INTEREST AND PRINCIPAL PAYMENTS.** Debtor shall pay the Center interest on the outstanding principal amount of each Advance at the Interest Rate, in arrears for each Interest Period on or before the fifteenth (15th) day after the end of each Interest Period. The Center shall notify Debtor in writing on or before the fifth (5th) day after the end of each Interest Period during the term of this Note of the Center's determination of the interest payable for such Interest Period; provided however, if no such notification is made to Debtor, then the interest payable shall be at the same rate as the immediately preceding Interest Period. All outstanding principal and unpaid accrued interest shall be paid on the Maturity Date.

**5. APPLICATION OF PAYMENTS.** Each payment hereunder shall be applied first to any past due payments under this Note (including payment of all Costs as herein defined), then to accrued interest, and the balance, if any, shall be applied to the unpaid principal balance of this Note; provided, however, each payment hereunder while an Event of Default under the Loan Agreement has occurred and is continuing shall be applied as the Center in its sole discretion may determine.

**6. PAYMENT ARRANGEMENTS.** Upon execution of this Note, Debtor shall establish arrangements whereby all payments hereunder are transferred by wire or other means directly from Debtor's bank account to such account as the Center may from time to time designate.

**7. PREPAYMENT.** Debtor may prepay this Note as provided in the Loan Agreement.

**8. DEFAULT RATE.** All past-due principal and/or interest shall bear interest at the lesser of the highest rate for which the Debtor may legally contract or the rate of EIGHTEEN PERCENT (18%) per annum (the "Default Rate"), and such Default Rate shall continue to apply following a judgment in favor of the Center under this Note.

**9. NO RIGHT OF DEDUCTION OR SETOFF.** All payments of principal and interest due hereunder shall be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by Debtor, and (ii) without any other right of abatement, reduction, setoff, defense, counterclaim, interruption, deferment or recoupment for any reason whatsoever. Debtor will pay the amounts necessary such that the gross amount of the principal and interest received by the Center is not less than that required by this Note.

**10. WAIVER.** No delay or omission on the part of the Center in exercising any remedy, right or option under this Note shall operate as a waiver of such remedy, right or option. In any event, a waiver on any one occasion shall not be construed as a waiver or bar to any such remedy, right or option on a future occasion.

**11. WAIVER BY DEBTOR.** Debtor hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and except as otherwise provided in the Loan Agreement, all other notices or demands in connection with delivery, acceptance, performance, default or endorsement of this Note.

**12. NOTICES.** All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Note shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day, following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

| | |
|---|---|
| If to the Center: | THE CENTER FOR SPECIAL NEEDS<br>TRUST ADMINISTRATION, INC.<br>4912 Creekside Drive<br>Clearwater, Florida 33760 |
| If to Debtor: | BOSTON FINANCE GROUP, LLC<br>4912 Creekside Drive<br>Clearwater, Florida 33760 |

or to such other address or such other person as either party may from time to time hereafter specify to the other party in a notice delivered in the manner provided above.

**13. COLLECTION COSTS.** Should any indebtedness represented by this Note be collected at law or in equity, or in bankruptcy or other proceedings, or should this Note be placed in the hands of attorneys for collection after default, Debtor shall pay, in addition to the principal and interest due and payable hereon, all costs of collecting or attempting to collect this Note (the "Costs"), including reasonable attorneys' fees and expenses of the Center (including those fees and expenses incurred in connection with any appeal and those of the Center's in-house counsel) regardless of whether a judicial action is commenced by the Center.

**14. AMENDMENT.** This Note may not be amended or modified except by a written agreement duly executed by Debtor and the Center. In case any one or more of the provisions contained in this Note shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such provision had never been contained herein or therein.

**15. MAXIMUM INTEREST.** Notwithstanding anything to the contrary contained in this Note or the Loan Agreement, the obligations of Debtor to the Center under this Note and the Loan Agreement are subject to the limitation that payments of interest, late charges and Costs to the Center shall not be required to the extent that receipt of any such payment by the Center would be contrary to provisions of applicable law limiting the maximum rate of interest that may be charged or collected by the Center. The portion of any such payment received by the Center that is in excess of the maximum interest permitted by such provisions of law shall be credited to the

principal balance of this Note or, if such excess portion exceeds the outstanding principal balance of this Note, then such excess portion shall be refunded to Debtor. All interest paid or agreed to be paid to the Center shall, to the extent permitted by applicable law, be amortized, prorated, allocated and/or spread throughout the full term of this Note (including, without limitation, the period of any renewal or extension thereof) so that interest for such full term shall not exceed the maximum amount permitted by applicable law.

**16. TRANSACTION CHARACTERIZATION.**  It is the intent of the parties hereto that the business relationship created by this Note and the Loan Agreement is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in this Note and the Loan Agreement. None of the agreements contained in this Note or the Loan Agreement is intended, nor shall the same be deemed or construed, to create a partnership between the Center and Debtor, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

**17. CONSTRUCTION GENERALLY.**  This Note shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

**18. CAPTIONS.**  Captions are used throughout this Note for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

**19. GOVERNING LAW.**  Debtor acknowledges that this Note was substantially negotiated in the State of Florida, the Note was executed and delivered in the State of Florida, all payments under this Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Note, the parties hereto expressly submit to the jurisdiction of all federal and state courts located in the State of Florida. Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of Debtor and the Center that all provisions of this Note shall be governed by and construed under the internal laws of the State of Florida without regard to the law of any other jurisdiction. Nothing contained in this paragraph shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in any state in which the Center deems such proceeding necessary or advisable to exercise remedies available under this Note or the Loan Agreement.

**20. BINDING EFFECT.**  This obligation shall bind Debtor and its successors and assigns, and the benefits hereof shall inure to the Center and its successors and assigns. The Center may assign its rights under this Note as set forth in the Loan Agreement.

IN WITNESS WHEREOF, Debtor has executed and delivered this Note effective as of the date first set forth above.

**BOSTON FINANCE GROUP, LLC**

By _____

Its _Managing Member_

**STATE OF FLORIDA**
**COUNTY OF** _Pinellas_

The foregoing instrument was acknowledged before me this 1st day of September 2011 by _Leo Govoni_ who is:

[X] Personally known to me, or, who
[ ] Produced _____ as personal identification.

NOTARY PUBLIC-STATE OF FLORIDA
Derek Guida
Commission # DD795449
Expires:   SEP. 13, 2012
BONDED THRU ATLANTIC BONDING CO, INC.

_____
Notary Public – State of Florida

THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC. hereby consents and agrees to this amendment and restatement of that certain Amended and Restated Promissory Note executed by BOSTON FINANCE GROUP, LLC to it in the maximum principal amount of FIFTY MILLION AND NO/100 DOLLARS ($50,000,000.00) dated as of March 15, 2011.

**THE CENTER FOR SPECIAL NEEDS**
**TRUST ADMINISTRATION, INC.**

By _____

Its _VP I Secretary_

**STATE OF FLORIDA**
**COUNTY OF** _Pinellas_

The foregoing instrument was acknowledged before me this 1st day of September 2011 by _Patricia Julian_ who is:

[X] Personally known to me, or, who
[ ] Produced _____ as personal identification.

NOTARY PUBLIC-STATE OF FLORIDA
Derek Guida
Commission # DD795449
Expires:   SEP. 13, 2012
BONDED THRU ATLANTIC BONDING CO, INC.

_____
Notary Public – State of Florida

Amended and Restated Promissory Note
September 1, 2011
Page 5 of 5

# Exhibit M

## AMENDED AND RESTATED
## REVOLVING LINE OF
## CREDIT AGREEMENT

THIS AMENDED AND RESTATED REVOLVING LINE OF CREDIT AGREEMENT (this "Agreement") is made as of January 1, 2012 (the "Effective Date"), by and between THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation, as Trustee (the "Center"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760, and BOSTON FINANCE GROUP, LLC, a Florida limited liability company ("Debtor"), whose address is 4912 Creekside Drive, Clearwater, Florida 33760.

