# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| In re: | Case No. 8-24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Chapter 11 |
| Debtor. | |
| MICHAEL GOLDBERG, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration, Inc. | |
| Plaintiff, | |
| w<br>v. | Adv. Pro. No. 8:24-ap-00139-RCT |
| BOSTON FINANCE GROUP, LLC, a Florida limited liability company and LEO J. GOVONI, an individual, | |
| Defendants. | |

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (RE: DAMAGES)

Plaintiff, Michael Goldberg, as Chapter 11 Trustee ("Chapter 11 Trustee") of the estate of The Center for Special Needs Trust Administration, Inc. (the "Debtor"), pursuant to Rule 56, Federal Rules of Civil Procedure, made applicable by Rule 7056, Federal Rules of Bankruptcy Procedure, files this Reply in support of his September 13, 2024 Motion for Summary Judgment (Adv. Doc. No. 23, the "MSJ")[1] against Boston Finance Group, LLC, a Florida limited liability

---

[1] The Chapter 11 Trustee relies on the (i) Complaint for Damages and Other Relief filed by the Chapter 11 Trustee on April 25, 2024 (Adv. Doc. 1), (ii) Leo J. Govoni's Answer to Plaintiff's Complaint for Damages and Other Relief (Adv. Doc. 7) ("Govoni Ans."), Boston Finance Group, LLC's Answer to Plaintiff's Complaint for Damages and Other Relief (Adv. Doc. 10) ("BFG Ans."), (iii) the Long Declaration, (iv) the MSJ and attached declaration, (v) the Defendants' response (Adv. Doc. 26) and attached declaration, (vi) the attached December 2024 Declaration of Kevin McCoy (the "McCoy Decl.," a copy of which is attached to this Motion as *Exhibit 1*), and (vii) all other matters of record in support of this Motion for Summary Judgment (Re: Damages).

79076128

company ("BFG") and Leo J. Govoni, an individual ("Govoni") as to Counts I and II of its Complaint for Damages and Other Relief, and states:

## INTRODUCTION

The Defendants have admitted the key allegations in the Complaint, waived all defenses by not asserting any of them, and stipulated to a judgment on liability. That leaves only the question of damages or, in this case, what is the balance on the Loan? In their Response, the Defendants do not provide any evidence to refute an outstanding loan balance in excess of $100 million, in spite of the fact that Mr. Govoni controlled both parties to the loan transaction. Rather, they offer a self-serving and vague declaration[2] and invite the Court to infer a Loan balance of "approximately $30 million." There are no bank records, financial statements, or any documents to corroborate Mr. Govoni's Declaration, even though that information would be available to him, if it existed.

Fortunately, records of the Debtor and BFG have recently been made available to Kevin McCoy of KapilaMukamal, the estate's forensic accountant; and they show that there is no *genuine* issue of material fact in this case. As described below, summary judgment should be entered against the Defendants – and the Govoni Declaration should be disregarded – for at least three reasons.

## UNDISPUTED MATERIAL FACTS

1. At all times material, Mr. Govoni was the manager of BFG.

2. Between 2010 and 2016, BFG used an accounting software called Navision. In late 2016 or early 2017, BFG transitioned to Quickbooks. Records from both software programs were recently made available to KapilaMukamal, the estate's forensic accountants.

---

[2] The credibility of the declarant should already be in serious doubt. Remember that Mr. Govoni, by his own design, was placed in charge of thousands of vulnerable lives who trusted him to safeguard their assets and pay for their special needs. But he *admits* that he took their money, through an unsecured Loan, without telling them, and in violation of the trust he owed to them; used that money to enrich himself and his family members; and made no attempt to repay the loan. Now, after admitting to that scheme, and in spite of the records that are in his control, he wants the Court to take him at his word and trust the "personal knowledge" that he disclaimed four months ago.

3. According to BFG's own records, produced to the Chapter 11 Trustee in discovery, BFG carried a "Loan Payable" on its balance sheet that was $122,582,771 as of June 8, 2023.

