ORDERED.

Dated:  January 17, 2025

Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:
The Center for Special Needs Trust Administration,
    Debtor.
_____

Case No. 8:24-bk-00676-RCT

Chapter 11

Michael Goldberg, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration,
    Plaintiff,
v.

Boston Finance Group, LLC and Leo J. Govoni,
    Defendants.
_____/

Adv. Pro. 8:24-ap-00139-RCT

### AMENDED[1] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING DAMAGES

This matter came before the Court, without a hearing, on Plaintiff's Motion for Summary Judgment Regarding Damages. (Doc. 23). Defendants filed a response in opposition (Doc. 26), and Plaintiff filed a reply (Doc. 36). During the December 17, 2024, pretrial conference, this Court addressed these filings, noting certain deficiencies in the summary judgment record and directing the parties to supplement the record to address these deficiencies.

---

[1] Amending Doc. 44 to properly identify Defendant Boston Finance Group, LLC in the case caption.

(Doc. 40). Only Plaintiff chose to supplement the record to address the deficiencies noted by the Court. (Doc. 41). Based on the record evidence before the Court, the Court finds that no genuine issue of material fact exists and that summary judgment on Plaintiff's motion is warranted.

## I. Standard of Review

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2] The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.[3] The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.[4] When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.[5]

## II. Factual Background

Debtor, The Center for Special Needs Trust Administration, provides trust services relating to the formation and administration of special needs trusts. As of the petition date, Debtor was administering over 2,000 special needs trusts. Debtor served as trustee of the special needs trusts, which required Debtor to manage the trusts, maintain records for assets managed by third-party investment managers, respond to requests for distributions from beneficiaries, and make distributions in a manner that ensured that the applicable beneficiary

---

[2] Fed. R. Civ. P. 56(a), made applicable here by Fed. R. Bankr. P. 7056.
[3] *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).
[4] *See id.* (citation omitted).
[5] *See id.* (citation omitted).

met the income and asset thresholds to qualify for public assistance benefits. Defendant Leo J. Govoni co-founded Debtor, and he served on Debtor's Board of Directors from the company's founding until his resignation in 2008 or 2009.[6]

On or about June 1, 2009, Defendant Boston Finance Group, LLC ("BFG") entered into a Revolving Line of Credit Agreement with Debtor that is evidenced by various Loan Documents[7] that were modified and delivered over time.[8] Govoni, now BFG's manager,[9] executed a Guaranty by which Govoni personally guaranteed all amounts due by BFG to Debtor under the Loan Documents.[10] The Loan Documents matured on January 1, 2017.[11] It is undisputed that BFG and Govoni are in default under the Loan Documents for failure to pay the full amount of the principal, interest, and other amounts due under the Loan Documents after the maturity date.[12]

As a result of BFG and Govoni's default, Plaintiff Michael Goldberg, as Chapter 11 Trustee of the estate of Debtor, filed an adversary complaint against BFG and Govoni.[13] Plaintiff moved for partial summary judgment as to liability on two counts of the complaint—Count I for Breach of the Notes against BFG, and Count II for Breach of the Guaranty against Govoni.[14] This Court entered an Agreed Order Granting Plaintiff's Motion for Partial Summary Judgment, finding that BFG and Govoni are liable for all amounts due and owing under the

---

[6] (Doc. 7, ¶ 17, 18).
[7] The various Loan Documents are attached as exhibits to the complaint and consist of the following: The June 2009 Loan Agreement, the June 2009 Note, the Security Agreement, the Negative Pledge Agreement, the December 2009 Loan Agreement, the December 2009 Note, the 2010 Loan Agreement, the 2010 Note, the 2011 Loan Agreement, the March 2011 Note, the September 2011 Note, the 2012 Loan Agreement, the 2012 Note, and the Guaranty.
[8] Doc. 20, ¶ 2(i).
[9] Doc. 26-1, ¶ 2.
[10] Doc. 20, ¶ 2(ii); Doc. 26-1, ¶ 3.
[11] Doc. 20, ¶ 2(iii).
[12] Doc. 20, ¶ 2(iv).
[13] Doc. 1.
[14] Doc. 16.

Loan Documents.[15]  What remains to be determined with respect to Counts I and II is the amount of damages for these two claims.[16]

The various Loan Documents culminated in the January 1, 2012, Amended and Restated Revolving Line of Credit Agreement between Debtor and BFG (which provided up to a $100 million line of credit); BFG's January 1, 2012, Amended and Restated Promissory Note relating to the $100 million line of credit; and Govoni's January 1, 2012, Guaranty of the $100 million line of credit.[17]

Plaintiff submits evidence from Kevin McCoy, a forensic accounting and investigation expert that reviewed and analyzed the cash transfers between Debtor and BFG, as well as Debtor's and BFG's accounting records.[18]  Based on his review and analysis,[19] McCoy substantiates that Debtor funded $99,787,239.23 to BFG under the line of credit and that the total interest due on the loan was $39,406,583.74.  After deducting $18,869,431.90 in payments from BFG to Debtor,[20] the total principal and interest due and owing is $120,324,391.07.  That amount is made up of $88,065,957.13 in principal and $32,258,433.94 in interest.

