**Exhibit Cover Sheet**

**Party submitting: Michael Goldberg, as Chapter 11 Trustee Ex. #7**

**Admitted: Yes or No (circle one)**

**Debtor: THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC.**

**Case No. 8:24-bk-00676-RCT**

**MICHAEL GOLDBERG, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration, Inc. v. BOSTON FINANCE GROUP, LLC, a Florida limited liability company and LEO J. GOVONI, an individual**

**Adv. Pro. No. 8:24-ap-00139-RCT**

**Nature of Hearing/Docket No.: Show Cause Hearing (Adv. Doc. 112)**

**United States Bankruptcy Court**
**Middle District of Florida**

**Dated: May 2, 2025**

**By:_____________________, Deputy Clerk**

# THE GOVONI TRUST - 2018

THIS IRREVOCABLE TRUST AGREEMENT (this "Trust Agreement") is entered into by **LEO J. GOVONI**, as Trustor, and **LEO J. GOVONI**, as Trustee. The Trustor desires to create an irrevocable trust and the Trustor and Trustee enter into this Trust Agreement specifying the terms of such trust. Therefore, the Trustor transfers and delivers the property described in Schedule A hereto to the Trustee and the Trustee acknowledges receipt of such property and agrees to hold it in trust according to the terms of this Trust Agreement.

## ARTICLE I

## *DECLARATIONS*

1.A. **Name.** This trust shall be known as **THE GOVONI TRUST - 2018.**

1.B. **Family.** Trustor is married to **JANE M. GOVONI**, sometimes hereinafter referred to as Trustor's spouse, and they have two children now living; their names and dates of birth are:

**LEO "LJ" GOVONI**, born [redacted] 1986,
sometimes hereinafter referred to as **LJ GOVONI**

**CAITLIN JANICKI**, born [redacted] 1988

1.C. **Successor Trustees.**

(1) In the event that the Trustee ceases to act for any reason, he shall be succeeded by the Trustor's spouse as the successor Trustee. If the Trustor's spouse fails to qualify or ceases to act, **JONATHAN GOLDEN** shall act as the alternate successor Trustee.

(2) In the event that the Trustee and both of the successor Trustees named above all cease to act for any reason, a majority of the income beneficiaries (as defined in this subparagraph) of the trust at that time shall appoint a successor Trustee by a signed, written notice to the successor Trustee being appointed. Any such successor Trustee shall be a state or federal banking association or other entity located in the United States which is authorized by law to administer trusts. An "income beneficiary" is anyone to whom the Trustee is required to or may distribute income at the time of appointment of the successor Trustee.

(3) No successor Trustee shall be personally liable for any act or omission of any predecessor Trustee. A successor Trustee may accept without examination or review the accounts rendered by and the property delivered from a predecessor Trustee without incurring any liability or responsibility therefor. A successor Trustee shall have all

the right, title, powers and discretion of the Trustee succeeded, without the necessity of any conveyance or transfer.

1.D. **Trust Fund.**

(1) Trustor, and/or any other person, may add to the principal of the trust by deed, will, or otherwise.

(2) Notwithstanding any other provision of this Trust Agreement, in the event that the Trustee intends to sell or otherwise dispose of any property added to the principal of the trust, the Trustee shall give notice of such intended sale or other disposition to the person who transferred such property to the trust and the Trustee shall not sell or otherwise dispose of such property until such person gives to the Trustee confirmation in writing of such person's approval of such sale or other disposition.

1.E. **Definitions.** For any interpretation of this Trust Agreement, the following definitions shall apply:

(1) *Beneficiary.* The term "beneficiary" or "beneficiaries" shall mean any person and/or entity then eligible to receive current income or whose right to receive assets from the trust is currently vested;

(2) Code. Any reference to the "Code" shall refer to the Internal Revenue Code contained in Title 26 of the U.S. Code, as from time to time amended;

(3) *Descendants.* The term "descendants" shall include a person's lineal descendants of all generations;

(4) *Education.* As used in this Trust Agreement, the term "education" or "educational purposes" shall include any course of study or instruction which may, in the Trustee's discretion, be useful in preparing a beneficiary for any vocation consistent with such beneficiary's abilities and interests. Distributions for education may include tuition, fees, books, supplies, living expenses, travel and spending money to the extent that they are reasonable and necessary, again in the Trustee's absolute discretion;

(5) *Incapacity.*

(a) In the case of a question or dispute, incapacitation of a Trustee (whether such Trustee shall be the Trustor or a designated successor) shall be evidenced by written certification of two (2) physicians;

(b) If there is no question or dispute, incapacitation of a Trustee shall be established by the written declaration of only one doctor;

(6) *Issue.* The term "issue" shall refer to lineal descendants of all degrees and shall include adopted persons; provided however, that such term shall refer only to the issue of lawful marriages and illegitimate children only if a parent/child relationship existed

between such child and his or her parent, living or deceased, as determined under Florida law. A child in gestation which is later born alive and survives for thirty (30) days shall be considered as issue in being throughout the period of gestation;

(7) *Legal Representative or Personal Representative.* As used in this Trust Agreement, the term "legal representative" or "personal representative" shall mean a person's guardian, conservator, executor, administrator, trustee, or any other person or entity personally representing a person or the person's estate;

(8) *Majority.* The term "majority" shall mean more than one-half (1/2), and, in the event of a deadlock, shall be determined in accordance with the Florida Trust Code;

