ORDERED.

Dated: June 12, 2025

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br>The Center for Special Needs Trust Administration,<br>    Debtor.<br>_____ | Case No. 8:24-bk-00676-RCT<br><br>Chapter 11 |
| Michael Goldberg, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration,<br>    Plaintiff,<br>v.<br><br>Boston Finance Group, LLC and Leo J. Govoni,<br>    Defendants.<br>_____/ | Adv. Pro. 8:24-ap-00139-RCT |

**FINAL ORDER OF CONTEMPT**

On January 14, 2025, Plaintiff, Michael Goldberg, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration, obtained a judgment for $120,324,391.07 against Boston Finance Group and Leo J. Govoni ("Judgment").[1]  Plaintiff's efforts are now focused on executing on the Judgement, and, as a preliminary matter, he seeks documents in aid of execution.  Unfortunately, obtaining even basic documents in aid of execution has been a difficult task.

---

[1] Docs. 47, 51, 52.

On June 12, 2025, this Court held a final hearing regarding this Court's Order to Show Cause directed at Boston Finance Group, LLC ("BFG") and Leo J. Govoni.[2] After a prior hearing held on May 2, 2025, this Court issued an order finding BFG and Govoni in contempt ("Initial Contempt Order).[3] In the Initial Contempt Order, this Court found that Plaintiff had established the following by clear and convincing evidence—the Agreed Order,[4] the Compliance Order,[5] and the Preliminary OTSC[6] are valid discovery orders that Govoni and BFG had knowledge of, and despite their knowledge, they willfully disobeyed the orders. Additionally, the Court found Govoni, individually and as the principal of BFG and of the sixteen Alter Ego Entities that he had administratively dissolved, to be in contempt of this Court's preliminary injunction that barred Govoni and the Alter Ego Entities from dissipating assets purchased with estate funds.

As a result of these findings, the Court ordered that starting May 3, 2025, Govoni would be assessed a sanction of $5,000 per day until the documents directed to be produced under the Agreed Order and Compliance Order were produced. In addition, the Court assessed, as a sanction: (1) all the attorneys' fees and costs incurred by Plaintiff in connection with his efforts to obtain the documents; (2) the costs of work of the Court-appointed CROs in connection with the contempt proceedings; and (3) the attorneys' fees and costs of the Unsecured Creditors' Committee in monitoring and participating in the contempt proceedings. Finally, the Court ordered Govoni to pay for and to cooperate in the reinstatement of any of the dissolved Alter Ego Entities that Plaintiff directs him to reinstate. The Court also indicated that if Govoni and BFG continued to stonewall Plaintiff's collection efforts, the Court would consider asking the United States District Court to withdraw the reference to consider criminal contempt proceedings.

---

[2] Doc. 112. This Court held prior hearings on the matter on May 2, May 12, and May 25, 2025.
[3] Doc. 123.
[4] Doc. 71.
[5] Doc. 81.
[6] Doc. 104.

Since the Court's initial finding of contempt, Govoni and BFG have made limited progress in providing documents and information previously order by the Court. It has been a slow and torturous process. Suffice it to say that all documents ordered produced in March have not been produced, and the delay occasioned by Govoni's recalcitrance has impeded Plaintiff's ability to execute on the Judgment.

On June 3, 2025, however, these proceedings took a significant turn. This Court entered an Agreed Order Transferring Defendants' Stock and Limited Liability Company Membership Interests to Chapter 11 Trustee ("Turnover Order").[7] The purpose of the Turnover Order was to transfer to Plaintiff whatever interests Govoni and BFG had in approximately 124 different entities. As discussed at the hearing on June 12, 2025, there is confusion about the extent of interest in each company that has been transferred to Plaintiff, and there will no doubt be many proceedings initiated as Plaintiff attempts to liquidate and undo apparent mischief that may have occurred with the assets of the entities subject to the Turnover Order.