The Center and Debtor are parties to an Amended and Restated Revolving Line of Credit Agreement dated March 15, 2011 and Debtor delivered to the Center an Amended and Restated Promissory Note dated as of March 15, 2011 and an Amended and Restated Promissory Note dated as of September 1, 2011 (such amended and restated revolving line of credit agreement and amended and restated promissory notes are collectively referred to herein as the "Prior Loan Documents"), pursuant to which the Center has made certain loans and financial accommodations available to Debtor. The Center and Debtor now desire to consolidate, amend and restate the Prior Loan Documents in all respects as hereinafter set forth.

In consideration of the mutual covenants and provisions of this Agreement, the parties agree as follows:

1. DEFINITIONS. The following terms shall have the following meanings for all purposes of this Agreement:

"Acceleration Event" means a breach or default, after the passage of all applicable notice and cure or grace periods, under any agreement, instrument or promissory note other than the Loan Documents between, among or by (i) Debtor or any Affiliate of Debtor, and, or for the benefit of, (ii) the Center and/or any Affiliate of the Center.

"Action" has the meaning set forth in Section 7.

"Advance" means any advance of the proceeds of the Loan made by the Center pursuant to the terms of Section 2.

"Affiliate" means any Person which directly or indirectly controls, is under common control with, or is controlled by any other Person. For purposes of this definition, "controls", "under common control with" and "controlled by" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or otherwise.

"Business Day" means any day on which banks are open for general banking business in the State of Florida other than a Saturday, Sunday, a legal holiday or any other day on which banks in the State of Florida are required or authorized by law to close.

"Code" means the United States Bankruptcy Code, 11 U.S.C. Sec. 101 et seq., as amended.

"Debt" means as to such Person at any time: (a) all obligations of such Person for borrowed money; (b) all obligations of such Person evidenced by bonds, notes, debentures or other similar instruments; (c) all obligations of such Person to pay the deferred purchase price of property or services; (d) all capital lease obligations of such Person; (e) all contingent obligations or other obligations of others guaranteed by such Person; (f) all obligations secured by a lien existing on property owned by such Person, regardless of whether the obligations secured thereby have been assumed by such Person or are nonrecourse to the credit of such Person; and (g) all reimbursement obligations of such Person (whether contingent or otherwise) in respect of letters of credit, bankers' acceptances, surety or other bonds and similar instruments.

"Effective Date" has the meaning set forth in the introductory paragraph of this Agreement.

"Event of Default" has the meaning set forth in Section 7.

"Indemnified Parties" has the meaning set forth in Section 9.

"Loan" means the revolving line of credit in the Maximum Loan Amount as described in Section 2.

"Loan Documents" means, collectively, this Agreement, the Note, and all other documents, instruments and agreements executed in connection therewith or contemplated thereby.

"Losses" has the meaning set forth in Section 9.

"Material Adverse Effect" means a material adverse effect on (i) the financial condition of Debtor or (ii) the ability of Debtor to perform its obligations under the Loan Documents.

"Maturity Date" has the meaning set forth in the Note.

"Maximum Loan Amount" means ONE HUNDRED MILLION AND NO/100 DOLLARS ($100,000,000.00).

"Note" means the amended and restated promissory note dated as of the Effective Date executed by Debtor in favor of the Center, as such Note may be amended and/or amended and restated and/or substituted from time to time.

"Person" means any individual, corporation, partnership, limited liability company, trust, unincorporated organization, governmental authority or any other form of entity.

2. REVOLVING LINE OF CREDIT.

A. On the terms and subject to the satisfaction by Debtor of the conditions set forth in this Agreement, the Center agrees to make the Loan to Debtor, which Loan will be in the form of Advances made from time to time as provided in this Agreement. The outstanding aggregate

principal amount of the Loan shall not exceed the Maximum Loan Amount at any time. So long as no event has occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event, Debtor may borrow, prepay and reborrow, from the Effective Date until the Maturity Date, an amount up to the Maximum Loan Amount.

       B. Simultaneously with the execution and delivery of this Agreement, Debtor shall execute and deliver to the Center the Note. The obligation of Debtor to pay the outstanding aggregate principal amount of all Advances plus accrued interest thereon shall be evidenced by the Note. Debtor irrevocably authorizes the Center to make or cause to be made, at or about the time of any Advance or at the time of the Center's receipt of any payment of the principal amount of the Note, an appropriate notation in the Center's records reflecting the amount of such Advance or payment, as applicable. The outstanding aggregate principal amount of the Note plus accrued interest thereon set forth in the Center's records maintained with respect to the Note (which may include computer records) shall, absent manifest error, be prima facie evidence of the outstanding aggregate principal amount plus accrued interest thereon due and owing to the Center, but the failure to record, or any error in so recording, any such amount on the Center's records shall not limit or otherwise affect the obligations of Debtor under the Note to make payments when due. Notwithstanding the foregoing, Debtor agrees to execute such amendments to the Note, amendments and restatements of the Note and/or substitute promissory notes for the Note as the Center may reasonably request to evidence Debtor's obligations to the Center under the Loan Documents.

       C. Debtor shall notify the Center at least five (5) Business Days before the Business Day on which Debtor desires to receive an Advance.  The Center's obligation to fund each Advance shall be subject to the satisfaction of the following conditions precedent as of the date of the requested Advance:

       (1) no event shall have occurred which is, or with the passage of time or the giving of notice or both under the Loan Documents would constitute, an Event of Default or an Acceleration Event;

       (2) Debtor shall be in compliance with each of the covenants set forth in Section 5;

       (3) the outstanding principal balance of the Loan, together with the amount of the requested Advance, must not exceed the Maximum Loan Amount; and

       (4) there shall have been no material adverse change in Debtor's business, operations, assets or financial condition since the Effective Date, as determined by the Center in its reasonable discretion.

Upon Debtor's satisfaction of the foregoing conditions, the Center will disburse the requested Advance in immediately available funds to such account as Debtor shall have specified in the notice or as otherwise directed by Debtor in the notice.

D. The Loan shall bear interest at the rate(s) of interest set forth in the Note and such interest shall be payable as provided in the Note. Debtor shall have the right to prepay (without premium or penalty) the Note in whole or in part at any time provided that any such prepayment shall only be made on a regularly scheduled payment date upon not less than ten (10) days prior written notice from Debtor to the Center. Debtor shall pay on the Maturity Date, and there shall become absolutely due and payable on the Maturity Date, the outstanding principal amount of the Loan and all accrued but unpaid interest thereon.

3. REPRESENTATIONS AND WARRANTIES OF THE CENTER. The representations and warranties of the Center contained in this section are being made by the Center as of the Effective Date to induce Debtor to enter into this Agreement and consummate the transactions contemplated herein, and Debtor has relied, and will continue to rely, upon such representations and warranties from and after the execution of this Agreement. The Center represents and warrants to Debtor as follows:

A. Organization of the Center. The Center has been duly formed, is validly existing and has taken all necessary action to authorize the execution, delivery and performance by the Center of this Agreement.

B. Authority of the Center. The person who has executed this Agreement on behalf of the Center is duly authorized so to do.

C. Enforceability. Upon execution by the Center, this Agreement shall constitute the legal, valid and binding obligation of the Center, enforceable against the Center in accordance with its terms.

All representations and warranties of the Center made in this Agreement shall survive the execution of this Agreement.