### FORENSIC ANALYSIS

4. Kevin McCoy has identified and analyzed cash transfers related to the Loan, from the Center to BFG, totaling $99,787,239 between May 2010[3] and February 2024. *See* McCoy Decl., ¶ 25. He also identified $18,869,432 in transfers from BFG to the Center, resulting in a net amount of cash transfers of $88,065,957.

5. Based solely on the Cash Transfers, as of December 6, 2024, BFG owes the Center $88,065,957 in principal and $32,258,434 in accrued interest, for a total of $120,324,391 (exclusive of attorneys' fees, costs, and interest that continues to accrue). *See* McCoy Decl., ¶ 26.

6. Neither of the Defendants has offered any specific accounting to refute the amounts calculated by Mr. McCoy; and, as mentioned above, neither of the Defendants has offered a record reflecting a balance *below* $120,324,391.

7. Neither of the Defendants has served any discovery or even asked to take a deposition.

8. Finally, neither Mr. McCoy nor the Chapter 11 Trustee has not found any loan documents for any loans to BFG other than the Center Loan. *See* McCoy Decl., ¶ 24.

### MEMORANDUM OF LAW

The Chapter 11 Trustee is entitled to summary judgment as a matter of law, and the motion cannot be overcome by Mr. Govoni's self-serving, vague declaration that contradicts all of the record evidence in this case.

---

[3] Although the Loan was initiated in June 2009, the records available to us did not go back beyond May 2010.

### A. *The Govoni Declaration Can and Should Be Disregarded.*

As a threshold matter, the Govoni Declaration can and should be disregarded because it is based on rank speculation and contradicted by the records of two companies that were under his control. Rather than actually analyzing BFG's financial records, Mr. Govoni's approach is to ask the Court to reverse-engineer a loan balance by reviewing bare allegations of interest payments. But he does not provide evidence of those payments or even identify them with any particularity. More importantly, he assumes (without any factual basis) that BFG made the interest payments it was required to make when, in reality, BFG often missed interest payments that were due. The case law is clear that a borrower's speculation or conjecture as to the amount owed does not create a genuine issue of material fact. *See PNC Bank, Nat. Ass'n v. GVTG, LLC*, 592 Fed. Appx. 775, 780 (11th Cir. 2014) (citing *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1181 (11th Cir. 2005) (explaining that speculation or conjecture from a party cannot create a genuine issue of material fact).[4]

Similarly, when a party's version of events is blatantly contradicted by the record, as it is here, that party's declaration can be rejected. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Vicks v. Knight*, 380 Fed. App'x. 847, 852 (11th

---

[4] Mr. Govoni may try to argue that the declaration is not speculative because it is based on "personal knowledge," but that argument is not available to him, as a matter of law. When Mr. Govoni answered the Complaint (individually and as manager for BFG), he said that he was "without knowledge" as to the amount of the loan; but now that he faces summary judgment, he suddenly has "personal knowledge." The law does not tolerate shenanigans like this. In fact, the law is clear that when the assertion of ignorance is obviously a sham, as it is here, the facts alleged in the complaint stand ***admitted***. *See Harvey Aluminum (Inc.) v. N.L.R.B.*, 335 F.2d 749 (9th Cir. 1964) (citing *Mesirow v. Duggan*, 240 F.2d 751, 756 (8th Cir. 1957)); *Djourabchi v. Self*, 571 F.Supp.2d 41 (D.D.C. 2008) (allegation to which defendant said it was "without knowledge" will be deemed admitted when it is obviously one as to which defendant has knowledge or information); *Ice Plant Equipment Co. v. Martocello*, 43 F. Supp. 281 (E.D. Pa. 1941) (a "without knowledge" answer will be deemed admitted when the allegation is so plainly and necessarily within the defendant's knowledge that his averment of ignorance must be palpably untrue). As such, there is no ***genuine*** issue of material fact; and the Court need look no further than the Complaint itself. If nothing else, the 9-figure amount in the Complaint – which should be deemed admitted as a matter of law – confirms the reliability of Mr. McCoy's analysis.