As further support, McCoy provides BFG's own accounting records, which show that

---

[15] Doc. 20.

[16] There are three other claims asserted in the complaint: Count III for Foreclosure of Personal Property, Count IV for Turnover of Property of the Bankruptcy Estate and for an Accounting as to BFG, and Count V for Turnover of Property of the Bankruptcy Estate and for an Accounting as to Govoni.  These three claims remain but are not at issue with respect to the instant motion for summary judgment. (Doc. 20, ¶5).

[17] Doc. 1, p. 120-48.

[18] Docs. 23-1, 41-1, 36.

[19] Doc. 41-1, p. 8-10.  McCoy's investigation and analysis consisted of reviewing bank and brokerage account records from third-party financial institutions, including American Momentum Bank and Fidelity Investments.  (Doc. 36, ¶11).  He and his team had to prepare bank reconstructions of the funds received and disbursed in Debtor's and BFG's accounts.  (Doc. 36, ¶ 13; Doc. 41-1, ¶ 11).

[20] Ultimately, the $18,869,431.90 in payments from BFG was applied as follows: $11,721,282.10 was applied to reduce principal from $99,787,239.23 to $88,065,957.13; $7,148,149.80 was applied to reduce interest from $39,406,583.74 to $32,258,433.94.  Thus, the total principal and interest due and owing is $120,324,391.07.

BFG recognized a loan payable of $122,582,771 on its balance sheet as of August 6, 2024.[21] McCoy could not find any evidence or loan documents relating to any other loans other than the amounts loaned by Debtor to BFG under the revolving line of credit.[22]

### III. Motion for Summary Judgment Regarding Damages

Based on the evidence before the Court, Plaintiff argues that it has shown that $88,065,957.13 in principal and $32,258,433.94 in interest is due and owing under the Loan Documents. Furthermore, Plaintiff argues that the Loan Documents provide that BFG shall pay all attorney's fees and costs incurred in collecting under the promissory note,[23] which totaled $30,207.50 through July 31, 2024.[24]

In response, Defendants argue that there is not sufficient evidence before the Court showing that Debtor actually loaned $100 million under the line of credit, and instead, Defendants believe that only $30 million was loaned.[25] Thus, Defendants argue that there is a question of fact regarding the actual amount owed under the Loan Documents. Alternatively, Defendants argue that they have not had an adequate opportunity to conduct discovery as to Plaintiff's records of the amounts actually loaned to BFG. As explained below, the Court

---

[21] Doc. 41-1, p. 6. BFG recognized a loan payable amount larger than that proffered by McCoy. This is likely because McCoy believes that he and his team were not able to identify all of the cash transfers from Debtor to BFG, and as a result, McCoy believes that the amount Debtor transferred to BFG is likely greater than the amount that he could substantiate. (Doc. 36, ¶ 16).
[22] Doc 36, ¶ 24.
[23] Doc. 1, p. 136, ¶ 13.
[24] Doc. 339, p. 20.
[25] Initially, Plaintiff's motion for summary judgment was only supported by McCoy's conclusory assertion that "based on [his] review and analysis of the Loan Documents," Defendants owed Debtor $154,140,579—made up of $100 million principal, plus $55,711,939 in interest, minus $1,571,359 in interest payments. (Doc. 23-1, ¶ 7-8). Defendants' summary judgment response was based on that conclusory evidence. In connection with his reply brief, Plaintiff included a more thorough declaration by McCoy. Later, as directed by the Court, Plaintiff filed a supplemental declaration by McCoy. Evidence from these additional declarations is cited in Part II of this Order, and these additional declarations more than addresses the concern set forth in Defendants' summary judgment response that there was not sufficient evidence of the amount due and owing because McCoy's analysis was based only on the Loan Documents and not on an analysis of the actual cash transfers between Debtor and BFG.

5

rejects these arguments.