(9) *Per Stirpes.* Whenever a distribution is to be made "per stirpes", the assets are to be divided into as many shares as there are then-living children and deceased children who left living descendants. Each living child shall receive one share and each deceased child's share shall be divided among such deceased child's then-living descendants in the same manner;

(10) *Principal and Income.* The determination by the Trustee in all matters as to what shall constitute principal of the trust, gross income therefrom and distributable net income under the terms of the trust shall be governed by the provisions of the Principal and Income Act of the State of Florida, except as to any of such matters as may otherwise be provided for in this instrument. In the event and to the extent that any of such matters relating to what constitutes principal or income of the trust and in the allocation of receipts and disbursements between these accounts is not provided for either in this Trust Agreement or in such Principal and Income Act, the Trustee has full power and authority to determine such matters;

(11) *Pronouns and Gender.* In this Trust Agreement, the feminine, masculine or neuter gender, and the singular or plural number, shall be deemed to include the others whenever the context so indicates;

(12) *Qualified Beneficiary.* The term "Qualified Beneficiary" shall mean any person and/or entity then eligible to receive current income or whose right to receive assets from the trust is currently vested as well as those who could receive distributions after termination of the interests of current beneficiaries;

(13) *Request in Writing.* When the Trustor is acting as the Trustee, the requirement of a writing to be signed by the undersigned as a Trustor and/or a beneficiary and delivered to the undersigned as the Trustee shall be waived; and

(14) *Trustee.* Any reference to "Trustee" shall be deemed to refer to whichever individual (including the Trustor) or corporation shall then be acting as the Trustee.

1.F. **Governing Law.** This Trust Agreement is a Florida contract and creates a Florida trust; all of the terms and provisions hereof shall be interpreted according to the Florida Trust Code, except as shall be specifically modified herein. Nevertheless, the Trustee may change the situs of administration of the trust from one jurisdiction to another, thereby allowing this trust to be

regulated and governed by the laws of another jurisdiction. Such action may be taken for any purpose the Trustee deems appropriate including minimization of taxes.

1.G. **Restrictions.** The interest of any beneficiary (whether entitled to current income or possessing only a future interest) in either the income or principal of the trust fund or any part of it shall not be alienated or in any other manner assigned or transferred by such beneficiary; and such interest shall be exempt from execution, attachment and other legal process which may be instituted by or on behalf of any creditor or assignee of such beneficiary; nor shall any part of such interest be liable for the debts or obligations (including spousal and/or child support, except as required under Florida law) of any such beneficiary. This paragraph is intended to impose a "Spendthrift Trust" on all interests held for any beneficiary.

1.H. **Maximum Duration of Trusts.** Regardless of any other provision herein, the Maximum Duration for Trusts is the longest period that property may be held in trust under this Trust Agreement under the applicable rules of the State of Florida governing perpetuities, vesting, accumulations, the suspension of alienation and the like (including any applicable period in gross such as twenty-one (21) years or ninety (90) years). If, under those rules, the Maximum Duration for Trusts shall be determined (or alternatively determined) with reference to the death of the last survivor of a group of individuals alive upon the execution of this Trust Agreement, or at such other time that the application of such rules limiting the maximum duration of trusts is deemed to begin, those individuals shall consist of the Trustor, the Trustor's spouse and their descendants alive at the time of execution of this Trust Agreement. Any trust created hereunder must end immediately prior to such maximum duration and, thereupon, the Trustee shall pay over the principal, free from such trust, to the person or persons then entitled to receive the net income.

1.I. **Presumptions.** Any beneficiary who shall not be living thirty days after the death of any person shall be deemed not to have survived such person.

1.J. **Special Distributions**. If any income and/or principal of any trust hereunder ever vests outright under the provisions of this Trust Agreement in a person not yet twenty-one years of age, a person who suffers from substance abuse, or a person who the Trustee determines is incompetent or whose financial circumstances is such that failure to delay distributions will actually reduce the trust benefits to such person, then the Trustee, in the Trustee's discretion and without supervision of any court, shall hold or distribute the distribution for such person (hereinafter "the beneficiary") in accordance with the following provisions:

(1) *Under Age Twenty-One*. If a beneficiary is under the age of twenty-one and no other provision of this trust specifically addresses this possibility, the Trustee may either open a custodial account for the benefit of said beneficiary under the Uniform Transfer to Minors Act with a suitable person as the custodian or the Trustee may hold such beneficiary's distribution in a separate trust for such beneficiary, exercising as the Trustee of such trust all the administrative powers conferred in this Trust Agreement, on the following terms and conditions:

(a) The Trustee may accumulate or distribute to or for such beneficiary such amount or amounts of income and/or principal of the trust as the Trustee

determines from time to time during the term of the trust to be appropriate. The Trustee may make such distributions to or for the benefit of such beneficiary: (i) directly to the beneficiary; (ii) on behalf of the beneficiary for the beneficiary's exclusive benefit; (iii) to any account in a bank, credit union, mutual fund and/or brokerage firm either in the name of such beneficiary or in a custodial account for the benefit of said beneficiary under the Uniform Transfer to Minors Act with a suitable person as the custodian; (iv) in any form of an annuity; and, (v) to such beneficiary's guardian if one has been appointed by the Court. The receipt for distributions by any such person shall fully discharge the Trustee. In determining whether to make distributions, the Trustee may consider other resources of the beneficiary, trust resources and the future needs of the beneficiary during the term of the trust.