Notwithstanding this development, at the hearing on June 12, 2025, Plaintiff and counsel for the Unsecured Creditors' Committee both requested the Court enter an order asking the United States District Court to withdraw the reference and consider criminal contempt proceedings against BFG and Govoni. Although the Court appreciates the desire to punish BFG and Govoni for the misery to the victim-SNT beneficiaries associated with these proceedings and the main Chapter 11 case, the Court is more focused on recovering money for the victims of these unfolding travesties as quickly as possible. Accordingly, the Court will defer to other arms of the government for punishment, so long as Govoni continues to cooperate with Plaintiff and the Court. The Court is also mindful of the fact that these contempt proceedings are limited to discovery violations impeding the execution of a judgment.

---

[7] Doc. 134.

As the Chapter 11 Trustee for The Center for Special Needs Trust Administration, Plaintiff has done a remarkable job in a relatively short time. He has a judgment in hand for more than $120 million against Govoni and BFG. Now Plaintiff also holds BFG's and Govoni's interests in over 124 entities that need prompt attention. Certainly, Plaintiff does not yet have every document that he is entitled to receive, but based on the arguments and inquiries raised by his counsel, he has the basic information necessary to pursue depositions and potential fraudulent transfers in aid of execution. Moreover, to the extent that he needs information from any of the 124 entities that he now has an interest in from the Turnover Order, Plaintiff is in the best position to obtain any essential information directly.

The Court set a final hearing on June 12, 2025, so that it could enter a final order of contempt based on events occurring before and after the Initial Contempt Order. As a result, the Court stands by its prior finding of contempt and calculates sanctions as follows: The $5,000 per day sanction in the Initial Contempt Order for the discovery violations is calculated from May 3, 2025, through June 12, 2025. This sanction amounts to $200,000 ($5,000 x 40 days).

The Court has also reviewed the attorneys' fees and costs requested, as set forth below, and finds them to be reasonable and will award the same:

| Name (Doc. No.) | Attorney's Fees | Costs | Total Sought |
|---|---|---|---|
| Plaintiff (Doc. 131) | $75,457.50 | $560.20 | $76,017.70 |
| Unsecured Creditors' Committee (Doc. 143) | $13,491.00 | 0 | $13,491.00 |
| CRO Bill Long (Doc. 141) | $3,399.90 | $121.78 | $3,521.68 |
| CRO Joshua Rizack (Doc. 133) | $5,500.00 | $33.60 | $5,533.60 |
| **TOTAL** | | | **$98,563.98** |

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Govoni is assessed a $5,000 per day discovery sanction that totals $200,000. This sanction is payable to Michael G. Goldberg, as Chapter 11 Trustee for The Center for Special Needs Trust Administration, to be held in trust, solely for the benefit of the unsecured victim-SNT beneficiaries in the main bankruptcy case.

(2) Additionally, Govoni is assessed the attorneys' fees and costs of Plaintiff, the two CROs, and the Unsecured Creditors' Committee, which totals $98,563.98. This amount should also be payable to Plaintiff, but it may be available for general use for the benefit of the estate, including administrative expenses.

(3) Govoni and BFG are jointly and severally liable to pay these amounts within 45 days after the entry of this Order. If unpaid after 45 days, Plaintiff will be entitled to a supplemental judgment that will incorporate the specific finding of this Court in its Initial Contempt Order dated May 5, 2025, that "Govoni's contempt of this Court's orders is not only willful, but it is also knowingly intended to further injure the victims represented by the Trustee and the Unsecured Creditors' Committee."[8]

(4) The Court will retain jurisdiction to assess further sanctions if (a) BFG and Mr. Govoni fail to cooperate with Plaintiff, in contravention to Govoni's counsel's representation in Court on June 12, 2025; or (b) it is demonstrated that Mr. Govoni gave false testimony either in court or in other sworn documents associated with this contempt proceeding.

(5) This final order is without prejudice to any further motions to compel filed by Plaintiff.

John Dicks, Esq. is directed to serve a copy of this order on Boston Finance Group and Leo J. Govoni, as well as any other interested parties who do not receive service by CM/ECF and file a proof of service within three days after entry of this order.

---

[8] Doc. 123.