4. REPRESENTATIONS AND WARRANTIES OF DEBTOR. The representations and warranties of Debtor contained in this section are being made by Debtor as of the Effective Date and the date of each Advance to induce the Center to enter into this Agreement and consummate the transactions contemplated herein, and the Center has relied, and will continue to rely, upon such representations and warranties from and after the Effective Date and the date of each Advance. Debtor represents and warrants to the Center as follows:

A. Organization and Authority of Debtor. Debtor is duly organized or formed, validly existing and in good standing under the laws of the State of Florida and qualified as a foreign entity to do business in any jurisdiction where such qualification is required. All necessary company action has been taken to authorize the execution, delivery and performance of the Loan Documents. The person(s) who have executed the Loan Documents on behalf of Debtor are duly authorized so to do.

B. Enforceability of Documents. Upon execution by Debtor, the Loan Documents shall constitute the legal, valid and binding obligations of Debtor, enforceable against Debtor in accordance with their respective terms.

C.  Litigation. There are no suits, actions, proceedings or investigations pending or, to the actual knowledge of Debtor, threatened against or involving Debtor or any of Debtor's assets before any court, arbitrator, or administrative or governmental body which might reasonably result in a Material Adverse Effect.

D.  Absence of Breaches or Defaults. The Debtor is not in default beyond any applicable grace period under any document, instrument or agreement to which Debtor is a party or by which the Debtor or any of the property of Debtor is subject or bound which would have a Material Adverse Effect or would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not result in a Material Adverse Effect or result in any breach or default under any other document, instrument or agreement to which Debtor is a party or by which Debtor or any of the property of Debtor is subject or bound which would materially interfere with or prevent Debtor's performance under the Loan Documents. The authorization, execution, delivery and performance of the Loan Documents will not violate any applicable law, statute, regulation, rule, ordinance, code, rule or order.

E.  Licenses, Permits, Consents and Approvals. Debtor has all required licenses, permits, consents and approvals, both governmental and private, to use and operate and conduct its business in the intended manner.

F.  Insolvency. Debtor is not insolvent within the meaning of the Code.

G.  Taxes. Debtor has paid, in the ordinary course of business, all taxes, assessments, levies and other governmental charges which have been levied or imposed upon Debtor and/or Debtor's properties and were due and payable.

H.  No Actions. No action has been brought or is threatened which would in any way prohibit or restrict the execution and delivery of any of the Loan Documents by Debtor or the performance in all respects of Debtor thereunder.

All representations and warranties of Debtor made in this Agreement shall survive the execution of this Agreement and each Advance.

5.  COVENANTS. Debtor covenants to the Center from and after the Effective Date as follows:

A.  Books, Records and Inspections. Debtor shall, at all reasonable times upon prior written notice from the Center and during normal business hours, (i) provide the Center and the Center's officers, employees, agents, advisors, attorneys and accountants with access to Debtor's personal and real properties and books and records, and (ii) allow such persons to make such inquires of Debtor's officers and employees and to make copies and perform such verifications as the Center considers reasonably necessary; provided, however, all such inspections, copies and verifications shall be at the Center's sole cost and expense and the Center shall reasonably attempt to minimize, during any such activity, interference with the operation of Debtor's

business and the Center shall keep any information obtained confidential; provided, however, the Center shall not be required to keep confidential (1) any information which had previously been made public, (2) information that the Center is required to disclose by court order, subpoena or under federal or state law, or (3) information received by the Center from a third party.

B.  Reporting Obligations. Debtor will provide the Center with each of the following:

(1) Financial Statements. Within forty-five (45) days after the end of each fiscal quarter and within one hundred twenty (120) days after the end of each fiscal year of Debtor, Debtor shall deliver to the Center complete financial statements of Debtor including a balance sheet, profit and loss statement, cash flow statement and all other related schedules for the fiscal period then ended. All such financial statements shall be prepared in accordance with generally accepted accounting principles, consistently applied from period to period, and shall be certified to be accurate and complete by Debtor (or the Treasurer or other appropriate officer of Debtor). Debtor understands that the Center is relying upon such financial statements and Debtor represents that such reliance is reasonable. The financial statements delivered to the Center need not be audited, but Debtor shall deliver to the Center copies of audited financial statements of Debtor which may be prepared if and when they are available.

(2) Event of Default or Acceleration Event. Within five (5) days after Debtor becomes aware of an Event of Default or an Acceleration Event, Debtor shall deliver to an officer of the Center written notification specifying the nature and period of existence thereof and what action Debtor is taking or proposes to take with respect thereto.

(3) Litigation. Within ten (10) days after Debtor becomes aware of any action, suit or proceeding pending or threatened in writing against or involving Debtor and/or Debtor's properties, Debtor shall notify the Center of such action, suit or proceeding and in such notice shall specify the nature thereof, whether the alleged liability therein is covered by insurance then in effect and, if so covered, the monetary coverage thereof, and what action Debtor is taking or proposes to take with respect thereto.

(4) Auditors' Reports. If and when received, Debtor shall deliver to the Center a copy of each report submitted to Debtor by its independent accountants in connection with any annual, interim or special audit made by it of the books of Debtor.

(5) Other Information. Debtor shall deliver to the Center promptly after the receipt of written request therefor information concerning Debtor requested by the Center that is required to satisfy all requirements of federal and state law applicable to the Center and all other regulatory laws applicable to the Center or to which the Center is subject or bound.

C. Payment of Taxes, Assessments and Claims. Unless Debtor shall contest the amount or validity thereof in the manner described below, Debtor shall pay all taxes, assessments and governmental charges or levies imposed upon it or upon its income or profits, or upon any properties belonging to it, prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien upon any of its properties. Debtor may, at its own expense, contest or cause to be contested such taxes, assessments, governmental charges or levies or other claims (i) in good faith, (ii) by proper proceedings, and (iii) against which adequate reserves in accordance with generally accepted accounting principles are being maintained.

D. Organization of Debtor. Debtor will continue to be a limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction and qualified to do business in any jurisdiction where such qualification is required.

E. Licenses, Permits, Consents and Approvals. Debtor shall maintain in full force and effect all required licenses, permits, consents and approvals, both governmental and private, to use and operate its assets and conduct its business in the intended manner.

F. Use of Proceeds. Debtor shall use the proceeds of the Loan for funding loans and other credit facilities and financial accommodations (as such term is used in the Code) extended to third party borrowers.

G. Debt. Debtor shall not incur, create, assume or permit to exist any Debt, except (a) Debt to the Center or Affiliates of the Center and (b) Debt incurred pursuant to trade accounts arising in the ordinary course of business that are not past due by more than thirty (30) days.

H. Fundamental Changes. Debtor shall not consolidate with or merge into any Person or permit any Person to merge into it.

I. Disposition of Assets. Without the prior written consent of the Center, Debtor shall not, directly or indirectly, sell, assign, lease, transfer or otherwise dispose of all or substantially all of its assets (other than in the ordinary course of business for full and fair consideration).

J. Transactions With Affiliates. Without the prior written consent of the Center, Debtor will not enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service, with any Affiliate of Debtor, except transactions for fair value in accordance with reasonable commercial standards.

K. Maintenance of Assets. Debtor shall maintain, keep and preserve all of its tangible and intangible property and other assets that are necessary and useful for proper conduct of its business.