Cir. 2010) (per curiam) (affirming summary judgment where plaintiff's "version of events… was contradicted by all of the relevant evidence, with the exception of his own affidavit"). In this case, Mr. Govoni's calculation of a balance of "approximately $30 million" is wildly different than the $122 million "Loan Payable" amount on BFG's own books; or (iii) the $120,324,391 amount calculated by Kevin McCoy, after an exhaustive review of financial records for the Debtor and BFG.[5] Therefore, the declaration can be summarily disregarded.

### B. *The Actual Evidence Shows There is No Genuine Issue of Material Fact.*

In an action based on a promissory note, the plaintiff establishes a prima facie case by showing that the note is mature and regular, and that there is a balance owed. *See SE Property Holdings, LLC v. Chung*, 2013 WL 12170490, *2 (N.D. Fla. Sept. 11, 2013) (citing *Haycook v. Ostman*, 397 So. 2d 743 (Fla. 5th DCA 1981)). In this case, the Defendants have admitted to liability and admitted that there is at least *some* balance owed; so the burden shifts to the Defendants to demonstrate the existence of specific facts in the record that create an issue for trial. *See id.* (citing *Coburn v. D&R Trucking, LLC*, 2011 WL 73287, at *2 (M.D. Fla. Jan. 10, 2011)). The Defendants cannot rely solely on mere allegations or denials. *See id.* But Mr. Govoni's declaration does exactly that. He has not offered any evidence other than his own self-serving testimony about certain unidentified interest payments, and this is what the case law tells the courts to reject. *See, e.g., Reddy v. Buttar*, 38 F.4th 393, 403 (4th Cir. 2022) (citing *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (to create a genuine dispute of material fact," the party opposing summary judgment must rely on more than 'conclusory allegations.'")).

The case of *Highland Capital Management, LP v. NexPoint Asset Management, LP, et al. (In re Highland Capital Management),* 116 F.4th 422 (5th Cir. 2024) is particularly instructive. In that

---

[5] Incidentally, Mr. Govoni's figure is also wildly inconsistent with the unrefuted / unobjected-to $100 million figures in the Debtor's bankruptcy filings, which is significant, as discussed below.

case, a Chapter 11 debtor investment fund brought adversary actions in bankruptcy court to collect on large promissory notes from its subsidiaries and former principal. Just like Mr. Govoni, *et al.*, the debtor's principal "had a practice" of causing the debtor to lend money to himself and its subsidiaries or affiliates, putting the principal on both sides of the lending transactions. *See id.* at 428. In the adversary proceedings in that case, the debtor's principal argued that he had caused the debtor to forgive the loans pre-petition, but the forgiveness was oral, rather than in writing. *See id.* at 430-31. In spite of that apparent agreement, however, the loans were reflected in the bankruptcy filings and the adversary defendants never took issue with them. *See id.* at 429.

The bankruptcy court recommended that the District Court grant the debtor's motions for summary judgment (enforcing the promissory notes), the District Court adopted that recommendation, and the defendants appealed. On appeal, the Fifth Circuit held that: (i) the debtor had established a prima facie case based on the notes themselves; (ii) as a result, the defendants had the burden of demonstrating the existence of a *genuine* dispute of material fact; (iii) the summary judgment declarations by the former principal were inconsistent with the record and, therefore, were not significantly probative; and (iv) summary judgment declarations could be disregarded because they were self-serving and contradicted by record evidence.

Of particular significance to the bankruptcy court and the Fifth Circuit were the facts that the notes had been included in all of the debtor's financial statements, books, and records; carried as assets on the debtor's balance sheet; and incorporated into all of the debtor's bankruptcy filings. *See id.* at 430. Each of these things is true in this case as well.[6]

---

[6] Indeed, in the Debtor's Schedules, the Debtor describes a "Note Receivable" from BFG in the amount of $106,709,004. *See* Doc. 66, pp. 4-5. Neither of the Defendants has refuted the Debtor's schedules. Similarly, in the Debtor's Case Management Summary, the Debtor stated, "Although periodic interest payments and what was alleged to be a small principal reduction payment have been made to The Center, neither BFG nor Govoni have made any meaningful attempt to repay the $100 million." *See* Doc. 7, p. 5. Neither of the Defendants has refuted the Debtor's Case Management Summary, despite appearing through counsel at many hearings before the Court on this issue.