### A. Amount Owed

Defendants first argue that there is a question of fact regarding the actual amount owed under the Loan Documents. In support of this contention, they argue that they have produced conflicting evidence regarding the amount owed via Govoni's declaration, in which he states the following:

> 4. Based on my present personal knowledge and a review of past interest payments made by BFG to Debtor, the principal amount loaned by Debtor to BFG pursuant to the Loan Documents and outstanding at the time of maturity was significantly less than $100 million.
>
> 5. By my rough calculations based on past interest payments, the principal amount loaned by Debtor to BFG was approximately $30 million.[26]

However, as explained below, Govoni's self-serving, conclusory declaration that contradicts other information from Defendants is not sufficient to create a genuine issue of material fact to preclude summary judgment.[27]

To begin with, Govoni's attempt to reverse-engineer a loan balance based off of interest payments that BFG actually made is not an accurate calculation method, because it assumes that BFG made all of the interest payments that it was required to make, and there is no evidence before the Court to support that assumption. Instead, the evidence before the Court regarding the payments made by BFG to Debtor shows that BFG never paid the full amount of interest due for each quarter after September 1, 2013.[28]

Next, Govoni's assertion in his declaration that the principal amount of the loan was

---

[26] Doc. 26-1.
[27] The fact that the declaration is self-serving is not, in and of itself, a reason to find that it does not create a genuine issue of material fact. *See U.S. v. Stein,* 881 F.3d 853, 856 (11th Cir. 2018).
[28] Doc. 41-1, p. 8.

approximately $30 million contradicts his answer to the complaint. Specifically, Plaintiff alleges in the complaint: "As of April 23, 2024, the Debtor is owed a total of $142,283,314 which includes $100,000,000 in principal and $42,283,314 in interest, together with interest which continues to accrue."[29] Govoni answered that allegation by stating that he was "[w]ithout knowledge, therefore denied."[30] Govoni does not explain in his declaration how he suddenly now has knowledge regarding the amount loaned to BFG that he did not have when answering the complaint.

Likewise, Govoni's assertion in his declaration that the principal amount of the loan was approximately $30 million clearly contradicts BFG's own accounting records, which show that BFG recognized a loan payable of $122,582,771 on its balance sheet as of August 6, 2024.[31] Govoni does not even attempt to explain this blatant contradiction.

As explained by the Supreme Court:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.[32]

---

[29] Doc. 7, ¶ 82.
[30] Doc. 7, ¶ 82.
[31] Doc. 41-1, p. 6.
[32] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citations omitted).

The self-serving nature of Govoni's declaration, coupled with the fact that Govoni's conclusory allegation clearly conflicts with BFG's own accounting records without explanation, leads the Court to conclude that Govoni's declaration is not sufficient to create a genuine issue of material fact that precludes summary judgment.[33] There is competent evidence before the Court from McCoy's declarations and BFG's own accounting records showing that BFG and Govoni owe $88,065,957.13 in principal and $32,258,433.94 in interest under the Loan Documents, totaling $120,324,391.07.

### B. Adequate Opportunity to Conduct Discovery

Next, Defendants argue that they have not had an adequate opportunity to conduct discovery as to Plaintiff's records of the amounts actually loaned to BFG. Defendants argue that they have been focused on negotiating in good faith in hopes of settlement rather than conducting discovery regarding the underlying transactions and deposing McCoy. Therefore, they argue that summary judgment is premature.

Defendants made that argument in their response to summary judgment filed on October 7, 2024. However, the Court allowed Defendants to supplement the summary judgment record by December 27, 2024.[34] There has been no showing to the Court that Defendants have sought any discovery during the three months since the filing of their summary judgment response.[35]

Given that BFG's own accounting records corroborate, rather than dispute, Plaintiff's evidence of damages, and given that there has been no showing to the Court that Defendants have sought any discovery during the three months since the filing of their summary judgment response, the Court is not persuaded that Defendants' failure to adequately defend against

---

[33] *See Matter of Highland Capital Management, L.P.,* 116 F.4th 422, 431 (5th Cir. 2024) (citations omitted).
[34] Doc. 40.
[35] In his December 6, 2024, reply brief, Plaintiff states that Defendants have not served any discovery or asked to take a deposition. (Doc. 36, ¶ 7).

Plaintiff's motion for summary judgment is due to an inadequate opportunity to conduct discovery. Finding no reason to delay the matter further, the Court finds that Plaintiff is entitled to summary judgment on Counts I and II of the adversary complaint.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion for Summary Judgment Regarding Damages (Doc. 23) is **GRANTED**.

(2) The Court finds that BFG and Govoni owe $88,065,957.13 in principal and $32,258,433.94 in interest under the Loan Documents, totaling $120,324,391.07 in damages under Counts I and II.  Additionally, BFG must pay all reasonable attorney's fees and costs incurred in collecting under the promissory note.  Plaintiff is directed to file a motion for fees and costs incurred in prosecuting Count I against BFG within 14 days after entry of this order, and Defendants may file a response within 14 days after the filing of the motion.

(3) The Court will enter a partial final judgment on Counts I and II of the complaint, pursuant to Federal Rule of Civil Procedure 54(b). The Court expressly finds that in view of the extraordinary circumstances involving this litigation and the corresponding Chapter 11 Case, there is no just reason for delay. Plaintiff, a court-appointed Chapter 11 Trustee is charged with promptly recovering assets for the benefit of individual beneficiaries who have suffered personal injuries and disabilities. Delay is not an option.

Service of this Order other than by CM/ECF is not required.  Local Rule 9013-3(b).