(b) This separate trust shall terminate and vest absolutely when the beneficiary attains age twenty-one, dies, or when the trust assets are exhausted by discretionary distributions. At such termination, the Trustee shall distribute the trust then on hand to the beneficiary or to the beneficiary's estate if the trust terminated at the beneficiary's death.

(2) *Substance Abuse Dependence.* If the Trustee reasonably believes that a beneficiary of any trust created under this Agreement is a person who routinely or frequently uses or consumes any illegal drugs or other illegal chemical substance so as to be physically or psychologically dependent upon that drug or substance; or, is a person who is clinically dependent upon the use or consumption of alcohol or any other legal drug or chemical substance that is not prescribed by a board certified medical doctor or psychiatrist in a current program of treatment supervised by that doctor or psychiatrist; and, if the Trustee reasonably believes that, as a result of the use or consumption, the beneficiary is incapable of caring for himself or herself or is likely to dissipate the beneficiary's financial resources, the Trustee shall follow the procedures set forth below.

(a) The Trustee will request the beneficiary to submit to one or more examinations (both physical and psychological) determined to be appropriate by a board certified medical doctor or psychiatrist selected by the Trustee. The Trustee will request the beneficiary to consent to full disclosure by the examining doctor or facility to the Trustee of the results of all the examinations. The Trustee will maintain strict confidentiality of those results and will not disclose those results to any person other than the beneficiary without the beneficiary's written permission. The Trustee may totally or partially suspend all distributions otherwise required or permitted to be made to that beneficiary until the beneficiary consents to the examination and disclosure to the Trustee.

(b) If, in the examining doctor's or psychiatrist's opinion, the examination indicates current or recent use of a drug or substance as described above, the beneficiary will consult with the examining doctor or psychiatrist to

determine an appropriate method of treatment for the beneficiary. Treatment may include counseling or treatment on an in-patient basis in a rehabilitation facility. If the beneficiary consents to the treatment, the Trustee will pay the costs of treatment directly to the provider of those services from the income or principal otherwise authorized or required to be distributed to the beneficiary.

(c) If the examination indicates current or recent use of a drug or substance as described above, all mandatory distributions and all withdrawal rights from the trust with respect to the beneficiary during the beneficiary's lifetime (including distributions upon termination of the trust for reasons other than the death of the beneficiary) will be suspended until in the case of use or consumption of an illegal drug or illegal substance, examinations indicate no such use; and, in all cases of dependence, until the Trustee, in the Trustee's judgment, determines that the beneficiary is fully capable of caring for himself or herself and is no longer likely to dissipate his or her financial resources.

(d) While mandatory distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary according to the provisions of the trust providing for discretionary distributions in the Trustee's discretion and those provisions of the trust relating to distributions for the beneficiary's health, education, maintenance and support.

(e) When mandatory distributions to and withdrawals by the beneficiary are resumed, the remaining balance, if any, of the mandatory distributions that were suspended may be distributed to the beneficiary at that time and the balance of any rights of withdrawal by the beneficiary shall be immediately exercisable by the beneficiary. If the beneficiary dies before mandatory distributions or rights of withdrawal are resumed, the remaining balance of such beneficiary's share shall be distributed in the manner set forth for the distribution of such beneficiary's share in the event such beneficiary did not survive the Trustor and the Trustor's spouse.

(f) It is not the Trustor's intent to make the Trustee (or any doctor or psychiatrist retained by the Trustee) responsible or liable to anyone for a beneficiary's actions or welfare. The Trustee has no duty to inquire whether a beneficiary uses drugs or other substances. The Trustee (and any doctor or psychiatrist retained by the Trustee) will be indemnified from the trust for any liability in exercising its judgment and authority under this Agreement, including any failure to request a beneficiary to submit to medical examination and including a decision to distribute suspended amounts to a beneficiary.

(3) *Special Needs Trust.* If the Trustee reasonably believes that a beneficiary of any trust created under this Agreement is a person who is incompetent, or, is a person whose financial circumstances are such that failure to delay distributions will actually reduce the trust benefits to such person, the Trustee shall hold the distribution for such beneficiary in further trust hereunder (hereinafter referred to as the "Special Trust") on the following terms and conditions:

(a) The primary purpose of this trust is to provide a supplemental and emergency fund to supplement any public benefits available to such beneficiary during his or her lifetime. It is the Trustor's intent that the assets of the Special Trust shall, to the fullest extent permitted by law, be free from assignment or collection for the satisfaction of the claims of any creditors or government agencies. If this trust were to be invaded by creditors or subject to any liens or encumbrances, or if the terms of this trust were to be applied so as to cause such beneficiary's eligibility for public benefits to be terminated, it is likely that the trust assets would be depleted before his or her death and the purpose of this trust could not then be fulfilled.

(b) Until such beneficiary is, in the Trustee's judgment, no longer incapacitated, or such beneficiary's financial situation has changed significantly, the Trustee shall pay over to or for the benefit of such beneficiary as much of the net income and as much of the principal of the Special Trust, up to the whole thereof, as the Trustee, in the Trustee's sole discretion, from time to time deems necessary or advisable for the satisfaction of such beneficiary's special needs. For this purpose, "special needs" refers to the requisites for maintaining such beneficiary's good health, comfort, safety, and welfare when, in the discretion of the Trustee, those requisites are not being provided for by any county, state, federal, or other governmental agency, or by any person or persons with a legal obligation to support such beneficiary. "Special needs" shall include, but not be limited to, medical and dental care, special equipment, programs of training, education, rehabilitation, travel needs and recreation not provided for or reimbursed by public benefits. The Trustee shall consult with any guardian, conservator, custodian, or other person who cares for such beneficiary regarding his or her special needs. Expenditures made by the Trustee under this paragraph may include reasonable compensation to any person who provides for the special needs of such beneficiary as provided in this paragraph. Any expenditure permitted by this paragraph may be made either with or without prior court order.