6. TRANSACTION CHARACTERIZATION. This Agreement is a contract to extend a financial accommodation (as such term is used in the Code) for the benefit of Debtor. It is the intent of the parties hereto that the business relationship created by this Agreement and the other

Loan Documents is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in the Loan Documents. None of the agreements contained in the Loan Documents is intended, nor shall the same be deemed or construed, to create a partnership between Debtor and the Center, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

### 7. DEFAULT AND REMEDIES.

A. Each of the following shall be deemed an event of default by Debtor, after notice, to the extent required hereunder, and after the expiration of any applicable grace or cure period without the cure thereof (each, an "Event of Default"):

(1) If any representation or warranty of Debtor set forth in any of the Loan Documents is false in any material respect when made or becomes false in any material respect, or if Debtor renders any materially false statement or account;

(2) If any principal, interest or other monetary sum due under the Note or any other Loan Document is not paid within five (5) days from the date when due and the Center shall have given notice of such failure to Debtor and such failure shall not have been cured by Debtor within five (5) days from the delivery of such notice;

(3) If Debtor fails to observe or perform any of the other covenants (except as otherwise provided below), conditions, or obligations of this Agreement or there is a breach or default under any other Loan Document beyond any applicable notice or cure period; provided, however, if any such event does not involve the payment of any monetary sum, is not the result of a willful or intentional act or omission of Debtor, does not place any rights or property of the Center in immediate jeopardy, and is within the reasonable power of Debtor to promptly cure after receipt of notice thereof, all as determined by the Center in its reasonable discretion, then such event shall not constitute an Event of Default hereunder, unless otherwise expressly provided herein, unless and until the Center shall have given Debtor notice thereof and a period of thirty (30) days shall have elapsed, during which period Debtor may correct or cure such event, upon failure of which an Event of Default shall be deemed to have occurred hereunder (except as otherwise provided in the following sentence) without further notice or demand of any kind being required. If such nonmonetary event cannot reasonably be cured within such thirty (30) day period, as determined by the Center in its reasonable discretion, and Debtor is diligently pursuing a cure of such event, then an Event of Default shall not be deemed to have occurred hereunder upon the expiration of such thirty (30) day period and Debtor shall have a reasonable period to cure such event beyond such thirty (30) day period, which shall not exceed ninety (90) days after receiving notice of the event from the Center. If Debtor shall fail to correct or cure such event within such ninety (90) day period, an Event of Default shall

be deemed to have occurred hereunder without further notice or demand of any kind being required; or

(4) If Debtor becomes insolvent within the meaning of the Code, files or notifies the Center that it intends to file a petition under the Code, initiates a proceeding under any similar law or statute relating to bankruptcy, insolvency, reorganization, winding up or adjustment of debts (collectively, an "Action"), becomes the subject of either an involuntary Action or petition under the Code without such involuntary Action or petition being dismissed within thirty (30) days of filing or, if Debtor is diligently proceeding to dismiss such petition, such longer period of time as may be required, but in no event shall such longer period of time be greater than ninety (90) days, or is not generally paying its debts as the same become due.

B. Upon and during the continuance of an Event of Default, subject to the limitations, notices and cure periods set forth in Section 7A, or an Acceleration Event, the Center shall have no obligation to fund any Advance to Debtor and the Center may declare all obligations of Debtor under the Loan Documents to be due and payable, and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind except as expressly provided herein. Thereafter, the Center may exercise, at its option, concurrently, successively or in any combination:

(1) all remedies available at law or in equity, including without limitation any one or more of the remedies available under any of the Loan Documents; and

(2) all rights and remedies of a party in, to and against Debtor's assets granted by the Uniform Commercial Code in the State of Florida and otherwise available at law or in equity.

C. Should the Center exercise the rights and remedies specified in Section 7B, any proceeds received thereby shall be first applied to pay the costs and expenses, including reasonable attorneys' fees, incurred by the Center as a result of the Event of Default. The remainder of any proceeds, net of the Center's costs and expenses, shall be applied to the satisfaction of the remaining obligations of Debtor to the Center under the Loan Documents and any excess shall be paid over to Debtor.

Neither the acceptance of this Agreement nor its enforcement shall prejudice or in any manner affect the Center's right to realize upon or enforce any other security now or hereafter held by the Center, with it being agreed that the Center shall be entitled to enforce this Agreement and any other security now or hereafter held by the Center in such order and manner as it may in its absolute discretion determine. No remedy herein conferred upon or reserved to the Center is intended to be exclusive of any other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Documents to the Center, or to which the Center may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Center.

8. ASSIGNMENTS BY THE CENTER. The Center may assign in whole or in part its rights under this Agreement. Upon any unconditional assignment of the Center's entire right and interest hereunder, the Center shall automatically be relieved, from and after the date of such assignment, of liability for the performance of any obligation of the Center contained herein arising after the date of the assignment provided that any assignee shall be bound by all of the Center's obligations hereunder accruing from and after the date of such assignment.

9. INDEMNITY. Debtor agrees to indemnify, hold harmless and defend the Center and each of its directors, officers, shareholders, employees, beneficiaries, successors, assigns, agents, experts, licensees, affiliates, lenders, mortgagees and trustees, as applicable (collectively, the "Indemnified Parties"), from and against any and all losses, costs, claims, liabilities, damages and expenses, including, without limitation, reasonable attorneys' fees (collectively "Losses"), arising as the result of a breach of any of the representations, warranties, covenants, agreements or obligations of Debtor set forth in this Agreement, but excluding Losses suffered by an Indemnified Party directly arising out of such Indemnified Party's gross negligence or willful misconduct.

10. MISCELLANEOUS PROVISIONS.

A. Notices. All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Agreement shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

| | |
|---|---|
| If to the Center: | THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC. 4912 Creekside Drive Clearwater, Florida 33760 |
| If to Debtor: | BOSTON FINANCE GROUP, LLC 4912 Creekside Drive Clearwater, Florida 33760 |

B. Waiver and Amendment. No provisions of this Agreement shall be deemed waived or amended except by a written instrument unambiguously setting forth the matter waived or amended and signed by the party against which enforcement of such waiver or

amendment is sought. Waiver of any matter shall not be deemed a waiver of the same or any other matter on any future occasion.

C. Captions. Captions are used throughout this Agreement for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

D. The Center's Liability. Notwithstanding anything to the contrary provided in this Agreement, it is specifically understood and agreed, with such agreement being a primary consideration for the execution of this Agreement by the Center, that (i) there shall be absolutely no personal liability on the part of any shareholder, director, officer, employee, beneficiary or agent of the Center, with respect to any of the terms, covenants and conditions of this Agreement or the other Loan Documents, (ii) Debtor waives all claims, demands and causes of action against the Center's officers, directors, employees, beneficiaries and agents in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center and (iii) Debtor shall look solely to the assets of the Center for the satisfaction of each and every remedy of Debtor in the event of any breach by the Center of any of the terms, covenants and conditions of this Agreement or the other Loan Documents to be performed by the Center, with such exculpation of liability to be absolute and without any exception whatsoever.

E. Severability. The provisions of this Agreement shall be deemed severable. If any part of this Agreement shall be held unenforceable, the remainder shall remain in full force and effect, and such unenforceable provision shall be reformed by such court so as to give maximum legal effect to the intention of the parties as expressed therein.

F. Construction Generally. This is an agreement between parties who are experienced in sophisticated and complex matters similar to the transaction contemplated by this Agreement and is entered into by both parties in reliance upon the economic and legal bargains contained herein and shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

G. Other Documents. Each of the parties agrees to sign such other and further documents as may be reasonably necessary to carry out the intentions expressed in this Agreement.

H. Attorneys' Fees. In the event of any judicial or other adversarial proceeding between the parties concerning this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs in addition to any other relief to which it may be entitled. References in this Agreement to the attorneys' fees and/or costs of a party shall mean both the reasonable fees and costs of independent outside counsel retained by such party with respect to this transaction and the reasonable fees and costs of the party's in-house counsel incurred in connection with this transaction.

I.  Entire Agreement. This Agreement and the Note, together with any other certificates, instruments or agreements to be delivered in connection therewith, constitute the entire agreement between the parties with respect to the subject matter hereof, and there are no other representations, warranties or agreements, written or oral, between Debtor and the Center with respect to the subject matter of this Agreement.