6

As for the principals' argument regarding loan forgiveness in *Highland Capital*, the only evidence were self-serving declarations by those same principals. *See id.* at 431. The Court reviewed those declarations and found that the self-serving testimony, coupled with the lack of detail and internal inconsistencies made the declarations insufficient to successfully oppose summary judgment. *See id.* at 433 (citing *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 550 (5th Cir. 2002); *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008)). As for the lack of detail, the Court went on to say, "failure to recall a particular event but testifying as to the usual course of dealing is not significantly probative of a fact issue." *See id.* at 434 (citing *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) ("summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence.").

Mr. Govoni's declaration is very similar. In the face of the debtor's and BFG's own business records, he asks the Court to ***infer*** a loan balance based on what he thinks he remembers interest payments to have been. This is nonsense. And, according to well-established law, the declaration is completely insufficient to defeat summary judgment.

C.  *The Defendants' Argument Has Been Waived.*

Even if Mr. Govoni's Declaration actually raised a genuine issue of material fact (which it does not), the Defendants' argument was waived when it was not asserted as an affirmative defense. The case law is clear that a payee's possession of an original uncanceled promissory note raises a presumption of non-payment that shifts the burden of proof to the payor to establish payment or another defense. *See Cole Taylor Bank v. Shannon,* 772 So. 2d 546, 550 (Fla. 1st DCA 2000) (citing *Jacobs v. Becks,* 355 So. 2d 1241 (Fla. 1st DCA 1978). And challenges to a promissory note must be made by affirmative defense. *See id.* (citing *Haycook v. Ostman,* 397 So. 2d 743 (Fla. 5th DCA

1981)). This includes the challenge that the Defendants are raising here, which is that the face amount of the promissory note exceeds the actual amount lent. *See id.* In order to make that argument, the Defendants were required to assert an affirmative defense, which they did not do; and, since they did not assert an affirmative defense, the argument was waived. *See id.; see also Bank of America, NA v. Asbury*, 165 So. 3d 808 (Fla. 2d DCA 2015); *Goldberger v. Regency Highland Condominium*, 452 So. 2d 583, 585 (Fla. 4th DCA 1984).

## CONCLUSION

The estate's forensic accountant has calculated an outstanding loan balance of $88,065,957 in principal and $32,258,434 in accrued interest, based on records obtained from the Debtor and one of the Defendants. There is no evidence to refute this. Mr. Govoni had access to all the same information, but he failed to offer any actual evidence. Instead, he relied on a sham declaration that is speculative and self-serving. The fact is that every shred of evidence in this case – including BFG's own balance sheet, which shows a "Loan Payable" in the amount of $122,582,771 – confirms that Mr. McCoy's figure is accurate and indisputable. As such, summary judgment is appropriate and there is no need for a trial.

WHEREFORE, Plaintiff Michael Goldberg as Chapter 11 Trustee respectfully requests entry of a final judgment against Defendants Boston Finance Group, LLC and Leo J. Govoni – for damages in the amount of $120,324,391, with interest, attorneys' fees, and costs, all continuing to accrue – and for such other relief as this Court deems just and proper.

Dated this 6th day of December, 2024.

AKERMAN LLP

By: */s/ Steven R. Wirth*
    Steven R. Wirth
    Florida Bar No.: 170380
    Email: steven.wirth@akerman.com
    Raye C. Elliott
    Florida Bar No.: 18732
    Email: raye.elliott@akerman.com
    401 East Jackson Street, Suite 1700
    Tampa, Florida 33602
    Telephone: (813) 223-7333
    Facsimile: (813) 223-2837

*Counsel for Chapter 11 Trustee, Michael Goldberg*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 6, 2024, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record.