(c) It is the Trustor's intent that any payments or distributions from this trust to or for the benefit of such beneficiary shall supplement (but not replace) any public benefits or other private resources available to him or her. The Trustee may, in the exercise of the Trustee's discretion, seek as necessary all available public benefits for such beneficiary's benefit, and shall

segregate any public benefits received by the Trustee for that purpose in a separate trust or account and administer the same for the benefit of such beneficiary. All public benefits received by the Trustee for that purpose, together with any other resources available to such beneficiary, shall be taken into account by the Trustee in making payments or distributions to or for the benefit of such beneficiary. The Trustee shall regularly consult with such beneficiary and any persons or entities providing care or assistance to such beneficiary for the purpose of determining such beneficiary's needs and resources. The Trustee shall not exercise the Trustee's discretion to make any payments or distributions to or for the benefit of such beneficiary if the Trustee determines, in the Trustee's sole discretion, that public benefits, private resources, or a combination of public benefits and private resources are reasonably available to such beneficiary to satisfy those needs.

(d) No part of the income or principal of the trust shall be used to replace or supplant public benefits of any county or any state, federal, or other governmental agency that has a legal responsibility to serve persons with disabilities or conditions that are the same as or similar to those of such beneficiary. For purposes of determining such beneficiary's eligibility for any public benefits, no part of the principal or undistributed income of the Trust Estate shall be considered available to him or her, and he or she shall have no right to compel the Trustee to release principal or income to him or her or for his or her benefit or otherwise to have any access to any of the trust assets. In the event that the Trustee is requested to release principal or income of the trust to or on behalf of such beneficiary to pay for any equipment, medication, services, or any other needs that any public benefits would be authorized to provide for were it not for the existence of the trust, or in the event that the Trustee is requested to petition any court or any administrative agency for authorization to release principal or income for any purpose of that kind, the Trustee is authorized to deny the request and take whatever administrative or judicial steps may be necessary to continue the eligibility of such beneficiary for all available public benefits, including obtaining instructions from a court of competent jurisdiction that the trust principal is not available to such beneficiary for purposes of determining his or her eligibility for any public benefits. Any expenses of the Trustees in this regard, including reasonable attorney's fees, shall be a proper charge to the Special Trust.

(e) If any payment or distribution from the trust to or for the benefit of such beneficiary would have the effect of disqualifying him or her for any public benefits, or if all income of the Special Trust cannot be completely utilized for his or her special needs, the Trustee shall accumulate the trust income annually and add it to principal.

(f) The discretion of the Trustee shall not be subject to review by such beneficiary, his or her creditors and/or any governmental agency. Notwithstanding any other provision of this instrument, if the existence of the Special Trust, or any change in any law, regulation, or rule relating to the Special Trust or the administration of the Special Trust for the benefit of such beneficiary, should at any time have the effect of disqualifying him or her for any public benefits, or if such beneficiary, his or her creditors and/or any governmental agency shall ever bring any court action to force or require the Trustee to distribute to or for the benefit of such beneficiary a greater amount of income and/or principal than the Trustee, in the Trustee's absolute discretion, has determined to be appropriate, the Trustee is authorized (but not required) to terminate the trust and distribute the trust principal and income as provided in subparagraph 1.J.(3)(g); Trustor requests that any person who takes any part of the trust assets as the result of this termination power, conserve and manage such property for the benefit of such beneficiary during his or her lifetime to insure that he or she receives sufficient funds for his or her living needs when public benefits are unavailable or insufficient to satisfy those needs. This request is precatory, however, and is not mandatory.

(g) At such beneficiary's death, the Trustee shall distribute the Special Trust, as then constituted, in the manner hereinafter set forth for the distribution of such beneficiary's share in the event such beneficiary did not survive the Trustor and the Trustor's spouse.

(4) *Tax Savings Provisions.* Notwithstanding the provisions of the preceding subparagraphs or any other provision of this Agreement, the Trustee shall not suspend any mandatory distributions required for a trust to qualify, in whole or in part, for any Federal or state marital deduction or charitable deduction. Finally, nothing herein shall prevent a distribution mandated by the provisions hereof relating to the Maximum Duration of Trusts.

1.K. **Severability**. If any provision of this Trust Agreement is invalid, that provision shall be disregarded, and the remainder of this Trust Agreement shall be construed as if the invalid provision had not been included.

1.L. **Uneconomical Administration.** No other provision of this trust to the contrary, if at any time a share or trust being administered for any income beneficiary or group of income beneficiaries has such fair market value as to make the continued administration of the share or trust uneconomical as determined by the Trustee in the Trustee's sole discretion, the Trustee may pay the entire balance of such share or trust to the person or persons then entitled to the income therefrom, in proportion to their interests therein.