J.  Forum Selection; Jurisdiction; Venue; Choice of Law. Debtor acknowledges that this Agreement was substantially negotiated in the State of Florida, the Agreement was signed and delivered by the Center and Debtor in the State of Florida, all payments under the Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Agreement, the parties hereto hereby expressly submit to the jurisdiction of all federal and state courts located in the State of Florida and Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of the parties hereto that all provisions of this Agreement shall be governed by and construed under the internal laws of the State of Florida without regard to the law of any other jurisdiction. Nothing in this section shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in a state other than the State of Florida to the extent the Center deems such proceeding necessary or advisable to exercise remedies available under this Agreement or the other Loan Documents.

K.  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

L.  Binding Effect. This Agreement shall be binding upon and inure to the benefit of Debtor and the Center and their respective successors and permitted assigns, including, without limitation, any United States trustee, any debtor in possession or any trustee appointed from a private panel.

M.  Survival. All representations, warranties, agreements, obligations and indemnities of Debtor and the Center set forth in this Agreement shall survive the execution of this Agreement and each Advance.

**SIGNATURES APPEAR ON FOLLOWING PAGE**

IN WITNESS WHEREOF, Debtor and the Center have entered into this Agreement as of the date first above written.

**THE CENTER FOR SPECIAL NEEDS**
**TRUST ADMINISTRATION, INC.**

By _____

Its _____ President _____

**BOSTON FINANCE GROUP, LLC**

By _____

Its _____ Managing Member _____

# Exhibit N

# AMENDED AND RESTATED
# PROMISSORY NOTE

**$100,000,000.00**

**Dated as of January 1, 2012**
**Clearwater, Florida**

**1. PROMISE TO PAY.** BOSTON FINANCE GROUP, LLC, a Florida limited liability company, whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ("Debtor"), for value received, hereby promises to pay to THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a Florida not for profit corporation, as Trustee, whose address is 4912 Creekside Drive, Clearwater, Florida 33760 ( the "Center"), or order, on or before the Maturity Date (as defined below), the principal sum of ONE HUNDRED MILLION AND NO/100 DOLLARS ($100,000,000.00), or such amount thereof as may be outstanding from time to time, in accordance with that certain Amended and Restated Revolving Line of Credit Agreement dated as of the date of this Note between Debtor and the Center, as such agreement may be amended from time to time (the "Loan Agreement"), together with interest as hereinafter provided.

**2. RENEWAL NOTE.** This Note evidences but does not extinguish or satisfy, and is not a novation of, a preexisting indebtedness of Debtor to the Center and amends and restates that certain Amended and Restated Promissory Note delivered by Debtor to the Center in the maximum principal amount of FIFTY MILLION AND NO/100 DOLLARS ($50,000,000.00) dated as of September 1, 2011.

**3. DEFINITIONS.** Initially capitalized terms which are not otherwise defined in this Note shall have the meanings set forth in the Loan Agreement. The following terms shall have the following meanings for all purposes of this Note:

    **a. INTEREST RATE.** "Interest Rate" means, with respect to any Advance, a rate equal to TWO PERCENT (2%) per annum for all Interest Periods ending on or prior to December 31, 2012, and, for later Interest Periods, such rate or rates as Debtor and the Center may from time to time negotiate in good faith to establish an interest rate or rates for such Interest Periods consistent with prevailing market rates for loans or other debt obligations with terms similar to the Loan.

    **b. INTEREST PERIOD.** "Interest Period" means (i) initially, the period beginning on the date of this Note and ending on February 29, 2012, and (ii) thereafter, each three (3) month period beginning on the first day of such period and ending on the last day of such period beginning with the period beginning on March 1, 2012.

    **c. MATURITY DATE.** "Maturity Date" means January 1, 2017.

**4. INTEREST AND PRINCIPAL PAYMENTS.** Debtor shall pay the Center interest on the outstanding principal amount of each Advance at the Interest Rate, in arrears for each Interest

Period on or before the fifteenth (15th) day after the end of each Interest Period. The Center shall notify Debtor in writing on or before the fifth (5th) day after the end of each Interest Period during the term of this Note of the Center's determination of the interest payable for such Interest Period; provided however, if no such notification is made to Debtor, then the interest payable shall be at the same rate as the immediately preceding Interest Period. All outstanding principal and unpaid accrued interest shall be paid on the Maturity Date.

**5. APPLICATION OF PAYMENTS.** Each payment hereunder shall be applied first to any past due payments under this Note (including payment of all Costs as herein defined), then to accrued interest, and the balance, if any, shall be applied to the unpaid principal balance of this Note; provided, however, each payment hereunder while an Event of Default under the Loan Agreement has occurred and is continuing shall be applied as the Center in its sole discretion may determine.

**6. PAYMENT ARRANGEMENTS.** Upon execution of this Note, Debtor shall establish arrangements whereby all payments hereunder are transferred by wire or other means directly from Debtor's bank account to such account as the Center may from time to time designate.

**7. PREPAYMENT.** Debtor may prepay this Note as provided in the Loan Agreement.

**8. DEFAULT RATE.** All past-due principal and/or interest shall bear interest at the lesser of the highest rate for which Debtor may legally contract or the rate of EIGHTEEN PERCENT (18%) per annum (the "Default Rate"), and such Default Rate shall continue to apply following a judgment in favor of the Center under this Note.

**9. NO RIGHT OF DEDUCTION OR SETOFF.** All payments of principal and interest due hereunder shall be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by Debtor, and (ii) without any other right of abatement, reduction, setoff, defense, counterclaim, interruption, deferment or recoupment for any reason whatsoever. Debtor will pay the amounts necessary such that the gross amount of the principal and interest received by the Center is not less than that required by this Note.

**10. WAIVER.** No delay or omission on the part of the Center in exercising any remedy, right or option under this Note shall operate as a waiver of such remedy, right or option. In any event, a waiver on any one occasion shall not be construed as a waiver or bar to any such remedy, right or option on a future occasion.

**11. WAIVER BY DEBTOR.** Debtor hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and except as otherwise provided in the Loan Agreement, all other notices or demands in connection with delivery, acceptance, performance, default or endorsement of this Note.

**12. NOTICES.** All notices, consents, approvals or other instruments required or permitted to be given by either party pursuant to this Note shall be in writing and given by (i) hand delivery, (ii) facsimile, (iii) express overnight delivery service or (iv) certified or registered mail, return

receipt requested, and shall be deemed to have been delivered upon (a) receipt, if hand delivered, (b) transmission, if delivered by facsimile (and if a copy of such notice is also mailed by certified or registered mail, return receipt requested, and deposited with the U.S. Postal Service no later than the first business day after the notice was transmitted by facsimile), (c) the next business day, following the date of deposit with the delivery service, if delivered by express overnight delivery service, or (d) the third business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested. Notices shall be provided to the parties and addresses (or facsimile numbers, as applicable) specified below:

|  |  |
|---|---|
| If to the Center: | THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC. 4912 Creekside Drive Clearwater, Florida 33760 |
| If to Debtor: | BOSTON FINANCE GROUP, LLC 4912 Creekside Drive Clearwater, Florida 33760 |

or to such other address or such other person as either party may from time to time hereafter specify to the other party in a notice delivered in the manner provided above.

**13. COLLECTION COSTS.** Should any indebtedness represented by this Note be collected at law or in equity, or in bankruptcy or other proceedings, or should this Note be placed in the hands of attorneys for collection after default, Debtor shall pay, in addition to the principal and interest due and payable hereon, all costs of collecting or attempting to collect this Note (the "Costs"), including reasonable attorneys' fees and expenses of the Center (including those fees and expenses incurred in connection with any appeal and those of the Center's in-house counsel) regardless of whether a judicial action is commenced by the Center.