*/s/Steven R. Wirth*

# Exhibit 1

**DECLARATION OF KEVIN MCCOY**

1.      My name is Kevin McCoy. I am over the age of 18, am competent to furnish this declaration, and do so based on my personal knowledge of the statements made herein.

2.      I am a partner at KapilaMukamal, LLP ("KM"), which specializes in insolvency, turnaround, forensic and investigative consulting, expert witness, and litigation support services.

3.      My areas of expertise include forensic accounting and investigation, financial transactions litigation, complex commercial litigation, and insolvency advising.

4.      I have worked with fiduciaries in conjunction with the Federal Bureau of Investigation (FBI), Securities and Exchange Commission (SEC), the Federal Trade Commission (FTC), and the United States Attorney's Office/Department of Justice.

5.      I am a Certified Public Accountant (CPA), Certified Fraud Examiner (CFE), affiliated with the Association of Certified Fraud Examiners (ACFE) and a Certified Insolvency and Restructuring Advisor (CIRA), affiliated with the Association of Insolvency and Restructuring Advisors (AIRA). I am also affiliated with the National Association of Federal Equity Receivers (NAFER), and the Florida Institute of Certified Public Accountants (FICPA).

6. On April 3, 2024, KM's retention as Forensic Accountants to Michael Goldberg, the Chapter 11 Trustee ("Trustee") for the Center for Special Needs Trust, Inc. (the "Debtor" or "Center") was approved by the Bankruptcy Court, retroactively to March 21, 2024 [DE 138].

7. Since that date, I, along with other professionals at KM have assisted the Trustee and his counsel with a forensic investigation of the accounting records, financial records, and the bank and brokerage account records for the Debtor and the Special Need Trusts ("Trusts") administered by the Debtor.

8. KM's investigation is still in its early stages and remains on-going. The following paragraphs are KM's preliminary findings and are subject to change based on additional information reviewed and analyzed during the investigation.

**Scope**

9. The Trustee requested that I:

    i. Review the six Promissory Notes ("PNs") between the Center and Boston Finance Group, LLC ("BFG"), that were amended and restated as follows: (i) June 1, 2009 for $2.5 million, (ii) December 1, 2009 for $15 million, (iii) March 15, 2010 for 30, million, (iv) March 15, 2011 for $50 million, (v) September 1, 2011 for $50 million, and (vi) January 1, 2012 for $100 million;

2

    ii.    Identify funds transferred between the Center and BFG related to the PNs; and

    iii.    Calculate the accrued interest payable to determine the outstanding amount due to the Center through December 6, 2024.

**Methodology**

10. In conducting my investigation, I was assisted by other KM professionals working under my direct supervision with extensive experience in bankruptcy matters, litigation support and forensic and insolvency accounting. Any references to "I", "my", "KM" or "KapilaMukamal, LLP" within this Declaration incorporate my efforts with the assistance of my co-professionals.

11. My investigation required an extensive review of voluminous bank and brokerage account records produced by third party financial institutions ("Bank Productions"), including but not limited to:

    i.    American Momentum Bank ("AMB") produced over 70,000 pdf pages of bank records; and

    ii.    Fidelity Investments ("Fidelity") produced over 41,000 pdf pages of account records.

12. I also reviewed and analyzed the accounting records for the Center, the Trusts and BFG.

**Cash Transfers**

13. In order to identify transfers made between the Center and BFG related to the PNs ("Cash Transfers")[1] from the bank and brokerage account records, KM prepared detailed bank reconstructions ("Bank Reconstructions") of the funds received and disbursed in the Center's and BFG's bank and brokerage accounts during the period September 29, 2008 and April 30, 2024. The Bank Reconstructions encompassed nine accounts and approximately 68,900 transactions, summarized in **Table A** below:

| Table A - Bank Reconstructions | | | | |
|---|---|---|---|---|
| Entity | No. of Accounts | Bank Accounts | Period | Approximate No. of Transactions |
| BFG | 5 | AMB-0013, AMB-0408, AMB-1588, AMB-3025 and Fidelity-4027 | 6/2/2009 - 4/30/2024 | 17,400 |
| Center | 4 | AMB-1404, AMB-1640, AMB-5303 and Fidelity-2207 | 9/29/2008 - 3/31/2024 | 51,500 |
|  | 9 |  |  | 68,900 |