# ARTICLE II

## *TRUSTEESHIP*

2.A. **Resignation.** Any Trustee may resign at any time by giving written notice to the Trustor, if living, and thereafter to the other Trustees, if any, and, if not, to all the beneficiaries. Any such notice shall become effective as agreed by the Trustor or the majority of the beneficiaries, but no later than thirty days after such written notice. Notwithstanding the foregoing, the Trustee may, at the expense of any trust created hereunder, secure the appointment of a successor Trustee of such trust by a court of competent jurisdiction.

2.B. **Liability.** No successor Trustee shall be under any obligation to examine the accounts of any prior Trustee, and a successor Trustee shall be exonerated from all liability arising from any prior Trustee's acts or negligence. It is the Trustor's intention that any Trustee serving hereunder shall be accountable only from the date such Trustee actually receives the assets of the trust.

2.C. **Bond.** No bond shall be required of any person or institution named in this Trust Agreement as the Trustee.

2.D. **Compensation.** A Trustee shall be entitled to receive, out of the income and principal of the trust fund, compensation for services hereunder to be determined, if a corporate Trustee, by the application of the current rates then charged by the Trustee for trusts of a similar size and character, and, if the Trustee shall be an individual, such compensation shall be a reasonable fee based on the time and effort of the Trustee. The Trustee shall also be entitled to reimbursement for all travel and other necessary expenses incurred in the discharge of the Trustee's duties. The Trustee may impose any Trustee fees or other expenses of the trust against the principal or income of the trust fund without any duty to seek reimbursement from the interest not charged.

2.E. **Reports.** The Trustee shall render an annual accounting to each current income beneficiary, except as such reporting shall be waived by such beneficiary. If beneficiaries entitled to an accounting are minors, their accounting shall be delivered to their parents or guardian. If beneficiaries entitled to an accounting are incapacitated, their accounting shall be delivered to their legal representative. Unless the accounting is objected to in writing within one hundred and eighty days after mailing to the persons to whom the accounting is to be rendered, the account shall be deemed final and conclusive in respect to all transactions disclosed in the accounting. The accounting shall be binding on all persons interested in the trust, including beneficiaries who are not known or who are not yet born. The records of the Trustee shall be open at all reasonable times to such inspections. The Trustee shall not be required to make any reports or accountings to the courts; however, nothing herein stated shall be deemed to restrict the Trustee from seeking judicial approval of the Trustee's accounts.

2.F. **Payments to Beneficiaries.**

(1) Any income and/or principal of any trust hereunder to which any beneficiary may be entitled may, without regard to any order or assignment purporting to transfer the same to any other person, be paid or distributed by the Trustee, in the Trustee's sole discretion, into the hands of such beneficiary, or to the guardian of the person of such

beneficiary, or be mailed to such beneficiary's last known address, or deposited to the account of such beneficiary in a bank or trust company of good standing, or be applied for the benefit of such beneficiary and his or her dependents directly by the Trustee; and the receipt for any payment or distribution or evidence of the application of any income or principal made in conformity with the foregoing shall discharge the Trustee from any further liability therefor; and,

(2) Unless the Trustee shall have received actual written notice of the occurrence of an event affecting the beneficial interests of this Trust Agreement, the Trustee shall not be liable to any beneficiary of this Trust Agreement for distribution made as though the event had not occurred.

2.G. **Division of Trust Fund.** There shall be no requirement for the physical segregation or division of any trusts created hereunder except as segregation or division may be required by the termination of any of the trusts, but the Trustee shall keep separate accounts for the different undivided interests.

2.H. **Trustee Authority.**

(1) Any Trustee may appoint an "Attorney-in-Fact" and delegate to such agent the exercise of all or any of the powers conferred upon a Trustee and may at pleasure revoke such appointment. Any such appointment shall be made by a written, acknowledged instrument.

(2) No purchaser from or other person dealing with the Trustee shall be responsible for the application of any purchase money or thing of value paid or delivered to the Trustee, and the receipt by the Trustee shall be a full discharge; and no purchaser or other person dealing with the Trustee and no issuer, or transfer agent, or other agent of any issuer of any securities to which any dealings with the Trustee should relate, shall be under any obligation to ascertain or inquire into the power of the Trustee to purchase, sell, exchange, transfer, mortgage, pledge, lease, distribute or otherwise in any manner dispose of or deal with any security or any other property held by the Trustee or comprised in the trust fund.

(3) Prior to delivering the trust fund to a successor Trustee or to making any partial or complete distribution of principal hereunder (other than a distribution that is made in the exercise of the Trustee's discretion and does not terminate the trust), the Trustee may require an approval of the Trustee's accounts and a release and discharge from all beneficiaries having an interest in the distribution. If any beneficiary or beneficiaries shall refuse to provide a requested release and discharge, the Trustee may require court settlement of such accounts; all of the Trustee's fees and expenses (including attorneys' fees) attributable to court approval of such accounts shall be paid by the trust involved to the extent that the accounts are approved.

(4) The certification of a Trustee, Special Trustee and/or Attorney-in-Fact that such Trustee and/or agent is acting according to the terms of this Trust Agreement shall fully protect all persons dealing with such Trustee and/or agent.

(5) In the event any successor Trustee hereunder is precluded by the laws of any state from acting as a Trustee in such state, such successor Trustee may appoint a "Special Trustee" qualified to act in such state and may delegate to such Special Trustee the exercise of all or any of the powers conferred upon a Trustee hereunder. Such successor Trustee may at its pleasure revoke such appointment and/or delegation. A Special Trustee shall in no way be responsible for the matters not delegated to it. Any appointment of a Special Trustee and the delegation of powers to such Special Trustee shall be made by a written, acknowledged instrument.