**14. AMENDMENT.** This Note may not be amended or modified except by a written agreement duly executed by Debtor and the Center. In case any one or more of the provisions contained in this Note shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such provision had never been contained herein or therein.

**15. MAXIMUM INTEREST.** Notwithstanding anything to the contrary contained in this Note or the Loan Agreement, the obligations of Debtor to the Center under this Note and the Loan Agreement are subject to the limitation that payments of interest, late charges and Costs to the Center shall not be required to the extent that receipt of any such payment by the Center would be contrary to provisions of applicable law limiting the maximum rate of interest that may be charged or collected by the Center. The portion of any such payment received by the Center that is in excess of the maximum interest permitted by such provisions of law shall be credited to the principal balance of this Note or, if such excess portion exceeds the outstanding principal balance of this Note, then such excess portion shall be refunded to Debtor. All interest paid or agreed to be paid to the Center shall, to the extent permitted by applicable law, be amortized,

prorated, allocated and/or spread throughout the full term of this Note (including, without limitation, the period of any renewal or extension thereof) so that interest for such full term shall not exceed the maximum amount permitted by applicable law.

**16. TRANSACTION CHARACTERIZATION.** It is the intent of the parties hereto that the business relationship created by this Note and the Loan Agreement is solely that of creditor and debtor and has been entered into by both parties in reliance upon the economic and legal bargains contained in this Note and the Loan Agreement. None of the agreements contained in this Note or the Loan Agreement is intended, nor shall the same be deemed or construed, to create a partnership between the Center and Debtor, to make them joint venturers, to make Debtor an agent, legal representative, partner, subsidiary or employee of the Center, nor to make the Center in any way responsible for the debts, obligations or losses of Debtor.

**17. CONSTRUCTION GENERALLY.** This Note shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

**18. CAPTIONS.** Captions are used throughout this Note for convenience of reference only and shall not be considered in any manner in the construction or interpretation hereof.

**19. GOVERNING LAW.** Debtor acknowledges that this Note was substantially negotiated in the State of Florida, the Note was executed and delivered in the State of Florida, all payments under this Note will be delivered in the State of Florida and there are substantial contacts between the parties and the transactions contemplated herein and the State of Florida. For purposes of any action or proceeding arising out of this Note, the parties hereto expressly submit to the jurisdiction of all federal and state courts located in the State of Florida. Debtor consents that it may be served with any process or paper by registered mail or by personal service within or without the State of Florida in accordance with applicable law. Furthermore, Debtor waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper. It is the intent of Debtor and the Center that all provisions of this Note shall be governed by and construed under the internal laws of the State of Florida without regard to the law of any other jurisdiction. Nothing contained in this paragraph shall limit or restrict the right of the Center to commence any proceeding in the federal or state courts located in any state in which the Center deems such proceeding necessary or advisable to exercise remedies available under this Note or the Loan Agreement.

**20. BINDING EFFECT.** This obligation shall bind Debtor and its successors and assigns, and the benefits hereof shall inure to the Center and its successors and assigns. The Center may assign its rights under this Note as set forth in the Loan Agreement.

<div align="center">

**SIGNATURE APPEARS ON FOLLOWING PAGE**

</div>

IN WITNESS WHEREOF, Debtor has executed and delivered this Note effective as of the date first set forth above.

**BOSTON FINANCE GROUP, LLC**

By_____

Its_____Managing Member_____

# Exhibit O

## PERSONAL GUARANTY

**THIS PERSONAL GUARANTY** (the "Guaranty") is made as of the 1st day of January, 2012 from **LEO J. GOVONI** whose address is 4912 Creekside Drive, Clearwater, Florida 33760 (the "Guarantor") to **THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC.** a Florida not for profit corporation, as Trustee, whose address is 4912 Creekside Drive, Clearwater, Florida 33760 (the "Lender").

### W I T N E S S E T H :

**WHEREAS, BOSTON FINANCE GROUP, LLC,** a Florida limited liability company, whose address is 4912 Creekside Drive, Clearwater, Florida 33760 (the "Borrower"), on the date hereof, is entering into that certain Amended and Restated Revolving Line of Credit Agreement (the "Loan Agreement") and Amended and Restated Promissory Note in the principal amount of $100,000,000.00 (as the same may be amended from time to time) (the "Note"), (the Loan Agreement and Note are collectively referred to herein as the "Loan Documents") with the Lender; and

**WHEREAS,** the Lender is unwilling to enter into the Loan Documents unless it receives this Guaranty from the Guarantor; and

**WHEREAS,** the Guarantor is willing to enter into this Guaranty in order to induce the Lender to enter into the Loan Documents;

**NOW, THEREFORE,** in order to induce the Lender to enter into the Loan Documents with the Borrower and in consideration of the premises and of other good and valuable consideration, the Guarantor intends to guarantee absolutely and unconditionally to the Lender, the punctual payment of collectively (i) the outstanding principal amount of the Note at any time and all interest and other amounts now or in the future payable under the Note and (ii) all other obligations of the Borrower to the Lender for the payment of money, however evidenced, regardless of the purpose for which incurred and whether for the payment of any principal, interest, fee or expense or otherwise, existing now or coming into existence in the future or absolute or contingent (the "Obligations") and such further payment and performance as may be set forth in Article 2 hereof.

### ARTICLE 1
### REPRESENTATIONS AND WARRANTIES OF GUARANTOR

The Guarantor hereby represents and warrants to the Lender that:

**Section 1.1 Capacities of Guarantor.** The Guarantor:

    A.  Has the capacity to enter into this Guaranty; and,

    B.  Has his principal business address at the address set forth above.

**Section 1.2 No Violation of Restrictions.** Neither the execution and delivery of this Guaranty, the consummation of the transactions contemplated hereby nor the fulfillment of or compliance with the provisions of this Guaranty will conflict with or result in a breach of any of the terms, covenants, conditions or provisions of any agreement, judgment or order to which the Guarantor is a party or by which the Guarantor is bound, or will constitute a default under any of the foregoing, or result in the creation or imposition of any lien of any nature whatsoever.

**Section 1.3 Compliance with Law.** The Guarantor is not in violation of any law, ordinance, governmental rule, regulation, order or judgment to which the Guarantor may be subject which is likely to materially affect the financial condition of the Guarantor.

**Section 1.4 Solvency of Guarantor and Borrower.** The Guarantor's assets exceed his liabilities and Guarantor has made an appropriate financial investigation of the Borrower and has determined that the Borrower is solvent at the time of execution of this Guaranty.

<div align="center">

**ARTICLE 2**
**COVENANTS AND AGREEMENTS**

</div>

**Section 2.1 Guaranty of Payment.** The Guarantor irrevocably, absolutely and unconditionally guarantees to the Lender:

    A.  The punctual payment of the Obligations.

    B.  The full and prompt performance of any and all obligations of the Borrower to the Lender pursuant to the Loan Documents.

**Section 2.2 Obligations Unconditional.** This Guaranty shall remain in full force and effect until the Obligations and all sums due thereunder are paid in full, irrespective of any interruptions in the business relationships of the Borrower and the Guarantor with the Lender. The Guarantor's obligation hereunder shall not be affected, modified or impaired by any state of facts or the happening from time to time of any event, including, without limitation, any of following, whether or not with notice to or the consent of the Guarantor:

    A.  The invalidity, irregularity, illegality or unenforceability of, or any defect in any Loan Document.

    B.  Any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce, amend or otherwise affect any Loan Document or any other obligation of the Borrower or any other obligor or to any other terms of payment.

    C.  The waiver, compromise, settlement, release or termination of any or all of the Obligations or agreements of the Borrower under any Loan Document or of the Guarantor under this Guaranty.

    D.  The failure to give notice to the Guarantor of the occurrence of an event of default

under any Loan Document.