14. The Bank Reconstructions are a database of the details of each transaction (receipts and disbursements) that occurred in the bank accounts and include the following fields of information for each transaction: (i) bank account

---

[1] The Cash Transfers would include wires, checks or transfers made between the bank and brokerage accounts.

number reference, (ii) transaction date, (iii) transaction type, (iv) transaction amount, (v) payee/recipient; and (i) ending balance.

15. The Bank Productions included limited underlying payor or payee details for checks, wires and transfers, particularly prior to January 2017 due to the financial institutions' retention policies or records maintained in their ordinary course. Therefore, my investigation required extensive analysis to identify and reconcile the Cash Transfers from multiple sources to correlate and confirm the transfers made were between the Center and BFG. I utilized the following additional sources of information for this investigation:

   i. BFG accounting records maintained in Navision and QuickBooks;
   ii. Center's bank accounts (i) AMB – 0035, (ii) AMB – 1714, and (iii) AMB – 1722;
   iii. Center's corporate accounting records maintained in Navision; and
   iv. Trust ledgers maintained in Navision.

16. Due the limited underlying payor or payee details for checks, wires and transfers from the Bank Productions, particularly prior to January 2017, I

assume that not all the Cash Transfers were identified and that the amounts transferred to BFG are greater than the actual amounts included in this analysis.

17. For example, a review of BFG's balance sheets, recorded in BFG's own accounting records, reflects a Loan Payable account with a balance of $122.6 million as of 12/31/2023 (discussed further below), that is greater than the net Cash Transfers of $80.9 million related to the PNs.

18. I calculated the accrued interest due from BFG to the Center pursuant to the terms of the PNs based on the actual Cash Transfers identified in the bank records.

19. KM applied the default rate of interest (18%) to the outstanding balance of September 13, 2023 (5 days from the notice sent on 9/8/2023)[2] through December 6, 2024.

**BFG Accounting Records**

20. I was provided with a copy of BFG's QuickBooks files and access to BFG's accounting records that were maintained on the Navision accounting platform.[3]

---

[2] Letter dated September 8, 2023, from Mark M. Hall of Hill Ward Henderson to BFG, et al.
[3] BFG's accounting records on Navision were for the period August 2010 through December 2016, at which point BFG's transferred its accounting to QuickBooks for the period January 2017 through May 2024.

6

21. I identified a loan payable account related to the Center in BFG's general ledger ("Loan Payable") whose balance was reflected on BFG's balance sheets at increasing intervals.

22. The Loan Payable account balance does not include accrued interest and there is no accrued interest payable recorded separately on BFG's balance sheets.

23. At December 31, 2010, the Loan Payable account balance was $27.5 million and by December 31, 2023, the Loan Payable account balance was $122.6 million.

24. I have not seen any evidence or loan documents related to any loans payable other than the loan discussed herein.

**Findings**

25. I identified the following aggregate Cash Transfers between the Center and BFG between May 27, 2010 and February 20, 2024:[4]

    i. $99,787,239 was transferred from the Center to BFG; and

    ii. $18,869,432 was transferred from BFG to the Center.

---

[4] KM excluded Cash Transfers that were recorded in BFG's accounting records as a reimbursement for expenses such as payroll, meals and entertainment and travel expenses.

26. Based solely on the Cash Transfers, as of December 6, 2024, BFG owes the Center $88,065,957 in principal and $32,258,434 in accrued interest totaling $120,324,391.

27. BFG's own accounting records reflect that BFG owed the Center at least $122.6 million as of December 31, 2023, not including any accrued interest.

I declare under penalty of perjury that the foregoing is true and correct.

Date: December 6, 2024

By: _____
Kevin McCoy, CPA, CFE, CIRA