2.I. **Retirement Accounts.** To the extent any trust hereunder is the beneficiary of a Retirement Account (as hereinafter defined) the Trustee shall draw the benefits from the Retirement Account in amounts sufficient to meet the minimum distribution requirements of §401(a)(9) of the Code and the regulations thereunder (the "Required Minimum Distribution"). Notwithstanding any provision of the trust to the contrary, the Required Minimum Distribution shall be paid to or applied for the benefit of the person or persons then entitled to receive or have the benefit of the income from such trust, or if there is more than one income beneficiary, the Trustee shall make such distribution to such income beneficiaries in the proportion in which they are beneficiaries or if no proportion is designated in equal shares to such beneficiaries.

"Retirement Account" means amounts held in or payable pursuant to a plan (of whatever type) qualified under Code §401, or an individual retirement arrangement under Code §408, or a Roth IRA under Code §408A, or a tax-sheltered annuity under Code §403 or any other benefit subject to the distribution rules of Code §401(a)(9), or the corresponding provisions of any subsequent federal tax law. It is the Trustor's intention that this trust qualify as a "conduit trust" under Code §401(a)(9) so that the trust's beneficiaries shall be considered designated beneficiaries for purposes of the minimum distribution rules, and that distributions may therefore be taken over the trust beneficiary's life expectancy (or the life expectancy of the oldest trust beneficiary).

The Retirement Accounts shall not be subject to the claims of any creditor of the Trustor's estate, they shall not be used for the satisfaction of any distributions to a non "designated beneficiary" (as that term is defined in Treas. Reg. §1.401(a)(9)-4, Q&A 1) and they shall not be applied to the payment of the debts, taxes of the Trustor or other claims or charges against the Trustor's estate unless and until all other assets available for such purposes have been exhausted, and even then only to the minimum extent that would be required under applicable law in the absence of any specific provision on this subject in this Trust, and, under no circumstances, shall they be used for such purpose after September 30 of the year following the death of the owner of the Account.

2.J. **Release of Powers.** Each Trustee shall have the power to release or to restrict the scope of any power that such Trustee may hold in connection with any trust created under this Trust Agreement, whether said power is expressly granted in this Trust Agreement or implied by law.

The Trustee shall exercise this release in a written instrument specifying the powers to be released or restricted and the nature of any such restriction. Any released power shall pass to and be exercised by the other then-acting Trustees.

# ARTICLE III

## *TRUSTEE'S POWERS*

Subject to the provisions and limitations set forth expressly herein, the Trustee shall have, in general, the power to do and perform any and all necessary acts and things in relation to the trust fund in the same manner and to the same extent as an individual might or could do with respect to the Trustee's own property. No enumeration of specific powers made herein shall be construed as a limitation upon the foregoing general powers, nor shall any of the powers conferred herein upon the Trustee be exhausted by the use thereof, but each shall be continuing. In addition to the above, the Trustee shall have all of the powers authorized by §736.0816 of the Florida Trust Code (as though such powers were set forth herein) and, in addition, the Trustee is specifically authorized and empowered to exercise those powers hereinafter set forth in this Article III. Notwithstanding any provision of this Article III or any other provision of this Trust Agreement, the powers of the Trustee shall be subject to the limitation provided for in subparagraph 1.D.(2).

3.A. **Agreements**. To carry out the terms of any valid agreements which the Trustor may have entered into during the Trustor's lifetime regarding property owned by the trust;

3.B. **Asset Title**. To hold securities or other property in the Trustee's name as trustee, or in "street name", or in bearer form;

3.C. **Bank Accounts**. To open and maintain bank accounts in the name of the Trustee with any bank, trust company or savings and loan association authorized and doing business in any State of the United States of America. If more than one Trustee shall be acting, the Trustees may designate one or more of them to conduct banking activities and to make deposits, withdrawals and endorsements upon giving written notice of such designation to the bank, trust company, or savings and loan association in question; and such bank, trust company or savings and loan association shall be protected in relying upon such designation;

3.D. **Contracts**. To enter into contracts which are reasonably incident to the administration of the trust;

3.E. **Deal with Fiduciaries**. To buy from, sell to, and generally deal with the Trustee individually and as a fiduciary;

3.F. **Depreciation Reserve**. The Trustee shall not be required to establish any reserve for depreciation or to make any charge for depreciation against any portion of the income of the trust fund;

3.G. **Divisions and Distributions**. In any case in which the Trustee is required to divide any trust assets into shares for the purpose of distribution (or otherwise), such division may be in

kind, including undivided interests in any real property, or partly in kind and partly in money. For such purposes, the Trustee may make such sales of trust assets as the Trustee may deem necessary on such terms and conditions as the Trustee shall deem fit, and to determine the relative value of the securities or other assets so allotted or distributed; the Trustee's determination of values and of the property for such distribution shall be conclusive. The decision of the Trustee in distributing assets in reliance on this paragraph shall be binding, and shall not be subject to challenge by any beneficiary;

3.H. **Indebtedness**. With respect to any indebtedness owed to the trust, secured or unsecured:

(1) To continue the same upon and after maturity, with or without renewal or extension, upon such terms as the Trustee deems advisable; and,

(2) To foreclose any security for such indebtedness, to purchase any property securing such indebtedness and to acquire any property by conveyance from the debtor in lieu of foreclosure;