E. The extension of the time for payment of any principal of or interest on the Obligations or of the time for performance of any other obligations, covenants or agreements under or arising out of any Loan Document or the extension or the renewal of any thereof.

F. The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in any Loan Document.

G. The performance of, or the omission to perform, any of the actions referred to in any Loan Document.

H. Any failure, omission or delay on the part of the Lender to enforce, assert or exercise any right, power or remedy conferred on the Lender in any Loan Document.

I. The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting the Guarantor or the Borrower or their respective assets, or any allegation or contest of the validity of any Loan Document.

J. The default or failure of the Guarantor to fully perform any obligations set forth in this Guaranty.

K. Any event or action that would, in the absence of this paragraph, result in the release or discharge of the Guarantor from the performance or observance of any obligation, covenant or agreement contained in this Guaranty (other than payment in full of the Obligations or a written release provided by the Lender to the Guarantor).

L. Any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or a guarantor.

**Section 2.3 Waivers by Guarantor.**

A. **Waiver.** The Guarantor waives any and all rights that are or may become available to the Guarantor by statute or otherwise to require the Lender to (a) proceed against the Borrower; (b) proceed against or exhaust any security held from the Borrower; or (c) pursue any other remedy in the Lender's power whatsoever. The Lender may, at its election, exercise any right or remedy it may have against the Guarantor or any security now or hereafter held by or for the benefit of the Lender including, without limitation, the right to foreclose upon any such security by judicial or nonjudicial sale, without affecting or impairing in any way the liability of the Guarantor hereunder except to the extent the Obligations may thereby be paid and performed, even though any rights which the Guarantor may have or otherwise might obtain by

subrogation against others might be diminished or destroyed. The Guarantor waives all rights and defenses arising out of an election of remedies by the Lender, even though that election or remedies, such as a nonjudicial foreclosure with respect to security for the Obligations, has destroyed the Guarantor's rights of subrogation and reimbursement against the Borrower by the operation of law or otherwise. Only the net proceeds from any such foreclosure, after deduction of all costs and expenses authorized to be deducted pursuant to the documents under which such security is held or by law, shall be applied against the Obligations. The Lender may at its discretion purchase all or any part of such security so sold or offered for sale for its own account and may apply against the amount bid therefore all or any part of the Obligations for which such security is held; and in such case, only that portion of the Obligations so applied, after deduction of all costs and expenses authorized to be deducted pursuant to the documents under which such security is held or law, shall be applied against the Obligations. The Guarantor waives any defense arising out of the absence, impairment or loss of any right to reimbursement or subrogation or other right or remedy of the Guarantor against the Borrower or any such security, whether resulting from the election by the Lender to exercise any right or remedy it may have against Debtor, any defend in, failure of, or loss or absence of priority with respect to the Lender's interest in such security, or otherwise. In the event that any foreclosure sale is deemed to be not commercially reasonable, the Guarantor waives any right that he may have to have any portion of the Obligations discharged except to the extent of the amount actually bid and received by the Lender at any such sale. The Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment or performance hereunder or enforcement hereof.

B.  **Waiver of Notices and Demands.** The Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default, and notice of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Obligations. At the option of the Lender, the Guarantor may be joined in any action or proceedings commenced by the Lender against the Borrower in connection with or based upon the Obligations or any security therefore and recovery may be had against the Guarantor in such action or proceedings, without any requirement that the Lender first assert, prosecute or exhaust any remedy or claim against the Borrower. Without limiting the foregoing, the Guarantor acknowledges that repeated and successive demands may be made and payments or performance made hereunder in response to such demands as and when, from time to time, the Borrower may default in payments or performance of the Obligations. Notwithstanding any such performance hereunder, this Guaranty shall remain in full force and effect and shall apply to any and all subsequent defaults by the Borrower in payment or performance of the Obligations.

C.  **Waiver of Defenses**. The Guarantor waives any defense arising by reason of any disability or the defense of the Borrower or by reason of the cessation from any cause whosesoever of the liability of the Borrower. The Guarantor waives any setoff, defense or counterclaim which the Borrower or the Guarantor may have or claim to have against the Lender.

D. **Real and Personal Property Waivers.** The Guarantor waives all rights and defenses that the Guarantor may have in the event that the Borrower's debt shall become secured by real property. This means, among other things: (i) that the Lender may collect from the Guarantor without first foreclosing on any real or personal property collateral pledged by the Borrower; and (ii) if the Lender forecloses on any real property collateral pledged by the Borrower: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) the Lender may collect from the Guarantor even if the Lender, by foreclosing on the real property collateral, has destroyed any right the Guarantor may have to collect from the Borrower. This is an unconditional and irrevocable waiver of any rights and defenses the Guarantor may have because the Borrower's debt is secured by real property.

E. **No Waiver: Remedies.** In addition to, and not in limitation of the waivers, no failure on the part of the Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right thereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

F. **Guarantor's Understanding With Respect To Waivers.** The Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of such waivers is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

**Section 2.4 Nature of Guaranty.** This Guaranty is a guaranty of payment and not of collection and the Guarantor hereby waives the right to require that any action be brought first against the Borrower or any other guarantor, or to require any security, or to require that resort be made to any security or to any balance of any deposit account or credit on the books of the Lender in favor of the Borrower or of the Guarantor.

**Section 2.5 Continuation of Guaranty.** The Guarantor further agrees that the obligations hereunder shall continue to be effective or reinstated, as the case may be, if at any time payment or any part thereof of the Loan Documents is rescinded or must otherwise be restored by the Lender upon the bankruptcy or reorganization of the Borrower, the Guarantor or otherwise.

**Section 2.6 Subordination of Debt.** The Guarantor hereby subordinates any and all indebtedness of the Borrower now or hereafter owed to the Guarantor to all indebtedness of the Borrower to the Lender and agrees with the Lender that, from and after the date whereon the Lender notifies the Guarantor that an event of default under one or more of the Loan Documents has occurred and is continuing, the Guarantor shall not demand or accept any payment from the Borrower of any such indebtedness, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain

any interest in any of the security described in and encumbered by the Loan Documents; provided, however, that, if the Lender so requests, such indebtedness shall be collected, enforced and received by the Guarantor as trustee for the Lender and paid over to the Lender on account of the indebtedness of the Borrower to the Lender, but without reducing or affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty except to the extent the principal amount of such outstanding indebtedness shall have been reduced by such payment.

**Section 2.7 <u>Financial Statements</u>**. The Guarantor agrees to deliver to the Lender, on or before April 15th of each year, personal financial statements and information applicable to the Guarantor on the Lender's standard form or other form acceptable to the Lender.

**Section 2.8 <u>Transfer of Interest</u>**. Except as permitted pursuant to the Loan Documents, the Guarantor agrees not to make or permit to be made, by voluntary or involuntary means, any transfer of the interest of the Guarantor in the Borrower, without first obtaining the prior written consent of the Lender.

## ARTICLE 3
## EVENTS OF DEFAULT

**Section 3.1 <u>Events of Default Defined</u>.** An "Event of Default" shall exist if any of the following events occurs and is continuing:

(A) The Guarantor fails to perform or observe any covenant contained herein.

(B) Any warranty, representation or other statement by or on behalf of the Guarantor contained in this Guaranty is false or misleading in any material respect when made.

(C) A receiver, liquidator or trustee of the Guarantor or any of his property is appointed by Court order, or the Guarantor is adjudicated bankrupt or insolvent or any of his property is sequestered by court order and such order remains in effect for more than sixty (60) days, or a petition is filed against the Guarantor under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, and is not dismissed within ninety (90) days of such filing.

(D) The Guarantor files a petition in voluntary bankruptcy or seeks relief under any provision of any reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, or consents to the filing of any petition against him under any such law.