3.I. **Invest and Reinvest**. To invest, reinvest, change investments and keep the trust fund invested in any kind of property, real, personal, or mixed, including by way of illustration but not limitation, oil and gas royalties and interests; precious metals; common and preferred stocks of any corporation; bonds; notes; debentures; trust deeds; mutual funds or common trust funds, including such funds administered by a Trustee; interests in partnerships, whether limited or general and as a limited or general partner; intending hereby to authorize the Trustee to act in such manner as the Trustee shall believe to be in the best interests of the trust fund and the beneficiaries thereof. The Trustee is specifically vested with the power and authority to open, operate and maintain securities brokerage accounts wherein any securities may be bought and/or sold on margin, and to hypothecate, borrow upon, purchase and/or sell existing securities in such account as the Trustee shall deem appropriate or useful and, further, while the Trustor is acting as Trustee, such account(s) may deal in commodities, options, futures contracts, hedges, puts, calls and/or straddles (whether or not covered by like securities held in the brokerage account). These powers shall be construed as expanding the standards of the prudent investor rule as set forth in the Uniform Prudent Investor Act;

3.J. **Loans**. To borrow for the trust fund from any person, corporation or other entity, including the Trustee, at such rates and upon such terms and conditions as the Trustee shall deem advisable, and to pledge as security any of the assets of the trust fund for the benefit of which such loan is made; to execute, acknowledge and deliver mortgages, deeds of trust or other documents incidental thereto; to lend money upon such terms and such conditions as the Trustee deems to be in the best interests of the trust fund and the beneficiaries thereof, including the lending of money from one trust to any other trust created hereunder and to borrow on behalf of one trust from any other trust created hereunder, and further including the right to lend money to the probate estate (if any) of the Trustor, but in such event such loans shall be adequately secured and shall bear the then prevailing rate of interest for loans to such persons or entities for the purposes contemplated;

3.K. **Manage and Control.** To manage, control, sell at public or private sale, convey, exchange, partition, divide, subdivide, improve, repair; to grant options and to sell upon deferred payments; to pledge or encumber by mortgage or deed of trust or any other form of hypothecation; to otherwise dispose of the whole or any part of the trust fund on such terms and for such property or cash or credit, or any combination thereof, as the Trustee may deem best; to lease for terms within or extending beyond the duration of the trust fund for any purposes; to create restrictions, easements, to compromise, arbitrate, or otherwise adjust claims in favor of or against the trust fund; to institute, compromise and defend actions and proceedings with respect to the trust fund; and to secure such insurance, at the expense of the trust fund, as the Trustee may deem advisable;

3.L. **Professional Assistance.** To employ and compensate agents, investment managers, attorneys, accountants, and other professionals deemed by the Trustee to be reasonably necessary for the administration of the trust fund, and the Trustee shall not be liable for any losses occasioned by the good faith employment of such professionals, nor shall the Trustee be liable for any losses occasioned by any actions taken by the Trustee in good faith reliance upon any advice or recommendation thereof; to pay all costs, taxes, and charges in connection with the administration of the trust fund; and to be reimbursed for all reasonable expenses, including attorneys' fees, incurred in the management and protection of the trust fund and to pay such professionals a reasonable fee without court approval thereof. Any such payment by the Trustee of such fees shall be out of principal or income, as the Trustee may elect, or partially out of each. The discretion of the Trustee to pay these expenses from income or principal, or partially from each, should be subject to the Trustee's fiduciary obligation to treat income beneficiaries and remaindermen equitably;

3.M. **Purchase.** To purchase property at its fair market value as determined by the Trustee from the probate estate (if any) of the Trustor;

3.N. **Receive Assets.** To receive, take possession of, sue for, recover and preserve the assets of the trust fund, both real and personal, coming to its attention or knowledge, and the rents, issues and profits arising from such assets;

3.O. **Securities.** With respect to any corporation or partnership, the stocks, bonds or interests in which may form a part of the trust estate, to act in the same manner and to exercise any and all powers which an individual could exercise as the legal owner of any such corporate stock or partnership interest, including the right to vote in person or in proxy, or to surrender, exchange or substitute stocks, bonds, or other securities as an incident to the merger, consolidation, re-capitalization or dissolution of any of such corporation, or to exercise any option or privilege which may be conferred upon the holders of such stocks, bonds, or other securities, either for the exchange or conversion of the same into other securities or for the purchase of additional securities, and to make any and all payments which may be required in connection therewith;

3.P. **Retention of Trust Property.** To retain, without liability for loss or depreciation resulting from such retention, any assets received by the Trustee or any property that may from time to time be added to the trust fund or any trust created hereunder; or any property in which the funds of any trust may from time to time be invested, for such time as the Trustee shall deem

best, even though such property may represent a large percentage of the total property of the trust fund or it would otherwise be considered a speculative or inappropriate investment;

3.Q. **Tax Consequences**. To prepare and file returns and arrange for payment with respect to all local, state, federal and foreign taxes incident to this Trust Agreement; to take any action and to make any election, in the Trustee's discretion, to minimize the tax liabilities of this Trust Agreement and its beneficiaries; and

3.R. **General Powers**. To do any and all other acts necessary, proper or desirable for the benefit of the trust fund and its beneficiaries, and to effectuate the powers conferred upon the Trustee hereunder.