(E) The Guarantor makes an assignment for the benefit of creditors or admits in writing inability to pay debts generally as they become due, or consents to the appointment of a receiver, trustee or liquidator of all or any part of his property.

(F) The occurrence of an Event of Default under the Note or any other Loan Document.

**Section 3.2 <u>Remedies on Default</u>**. If an Event of Default exists, the Lender may proceed to enforce the provisions hereof and to exercise any other rights, powers and remedies available to the Lender without prior written notice to the Guarantor.

**Section 3.3 <u>Waiver and Notice</u>.**

(A) No remedy herein conferred upon or reserved to the Lender is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Guaranty now or hereafter existing at law or in equity or by statute.

(B) No delay or omission to exercise any right or power accruing upon the occurrence of any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right or power may be exercised from time to time and as often as may be deemed expedient.

(C) In order to entitle the Lender to exercise any remedy reserved to it in this Guaranty, it shall not be necessary to give any notice, other than such notice as may be expressly required in this Guaranty.

(D) No waiver, amendment, release or modification of this Guaranty shall be established by conduct, custom or course of dealing.

## ARTICLE 4
## <u>MISCELLANEOUS</u>

**Section 4.1 <u>Governing Law</u>**. This Guaranty shall be governed by and construed in accordance with the laws of the State of Florida without regard to principles of conflicts of laws.

**Section 4.2 <u>Successors and Assigns</u>**. This Guaranty shall inure to the benefit of and be binding upon the successors and assigns of each of the parties hereto.

**Section 4.3 <u>Notices</u>**. Any notices required or permitted to be given hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes at the time of delivery in person, one (1) day after delivery to a nationally recognized overnight courier with receipt requested to the parties at the addresses set forth at the head of this Guaranty, or such other addresses as the parties may for themselves designate in writing as provided herein for the purpose of receiving notices hereunder.

**Section 4.4 <u>Entire Agreement</u>**. This Guaranty and the Loan Documents constitute the entire understanding between the Borrower, the Guarantor and the Lender and to the extent that any writings not signed by the Lender or oral statements or conversations at any time made or had are inconsistent with the provisions of this Guaranty or the other Loan Documents, the same shall be null and void.

**Section 4.5 Amendments**. No amendment, change, modification, alteration or termination of this Guaranty shall be made except upon the written consent of the Lender and the Guarantor.

**Section 4.6 Assignment**. This Guaranty is assignable by the Lender in whole or in part in conjunction with an assignment of the Loan Documents and any assignment hereof or any transfer or assignment of the Loan Documents or portions thereof shall operate to vest in any such assignee the rights and powers, in whole or in part, as appropriate, herein conferred upon and granted to the Lender.

**Section 4.7 Partial Invalidity**. The invalidity or unenforceability of anyone or more phrases, sentences, clauses or sections in this Guaranty shall not affect the validity or enforceability of the remaining portions of the Guaranty or any part thereof.

**Section 4.8 Submission to Jurisdiction**. The Guarantor hereby irrevocably and unconditionally agrees that any suit, action or proceeding arising out of or relating to this Guaranty shall only be brought Pinellas County in the State of Florida, which shall be deemed to be the court of sole and exclusive venue for the bringing of any legal action, and the Guarantor waives any right to object to jurisdiction within the foregoing forum by the Lender. Nothing contained herein shall prevent the Lender from bringing any snit, action or proceeding or exercising any rights against any security and against the Guarantor personally, and against any property of the Guarantor, within any other jurisdiction and the initiation of such suit, action or proceeding or taking of such action in any such other jurisdiction shall in no event constitute a waiver of the agreements contained herein with respect to the laws of the State of Florida governing the rights and obligations of the parties hereto or the agreement of the Guarantor to submit to personal jurisdiction within the State of Florida and County of Pinellas.

**Section 4.9 WAIVER OF JURY TRIAL**. THE GUARANTOR HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS HE MAY HAVE TO TRIAL BY JURY OF ANY CLAIM. DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, AND THE GUARANTOR HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND LENDER MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE GUARANTOR'S CONSENT TO THE WAIVER OF HIS RIGHT TO TRIAL BY JURY. THE GUARANTOR REPRESENTS AND WARRANTS THAT HE HAS REVIEWED THIS JURY WAIVER PROVISION WITH HIS LEGAL COUNSEL, AND HAS MADE THIS WAIVER KNOWINGLY AND VOLUNTARILY.

**Section 4.10 <u>Unlimited Guaranty</u>**. This Guaranty is unlimited in amount.

**Section 4.11 <u>Advice of Counsel</u>.**    The Guarantor represents and warrants to the Lender that he has read and fully understands the terms and provisions of this Guaranty, has had an opportunity to review this Guaranty with legal counsel, and has executed this Guaranty based upon his own judgment and advice of independent legal counsel.

**IN WITNESS WHEREOF,** the Guarantor has executed this Guaranty as of the day and year set forth.

_____
Leo J. Govoni

# Exhibit P



SENDER'S DIRECT DIAL:
813-227-8413

SENDER'S E-MAIL:
mark.wall@hwhlaw.com

September 8, 2023

**VIA EMAIL AND**
**FEDEX OVERNIGHT DELIVERY**

Boston Finance Group, LLC
c/o Leo J. Govoni & Jonathan Golden, Esq.
4912 Creekside Drive
Clearwater, Florida 33760
Leo.Govoni@Boston-Holding.com
LeoJGovoni@Boston-Holding.com
jg@bostonfinancegroup.com

Boston Finance Group, LLC
c/o Leo J. Govoni & Jonathan Golden, Esq.
12707 49th Street North
Suite 900
Clearwater, Florida 33762

Leo J. Govoni
12407 49th Street North
Suite 200
Clearwater, Florida 33762

Eric S. Koenig, Esq.
Trenam Law
101 E. Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
EKoenig@trenam.com

Re:     **Chance to Cure Notice** – Amended and Restated Promissory Note in the amount of $100,000,000 dated January 1, 2012 by and between Boston Finance Group, LLC ("BFG"), as Debtor, and The Center for Special Needs Trust Administration, Inc. ("The Center"), as lender ("Note"), further to that certain Amended and Restated Revolving Line of Credit Agreement dated January 1, 2012 by and between BFG and The Center (the "Loan Agreement"), and the Personal Guaranty of Leo J. Govoni dated January 1, 2012 (collectively, the "Loan Documents")

Dear Gentlemen:

As you are aware, this law firm represents The Center and has been retained to enforce the above-referenced Loan Documents.

The Note matured on January 1, 2017 (the "Maturity Date"), per the terms of the Loan Documents. At minimum, the Maximum Loan Amount of $100,000,000 remains due and payable, along with all accrued interest thereon after applying the regular but insufficient interest payments made under the Loan Documents since the Maturity Date.

Pursuant to Section 7(A)(2) of the Loan Agreement, notice is hereby provided to BFG, as the debtor/borrower, and Leo J. Govoni, as the personal guarantor of the sums owed under the Note, that all outstanding principal and unpaid interest owed under the Note and Loan Agreement

Boston Finance Group, LLC, Leo J. Govoni and Eric S. Koenig, Esq.
September 8, 2023
Page 2 of 2

is due and payable within five (5) days from the delivery of this notice. If the failure to timely and fully pay the indebtedness is not cured within the applicable notice period, BFG and Mr. Govoni will have committed an Event of Default under Section 7(A) of the Loan Agreement and The Center will promptly pursue all appropriate action in connection with the Loan Documents and otherwise.

This chance to cure notice is being sent via express overnight delivery service in accordance with Section 10.A.(iii) of the Loan Agreement and Section 12.(iii) of the Note.

Please govern yourselves accordingly.

Very truly yours,

HILL WARD HENDERSON

Mark M. Wall

18601031v1