## ARTICLE IV

### *REVOCATION AND AMENDMENT*

This Trust Agreement and the trust created hereby may not be amended or revoked.

## ARTICLE V

### *DISPOSITION OF TRUST FUND*

5.A. **Trustee's Basic Duties**. During the term of the trust, the Trustee shall hold, manage, invest and reinvest the trust fund, collect the income and profits from it, pay the necessary expenses of trust administration, and distribute the net income and principal as provided in this ARTICLE V.

5.B. **Administration of the Trust Fund**. During the term of the trust, the Trustee shall pay to, or apply for the benefit of, the beneficiaries of the trust, such amount, or all, of the income and principal of the trust fund as the Trustee deems, in the sole and absolute discretion of the Trustee, as is necessary or desirable for such beneficiaries' health, support, comfort, enjoyment, welfare and maintenance. When paid, or applied for the benefit of, such beneficiaries, such amounts of income and/or principal (the "Distribution Amounts") shall be allocated among the beneficiaries in accordance with paragraph 5.C. below.

5.C. **Allocation of Distribution Amounts**. All Distribution Amounts to be distributed pursuant to paragraph 5..B. shall be distributed in the percentages specified in this paragraph 5.C.

(1) 50% of the Distribution Amount shall be distributed as follows:

(a) 100% to the Trustor if he is then living.

(b) If the Trustor is not then living, 100% to the Trustor's spouse if she is then living.

(c) If both the Trustor and the Trustor's spouse are not then living, 100% to the then living descendants of the Trustor, per stirpes.

(d) If both the Trustor and the Trustor's spouse are not then living and have no then living descendants, 100% to The Center for Special Needs Trust Administration, Inc., a Florida not for profit corporation, or, if such entity or a successor thereto is no longer in existence, to a not for profit organization determined by the Trustee to have a purpose close to that of The Center for Special Needs Trust Administration, Inc.

(2) 50% of the Distribution Amount shall be distributed as follows:

(a) 100% to **LJ GOVONI** if he is then living.

(b) If **LJ GOVONI** is not then living, 100% to the then living descendants of **LJ GOVONI**, per stirpes.

(c) If **LJ GOVONI** is not then living and has no then living descendants, the portion of the Distribution Amount that would have been distributed in accordance with this subparagraph 5.C.(2) shall be distributed in accordance with the provisions of subparagraph 5.C.(1).

**IN WITNESS WHEREOF**, the Trustor executes this Trust Agreement on this 21 day of February, 2018 in Pinellas County, Florida.

______________________________
**LEO J. GOVONI**, Trustor

I hereby acknowledge receipt of the trust fund, accept the terms of THE GOVONI TRUST - 2018, and covenant that I will execute the trust with all due fidelity.

______________________________
**LEO J. GOVONI**, Trustee

On the date last above written, LEO J. GOVONI declared to us, the undersigned, that the foregoing instrument was his and requested us to act as witnesses to it. To the best of our knowledge, LEO J. GOVONI was of legal age, of sound mind, and under no constraint or undue influence. LEO J. GOVONI thereupon signed this instrument as Trustor and Trustee in our presence, all of us being present at the same time. We now, at his request, in his presence and in the presence of each other, subscribe our names as witnesses.

[signature]
Printed Name: Brianna Frazee

2400 Burlington Ave N
[street address]

St. Petersburg, FL 33713
[city, state]

[signature]
Printed Name: KAREN CECIL

4651 1ST ST NE #309
[street address]

ST. PETERSBURG, FL 33703
[city, state]

# AFFIDAVIT

STATE OF FLORIDA, COUNTY OF PINELLAS, ss.

IN WITNESS WHEREOF, I, LEO J. GOVONI, the Trustor and the Trustee, have signed my name to this instrument on this 21 day of February, 2018, and being duly sworn, do hereby declare to the undersigned authority and the undersigned witnesses that I signed and executed this instrument, that I signed it willingly (or willingly directed another to sign), that I executed it as my free and voluntary act for the purposes therein expressed, and that I am of legal age, of sound mind, and under no constraint or undue influence.

[signature]
**LEO J. GOVONI**

We, Brianna Frazee and KAREN CECIL the witnesses, sign our names to this instrument, and, being duly sworn, do hereby declare to the undersigned authority that LEO J. GOVONI, the Trustor and the Trustee, signed and executed this instrument and that the he signed it willingly (or willingly directed another to sign), and that each of us, in the presence and hearing of the Trustor and the Trustee, hereby signs this instrument as witness to his signing, and that to the best of our knowledge he is of legal age, of sound mind, and under no constraint or undue influence.

Printed Name: Brianna Frazee

Printed Name: KAREN CECIL

The foregoing instrument was acknowledged, subscribed and sworn to before me by the Trustor and Trustee, LEO J. GOVONI, who is personally known to me or who has produced __________ as photo identification, and sworn to and subscribed before me by the witnesses, Brianna Frazee, who is personally known to me or who has produced __________ as photo identification, and Karen Cecil, who is personally known to me or who has produced __________ as photo identification, on this 21st day of February, 2018.

LEE CHANG
MY COMMISSION EXPIRES JUN 12, 2021
#GG114022
Bonded through 1st State Insurance
NOTARY PUBLIC, STATE OF FLORIDA

**NOTARY PUBLIC – STATE OF FLORIDA**

**THE GOVONI TRUST – 2018**

**SCHEDULE A**

Cash in the principal amount of Ten Dollars (S10.00)